**LYNCH HOPPER SALZANO & SMITH**
P. KYLE SMITH                    9533
970 N. Kalaheo Ave., Suite A301
Kailua, HI 96734
T: (808) 791-9555

**REVERE & ASSOCIATES**
TERRANCE M. REVERE         5857-0
MALIA R. NICKISON-BEAZLEY 9289-0
Pali Palms Plaza
970 N. Kalaheo Ave., Suite A301
Kailua, HI 96734
T: (808) 791-9550

*Attorneys for Class Plaintiffs*

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2014 APR -3 PM 2: 59

H. MIYATA
CLERK

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER AND KATIE ECKROTH, On Behalf of Themselves and All Others Similarly Situated,<br><br>      Class Plaintiffs,<br><br>ss.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE Defendants 1-10,<br><br>      Defendants. | CIVIL NO. **14-1-0850-04**<br>(Other Non-Vehicle Tort)<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL; SUMMONS** |



EXHIBIT A

## CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiffs, by and through their undersigned attorneys, allege the following allegations and claims against Forest City ("Forest City"):

### I.

### JURISDICTION AND VENUE

1)   This Court has jurisdiction and venue over the above Defendants under Hawaii Revised Statutes § 634-35, because the causes of action arise as the result of Defendants' business transactions within this state, Defendants' commission of alleged tortious acts and injuries within this state, and the Defendants' and Plaintiffs' use and possession of real property within this state. Defendants are subject to the jurisdiction of this Court because they reside and conduct business in this Circuit.

2)   Further, this Court has jurisdiction and venue under the terms of Defendants' lease agreements with Plaintiffs, which agree that Lease and contractual relationship between the parties will be construed exclusively in accordance with, and shall be exclusively governed by the substantive laws of the State of Hawaii, including but not limited to Hawaii State Revised Statutes, chapter 521, and the common law interpreting those statutes.

3)   This Court has subject matter jurisdiction over this action under Hawai`i Revised Statute § 603-21.5.

4)   Venue is proper before this Court under Hawai`i Revised Statute § 603-36.

Lynch Hopper Salzano & Smith
Revere & Associates

## II.

## PARTIES

5)   Plaintiffs are military families who have leased residential housing from Defendant Forest City housing at Marine Corp Base Hawaii (MCBH) in Kaneohe, Oahu, after 2006 from Defendants.

6)   Cara Barber is the spouse of a military service member and former tenant of Ohana Military Communities, Kaneohe, Hawaii, from approximately August 2006 to November 2008, and August 2009 to April 2011.

7)   Melissa Jones is the spouse of a military service member and current tenant of Ohana Military Communities, Kaneohe, Hawaii, from approximately July 2010 to present.

8)   Melissa Streeter is the spouse of a military service member and former tenant of Ohana Military Communities, Kaneohe, Hawaii, from approximately June 2009 to August 2011.

9)   Katie Eckroth is the spouse of a military service member and current tenant of Ohana Military Communities, Kaneohe, Hawaii, from approximately August 2009 to present.

10)  Upon information and belief, Defendant Ohana Military Communities, LCC ("Ohana MC") is and has been at all relevant times a Hawaii corporation, having its principal place of business in the City and County of Honolulu, State of Hawaii.

11)  Upon information and belief, Defendant Forest City Residential Management, Inc., ("Forest City RM") is and has been at all relevant times a foreign corporation doing business in Hawaii and having its principal place of business in Cleveland, Ohio.

12)  Plaintiff has reviewed records that were made available to them in order to ascertain the true and full names and identities of all defendants in this action, but no further knowledge or information regarding the parties responsible is available at this time and Plaintiff is

Lynch Hopper Salzano & Smith
Revere & Associates

unable to ascertain the identity of the defendants in this action designated as DOE

DEFENDANTS 1-10 ("Doe Defendants"). Doe Defendants are sued herein under fictitious

names for the reason that their true names and identities are unknown to Plaintiff except

that they may be connected in some manner with Defendants and may be agents, attorneys,

servants, employees, employers, representatives, co-venturers, co-conspirators, associates,

or independent contractors of Defendants and/or were in some manner responsible for the

injuries or damages to Plaintiff and their true names, identities, capacities, activities and

responsibilities are presently unknown to Plaintiff or their attorneys.

## IV.

## CLASS ALLEGATION

13) A class action is alleged pursuant to Hawaii Rule of Civil Procedure 23.

14) Plaintiffs seek to represent a class of persons ("Class") that includes:

**All former and present persons who have leased or resided in residential property from Ohana MC at Marine Corp Base Hawaii in Kaneohe, Hawaii, from 2006 to the present.**

15) The Class consists of thousands of current and former tenants who lived on MCBH from

2006 to the present. The Class is therefore so numerous that joinder of all individual

plaintiffs would be impractical.

16) The Class involves questions of law and fact common to all individual members of the

Class, such as whether Defendants knowingly exposed military families to toxic pesticides

and other toxins without their knowledge or consent.

17) The claims and damages sought by the Class are typical of the claims and relief that could

be sought by individual members of the class. Specifically, all members have suffered

similar injury and damages as a result of Defendants' failure to provide safe and healthy

Lynch Hopper Salzano & Smith
Revere & Associates

living conditions and the claims and defenses of the Class arise from the same conduct by

Defendants and are based on the same legal theories.

18)   Plaintiffs will adequately and fairly represent the interests of individual members of the

proposed Class in that they are similarly situated persons who lived on MCBH and who

were subjected to unsafe living conditions without disclosure by Defendants.

19)   Finally, prosecution of separate actions by individual members of the Class would create a

risk of inconsistent and varying adjudications with respect to individual members of the

Class, which would establish incompatible standards of conduct for the party opposing the

Class. Accordingly, a class action under Rule 23 of the Hawaii Rules of Civil Procedure is

in the best interests of judicial economy.

## II.

## FACTUAL ALLEGATIONS

20)   In 1996, under the provisions of the Military Housing Privatization Initiative, the United

States Congress authorized legislation to privatize military housing whereby private

companies were allowed to own and manage housing on military bases.

21)   Thereafter, Ohana Military Communities, LLC ("Ohana MC") was created to renovate and

construct new housing at Marine Corp Base Hawaii ("MCBH").

22)   Forest City Residential Management, Inc. ("Forest City RM"), acts as Ohana MC's agent

for the lease of residential housing to military families on MCBH during all relevant times.

23)   After Defendants took control of military housing at MCBH in approximately 2006,

Defendants have entered several thousand leases with military families for residential

housing at MCBH.

Lynch Hopper Salzano & Smith
Revere & Associates

24)    Plaintiffs and the Class are present and former tenants who have leased residential housing at MCBH after 2006 from Ohana MC.

25)    Under the terms of their leases, Ohana MC and tenants agree:

     a.  Military families will pay monthly rent equal to their Basic Allowance for Military Housing ("BAH");[1]

     b.  Ohana MC will provide safe and habitable housing;[2] and

     c.  To mediate any disputes or claim between them arising out of this Lease.[3]

26)    After assuming control of MCBH residential housing, Ohana MC began to lease newly and previously constructed residential housing to military families in 2006.  Upon information and belief, the older residential housing contained asbestos, lead-based paint, extensive mold infestation, etc.  During this time Ohana MC began demolishing portions of the older residential housing to build new residential units for future lease.

27)    <u>Before</u> taking control of MCBH housing, Defendants were warned by the contractor previously hired by the Department of the Navy to carry out demolition and construction of military housing that MCBH soils were contaminated with pesticides including chlordane, heptachlor, and heptachlor epoxide, and that <u>all</u> contaminated topsoil should be removed in addition to other measures.[4]

---

[1] *See, e.g.* Ohana MC Lease Agreement at 2, ¶3 ("Resident agrees to pay monthly Rent equal to the Basic Allowance for Military Housing at the 'with dependent' rate (the 'BAH') at the Resident's duty station of the pay grade of the Resident service member."). Note that assignment to privatized housing is voluntary. In other words, service members have the ability to use their BAH as they see fit; i.e. rent in the civilian market or purchase real estate in the civilian market.

[2] *Id.* at 5, ¶12 ("Owner is responsible … **for ensuring that the Premises are safe and habitable**.") (emphasis added).

[3] *Id.* at 10, ¶34.

[4] Chlordane was banned by the EPA in 1988 and is classified as a Group B2 carcinogen by the EPA. Similarly, heptachlor was banned by the EPA in 1974 and is listed as a Group B2 carcinogen.

Lynch Hopper Salzano & Smith
Revere & Associates

28) Thus, *before* taking over MCBH residential housing, Defendants were aware that chlordane levels were many times higher than the EPA's Tier 1 environmental action levels ("EAL") and that chemical contamination at MCBH housing presented increased health risks for military families at MCBH.

29) Despite these warnings, Defendants did not disclose the presence of pesticide-contaminated soils to military families before leasing housing to them at MCBH.

30) Instead, after learning of the presence of pesticide-contaminated soils, Ohana MC investigated and *confirmed* the presence of pesticide contamination at MCBH.

31) Because of positive test results within several MCBH neighborhoods, Ohana MC concluded that *all* neighborhoods should be assumed to contain pesticide impacted soils beneath *all* existing foundations and surrounding perimeters.

32) Thus, in spite of specific knowledge of chemical contamination of MCBH residential housing, Defendants took over existing leases and entered new leases with military families without disclosure to these families that pesticide-contaminated soils had been found and confirmed at MCBH.

33) Upon information and belief, in addition to heptachlor, chlordane, and heptachlor epoxide levels in excess of EPA Tier 1 and Tier 2 levels EAL levels, Defendants are also aware of chemical contamination for aldrin, dieldrin, and endrin at MCBH in excess of recommended limits, but likewise failed to provide any notice of dangers associated with these risks to military families.

34) After learning of the presence of pesticide-contaminated soils at MCBH, Defendants created a Pesticide Soils Management Plan (the "Plan") with input from the Hawaii Department of Health (HDOH).

Lynch Hopper Salzano & Smith
Revere & Associates

35)  Within the Plan, Defendants decided to allow soil contamination levels above the Tier 1 EALs based on the underlying assumption that military families would not live at MCBH longer than 6 years (i.e. two 3-year tours of duty at MCBH). Further, the Plan:

   a.  Confirmed the presence of pesticide-contaminated soils at MCBH;

   b.  Assumed all neighborhoods contained pesticide-contaminated soils beneath all existing home foundations and surrounding perimeters;

   c.  Recommended specific remediation practices to address pesticide contaminated soils such as confirming that "no visible dust" should occur during demolition and construction because of the danger of pesticide-contaminated soils;

   d.  Claimed that detailed maps would be kept and made available to the Department of the Navy, MCBH property management, and the HDOH detailing where pesticide-contaminated soils had been found and addressed; and

   e.  Confirmed that written notification would be provided to residents anywhere they may contact pesticide-contaminated soils.

36)  Defendants, however, did not inform military families of the Plan nor did Defendants tell military families that Defendants had agreed to accept pesticide-contaminated soils above the Tier 1 EAL at MCBH. Defendants also failed to follow their own Plan. For example:

   a.  Rather than notifying residents that they may come in contact with pesticide-contaminated soils, Defendants' Residential Community Handbook for Marine Corp Neighborhoods ("Community Handbook") – which was provided to residents *after* they entered leases with Defendants – only contained a non-specific reference that chlordane and other pesticides "may be found" throughout the United States rather than acknowledging pesticide-contaminated soils had been confirmed at MCBH:

*Chlordane was one of the most common pesticides applied to the soil around homes and businesses throughout the United States for protection against termites from 1948 to 1988. Other pesticides used in and around housing to prevent insect infestation and disease outbreak have also been banned. Although chlordane and other pesticides are no longer used, they may be found in soils under and around housing constructed in both civilian and military communities. Families can safely work and play in their yards; however, we recommend residents use prudent practices by thoroughly washing their hands after direct soil contact and washing all plants and vegetables grown on-site before consuming.*[5]

37) Despite the provisions of the Soil Management Plan, substantial fugitive dust occurred at MCBH throughout the demolition of old housing and the construction of new housing.

38) Further, when military families complained about excessive dust, Defendants never disclosed that pesticide-contaminated soils had been confirmed at MCBH. Instead, Defendants told military families there was no danger.

39) Since at least 2006, Defendants have therefore failed to warn military families of pesticide-contaminated soils at MCBH and knowingly and intentionally exposed military families at MCBH to higher rates of cancer and other adverse health outcomes without disclosing these risks to military families or taking sufficient steps to protect military families from such chemical contamination.

40) After military families discovered Defendants' failure to disclose the presence of pesticide-contaminated soils, residents asked Defendants to confirm what steps had been taken to address pesticide-contaminated soils at their homes and also asked for Defendants to mediate with them to address their concerns about pesticide-contaminated soils at MCBH.

41) Defendants, however, refused to mediate with residents despite the plain language of their lease agreements with the Class to address these issues.

---

[5] Forest City Residential Community Handbook Marine Corp Neighborhoods, at 14.

Lynch Hopper Salzano & Smith
Revere & Associates

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

42)   Class Plaintiffs repeat and incorporate the above paragraphs herein.

43)   Valid contracts were entered between Class Plaintiffs and Defendants for the lease of residential housing on MCBH.

44)   Under the terms of their lease contracts, Class Plaintiffs agreed to pay rent in exchange for safe and healthy residential housing and that the parties' respective lease obligations and responsibilities will be construed exclusively under the substantive laws of the State of Hawaii, including but not limited to, Hawaii Revised Statutes Chapter 521 and the common law interpreting those statutes.

45)   Under the terms of their leases and Hawaii law, Defendants have breached their agreement to provide safe and healthy residential housing.

46)   Specifically, Defendants have failed to:

   a.   Disclose the presence of pesticide-contaminated soils at MCBH;

   b.   Provide safe and healthy housing;

   c.   Fully implement their Pesticide Soil Management Plan; and

   d.   Mediate residents' concerns as required under the terms of Plaintiffs' leases.

47)   Class Plaintiffs have sustained damages as a result of this breach, which includes the overpayment of rent, future medical expenses, and medical monitoring of their health and the health of their family members for Defendants' breach of contract.

48)   Because of Defendants' breach of contract, it has been necessary for Class members to incur expenses and other special damages in an amount to be proven at trial.

49) Under the terms of their lease, Class Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.

50) As a proximate and legal result of Defendants' breach of contract, Class members have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## SECOND CLAIM FOR RELIEF

### (Tortious Breach of Contract)

51) Class Plaintiffs repeat and incorporate the above paragraphs herein.

52) Valid contracts exist between Class Plaintiffs and Defendants for the lease of residential housing on MCBH.

53) Under the terms of their lease contracts, Class Plaintiffs agreed to pay rent in exchange for safe and healthy residential housing and that the parties' respective lease obligations and responsibilities will be construed exclusively under the substantive laws of the State of Hawaii, including but not limited to, Hawaii Revised Statutes Chapter 521 and the common law interpreting those statutes.

54) Under the terms of their leases and Hawaii law, Defendants tortiously breached their agreement to provide safe and healthy residential housing.

55) Specifically, Defendants intentionally and knowingly exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will despite specific and express warnings by the Department of Health for the State of Hawaii and other persons.

Lynch Hopper Salzano & Smith
Revere & Associates

56) Plaintiffs have sustained damages as a result of Defendants' tortious breach, which includes the overpayment of rent and future medical expenses and medical monitoring of their health and the health of their family members.

57) Because of Defendants' tortious breach of contract, it has been necessary for Class members to incur expenses and other special damages in an amount to be proven at trial.

58) Defendants' conduct was undertaken with reckless disregard for the foreseeable consequences to Plaintiffs.

59) Defendants' conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

60) Under the terms of their lease, Class Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.

61) As a proximate and legal result of Defendants' breach of contract, Class members have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## THIRD CLAIM FOR RELIEF

### (Breach of Implied Warranty of Habitability)

62) Class Plaintiffs repeat and incorporate the above paragraphs herein.

63) Defendants owe a duty to Class Plaintiffs to provide safe and healthy residential housing for military families.

64) Under the terms of their lease contracts, Class Plaintiffs agreed to pay rent in exchange for safe and healthy residential housing.

65) Defendants breached their duty to provide safe and healthy residential housing.

Lynch Hopper Salzano & Smith
Revere & Associates

66) Specifically, Defendants exposed Class Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

67) Because of Defendants' breach of the implied warranty of habitability, it has been necessary for Class members to incur expenses and other special damages in an amount to be proven at trial.

68) Plaintiffs have sustained damages as a result of Defendants' breach, which includes the overpayment of rent and future medical expenses and medical monitoring of their health and the health of their family members.

69) As a proximate and legal result of Defendants' breach of contract, Class members have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## FOURTH CLAIM FOR RELIEF

### (Violation of Hawaii Revised Statute Chapter 521 – Landlord Tenant Code)

70) Class Plaintiffs repeat and incorporate the above paragraphs herein.

71) Hawaii Revised Statute §521-10 imposes upon landlords an obligation of good faith in the performance of their obligations under the lease.

72) Hawaii Revised Statute §521-42(a)(1) obligates Defendants to supply housing that complies with all applicable building and housing laws materially affecting health and safety.

73) Despite their obligation to provide healthy and safe housing to military families, Defendants intentionally and knowingly exposed Class Plaintiffs and their families to

increased health risks for cancer and other adverse health outcomes without their knowledge and against their will in addition to knowing violation of Defendants' own Pesticide Soils Management Plan.

74)  Defendants have therefore violated the Hawaii Landlord Tenant Code and Plaintiffs are entitled to all rights and remedies afforded tenants under Chapter 521, which incudes their reasonable attorneys fees and costs.

75)  Because of Defendants' violation of Chapter 521 of the Hawaii Revised Statutes, it has been necessary for Class members to incur expenses and other special damages in an amount to be proven at trial.

76)  Plaintiffs have sustained damages as a result of Defendants' breach, which includes the overpayment of rent and future medical expenses and medical monitoring of their health and the health of their family members.

77)  As a proximate and legal result of Defendants' breach of contract, Class members have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## FIFTH CLAIM FOR RELIEF

### (Unfair & Deceptive Trade Practices)

78)  Class Plaintiffs repeat and incorporate the above paragraphs herein.

79)  "[U]nfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."[6]

---

[6] HAW. REV. STAT. §480-2.

Lynch Hopper Salzano & Smith
Revere & Associates

80) Class Plaintiffs are "consumers" under Hawaii Revised Statute 480-1 who have personally invested their resources to lease military housing from Defendants. [7]

81) Leasing residential housing at MCBH after the presence of pesticide-contaminated soils are confirmed at MCBH without disclosing this fact to potential tenants constitutes an unfair and deceptive act and practice in the conduct of trade and commerce that had the tendency to mislead potential tenants.

82) To entice military families to enter leases with Defendants at MCBH, Defendants did not disclose that pesticide-contaminated soils had been confirmed at MCBH and that Defendants had decided to accept pesticide-contaminated soils at MCBH above the Tier 1 EAL.

83) Further, after entering leases with Class Plaintiffs, Defendants asserted it is safe for families to work and play in their yards although they now admit that children and pets should not be allowed to play in the yards near old house foundations and that families should not grow fruits or vegetables in the yards near old house foundations.

84) These unfair and deceptive trade practices had a tendency to mislead Class Plaintiffs into leasing housing at MCBH.

85) Because of Defendants' unfair and deceptive trade practices, it has been necessary for Class Plaintiffs to incur expenses and other special damages in an amount to be proven at trial.

86) Plaintiffs have sustained damages as a result of Defendants' breach, which includes the overpayment of rent and future medical expenses and medical monitoring of their health and the health of their family members.

---

[7] Haw. Rev. Stat. § 480-1.

Lynch Hopper Salzano & Smith
Revere & Associates

87)   As a proximate and legal result of Defendants' unfair and deceptive trade practices, Class members have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## SIXTH CLAIM FOR RELIEF

### (Negligence)

88)   Class Plaintiffs repeat and incorporate the above paragraphs herein.

89)   Defendants have an obligation to provide safe and health housing for residents and a duty to warn residents of risks.

90)   Despite actual knowledge of the presence of pesticide-contaminated soils at MCBH and related health risks, Defendants provided no warning to military families and instead intentionally and knowingly exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will in addition to knowing violation of Defendants' own Pesticide Soils Management Plan.

91)   Defendants have therefore breached their duties to military families at MCBH and Plaintiffs are entitled to all rights and remedies, which incudes their reasonable attorneys fees and costs.

92)   Because of Defendants' negligence, it has been necessary for Class members to incur expenses and other special damages in an amount to be proven at trial.

93)   Plaintiffs have sustained damages as a result of Defendants' breach, which includes the overpayment of rent and future medical expenses and medical monitoring of their health and the health of their family members.

94) Defendants' conduct was undertaken with reckless disregard for the foreseeable consequences to Plaintiffs.

95) Defendants' conduct therefore justifies an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

96) As a proximate and legal result of Defendants' negligence, Class members have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## SEVENTH CLAIM FOR RELIEF

### (Negligent & Intentional Infliction of Emotional Distress)

97) Class Plaintiffs repeat and incorporate the above paragraphs herein.

98) After Class Plaintiffs discovered Defendants failure to disclose the presence of pesticide-contaminated soils in 2013, Class Plaintiffs asked to mediate with MCBH in order to confirm whether pesticide contaminated soils had been remediated.

99) Rather than provide confirmation where pesticide contaminated soils had been found and specifically addressed, however, Defendants have repeatedly failed to provide evidence of what steps were taken.

100) Although Defendants historically told residents that it was safe to work and play in their yards, Defendants now recommend that pets and children not be allowed to play in the yard near the foundation of the original homes...that are unmarked.

101) And when residents have asked for maps and other information that is supposed to be available to confirm their homes are safe, Defendants have been neither willing nor able to make such information available.

Lynch Hopper Salzano & Smith
Revere & Associates

102) Class Plaintiffs are also now aware that despite actual knowledge of the presence of pesticide-contaminated soils at MCBH, Defendants provided no warning to military families and intentionally and knowingly exposed Class Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will.

103) Defendants' intentional negligent and/or reckless conduct, acts, and omissions have caused emotional distress by causing fear in the community of exposure to harmful pesticides.

104) Class Plaintiffs have further sustained damages as a result of Defendants' conduct and missions, which includes the overpayment of rent and future medical expenses and medical monitoring of their health and the health of their family members.

105) Class Plaintiffs are entitled to all rights and remedies, which incudes their reasonable attorneys fees and costs.

106) Because of Defendants' conduct and omissions, it has been necessary for Class members to incur expenses and other special damages in an amount to be proven at trial.

107) As a proximate and legal result of Defendants' acts and omissions, Class members have been compelled to resort to litigation and therefore request an award of all consequential damages, including, but not limited to, attorneys' fees and costs incurred in such litigation, in amounts to be proven at time of trial.

## EIGHTH CLAIM FOR RELIEF

### (Fraud/Intentional Misrepresentation)

108) Class Plaintiffs repeat and incorporate the above paragraphs herein.

109) Defendants have expressly represented that the housing they provide is safe and habitable for military families.

110) Despite these representations, Defendants intentionally and knowingly omitted telling military families that living at MCBH would result in exposure to elevated risks for cancer and other adverse health outcomes.

111) Despite these representations, Defendants intentionally and knowingly omitted telling military families that Defendants had decided it was acceptable to expose military families to pesticide contamination in excess of Tier 1 EALs.

112) Despite these representations, Defendants now acknowledge that children and pets should not be allowed to play in their yards and that families should not grow fruits or vegetables in their yards if near the foundation of the pre-existing housing…that has never been disclosed.

113) Defendants have therefore committed fraud against military families by claiming Defendants would provide safe housing while omitting that pesticide-contaminated soils had been confirmed at MCBH and that these soils posed increased health risks for military families.

114) Class Plaintiffs have sustained damages as a result of Defendants' fraudulent acts and omissions, which includes the overpayment of rent and future medical expenses and medical monitoring of their health and the health of their family members.

115) Defendants' fraudulent conduct was undertaken with reckless disregard for the foreseeable consequences to Class Plaintiffs.

116) Defendants' fraudulent acts and omissions therefore justify an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

117) Because of Defendants' fraudulent acts and omissions, it has been necessary for Class members to incur expenses and other special damages in an amount to be proven at trial.

Lynch Hopper Salzano & Smith
Revere & Associates

118) Class Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.

## NINTH CLAIM FOR RELIEF

### (Negligent Misrepresentation)

119) Class Plaintiffs repeat and incorporate the above paragraphs herein.

120) Defendants have expressly represented that the housing they provide is safe and habitable for military families.

121) Despite these representations, Defendants negligently failed to inform military families that living at MCBH would result in exposure to elevated risks for cancer and other adverse health outcomes.

122) Despite these representations, Defendants intentionally and knowingly omitted telling military families that Defendants had decided it was acceptable to expose military families to pesticide contamination in excess of Tier 1 EALs.

123) Despite these representations, Defendants now acknowledge that children and pets should not be allowed to play in their yards if near the foundation of the pre-existing housing…that has never been disclosed.

124) Defendants' claim they would provide safe housing while omitting that pesticide-contaminated soils had been confirmed at MCBH and that these soils posed increased health risks for military families constitutes a negligent misrepresentation to Class Plaintiffs.

125) Class Plaintiffs have sustained damages as a result of Defendants' negligent acts and omissions, which includes the overpayment of rent and future medical expenses and medical monitoring of their health and the health of their family members.

126) Defendants' conduct was undertaken with negligent or reckless disregard for the foreseeable consequences to Class Plaintiffs.

127) Defendants' grossly negligent and/or reckless acts and omissions justify an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

128) Because of Defendants' acts and omissions, it has been necessary for Class members to incur expenses and other special damages in an amount to be proven at trial.

129) Class Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.

## TENTH CLAIM FOR RELIEF

### (Prima Facie Tort)

130) Class Plaintiffs repeat and incorporate the above paragraphs herein.

131) Defendants have expressly represented that the housing they provide is safe and habitable for military families.

132) Despite these representations, Defendants intentionally failed to inform military families that living at MCBH would result in exposure to elevated risks for cancer and other adverse health outcomes; and decided without input from military families that it was acceptable to expose military families to pesticide contamination in excess of Tier 1 EALs.

133) Defendants knew that failing to inform military families would cause expose Class Plaintiffs to increased health risks for themselves and their families.

134) Defendants' claim they would provide safe housing while omitting that pesticide-contaminated soils had been confirmed at MCBH and that these soils posed increased health risks for military families constitutes a prima facie tort.

135) Class Plaintiffs have sustained damages as a result of Defendants' tortious conduct and omissions, which includes the overpayment of rent and future medical expenses and medical monitoring of their health and the health of their family members.

136) Defendants' conduct was undertaken with intentional, gross negligence, and/or reckless disregard for the foreseeable consequences to Class Plaintiffs.

137) Defendants' intentional, grossly negligent, and/or reckless acts and omissions therefore justify an award of exemplary or punitive damages in an amount to be proven at the trial of this matter.

138) Because of Defendants' acts and omissions, it has been necessary for Class members to incur expenses and other special damages in an amount to be proven at trial.

139) Class Plaintiffs are entitled as the prevailing party to reasonable attorneys' fees and costs required to pursue this action.

WHEREFORE, Class Plaintiffs pray for judgment against Defendants and in favor of the Plaintiffs as follows:

1. Preliminary and permanent injunctive relief to require Defendants to:

   a. Investigate the actual risks to military families at MCBH posed by the known chemical contamination of residential housing;

   b. Give warning to all past and present tenants at MCBH of the health risks they have been exposed to by Defendants; and

   c. Enjoin Defendants' lease of any new residential property until Defendants demonstrate that chemical contamination levels are below accepted action levels for all homes;

2. General, special, treble, and consequential damages in an amount to be proven at trial;

3. Reasonable attorneys' fees and costs;

4. Disgorgement of profits;

5. Any prejudgment interest provided by statute;

6. Punitive damages for Defendants' wanton, reckless, and grossly negligent conduct;

7. For such other and further relief as the Court may deem just and proper.


DATED:  Kailua, Hawaii, this 3rd day of April 2014.


P. KYLE SMITH
TERRANCE M. REVERE
MALIA R. NICKISON-BEAZLEY

*Attorneys for Class Plaintiffs*

Lynch Hopper Salzano & Smith
Revere & Associates

**LYNCH HOPPER SALZANO & SMITH**
P. KYLE SMITH                    9533
970 N. Kalaheo Ave., Suite A301
Kailua, HI 96734
T: (808) 791-9555

**REVERE & ASSOCIATES**
TERRANCE M. REVERE          5857-0
MALIA R. NICKISON-BEAZLEY 9289-0
Pali Palms Plaza
970 N. Kalaheo Ave., Suite A301
Kailua, HI 96734
T: (808) 791-9550

*Attorneys for Class Plaintiffs*

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER AND KATIE ECKROTH, On Behalf of Themselves and All Others Similarly Situated, | CIVIL NO. _____ (Other Non-Vehicle Tort) **DEMAND FOR JURY TRIAL** |
| Class Plaintiffs, | |
| ss. | |
| OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE Defendants 1-10, | |
| Defendants. | |

## DEMAND FOR JURY TRIAL

Class Plaintiffs, CARA BARBER, MELISSA JONES, MELISSA STREETER, and

KATIE ECKROTH, on behalf of themselves and all others similarly situated, pursuant to Rule

38 of the Hawaii Rules of Civil Procedure, by and through their undersigned counsel, hereby demands trial by jury on all issues triable herein.

DATED:  Kailua, Hawaii, this 3rd day of April 2014.

P. KYLE SMITH
TERRANCE M. REVERE
MALIA R. NICKISON-BEAZLEY

*Attorneys for Class Plaintiffs*

| STATE OF HAWAI'I<br>CIRCUIT COURT<br>OF THE FIRST CIRCUIT | SUMMONS<br>TO ANSWER CIVIL COMPLAINT | CASE NUMBER |
| --- | --- | --- |

| PLAINTIFF,                                    VS. | DEFENDANT. |
| --- | --- |
| CARA BARBER, MELISSA JONES, MELISSA STREETER and KATIE ECKROTH, On Behalf of Themselves and All Others Similarly Situated | OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC. and DOE Defendants 1-10 |

| PLAINTIFF'S ADDRESS (NAME, ADDRESS, TEL. NO.) | |
| --- | --- |
| Lynch Hopper Salzano & Smith<br>970 N. Kalaheo Ave., Suite A301<br>Kailua, HI  96734<br>808-791-9555 | |

### TO THE ABOVE-NAMED DEFENDANT(S)

You are hereby summoned and required to file with the court and serve upon

_____ ,

plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| DATE ISSUED<br>APR 0 3 2014 | CLERK<br>N. MIYATA |  | |
| --- | --- | --- | --- |
| I do hereby certify that this is full, true, and correct copy of the original on file in this office | Circuit Court Clerk | | |

 In accordance with the Americans with Disabilities Act and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the First Circuit Court Administration Office at PHONE NO. 539-4333, FAX 539-4322, or TTY 539-4853, at least ten (10) working days prior to your hearing or appointment date.

Reprographics (07/11)   RevaComm 508 Certified                                                                                    SUMMONS TO ANSWER CIVIL COMPLAINT  1C-P-787