GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

LISA WOODS MUNGER          3858-0
    lmunger@goodsill.com
RANDALL C. WHATTOFF          9487-0
    rwhattoff@goodsill.com
CHRISTINE A. TERADA          10004-0
    cterada@goodsill.com
First Hawaiian Center, Suite 1600
999 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 547-5600
Facsimile:  (808) 547-5880

Attorneys for Defendants
OHANA MILITARY COMMUNITIES, LLC, FOREST
CITY RESIDENTIAL MANAGEMENT, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER AND KATIE ECKROTH, On Behalf of Themselves and All Others Similarly Situated,<br><br>                    Class Plaintiffs,<br><br>        vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>                    Defendants. | CIV NO 14-00217 HG-KSC<br><br>DEFENDANTS OHANA MILITARY COMMUNITIES, LLC, AND FOREST CITY RESIDENTIAL MANAGEMENT, LLC'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES; CERTIFICATE OF SERVICE |

## DEFENDANTS OHANA MILITARY COMMUNITIES, LLC, AND FOREST CITY RESIDENTIAL MANAGEMENT, LLC'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES

PLEASE TAKE NOTICE that Defendants Ohana Military Communities, LLC and Forest City Residential Management, LLC (collectively "Ohana") hereby move this Court for an Order dismissing Plaintiffs' "Class Action Complaint for Damages" originally filed in the Circuit Court of the First Circuit, State of Hawai'i, on April 3, 2014.  This motion is made on the grounds that:

- Plaintiffs' entire Complaint should be dismissed pursuant to Rule 12(b)(6)[1] because the exceedance of a Tier 1 Environmental Action Level cannot serve as the basis for establishing an unsafe condition.

- Plaintiffs' entire Complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs do not make any allegations about the state of the soil at the times they lived in their homes.

- Plaintiffs' first claim for Breach of Contract should be dismissed pursuant to Rules 8(a) and 12(b)(6) because Plaintiffs have failed to plead the elements of a claim for breach of contract.

- Plaintiffs' second claim for Tortious Breach of Contract should be dismissed pursuant to Rule 12(b)(6) because Hawai'i has "abolished" claims for tortious breach of contract.

- Plaintiffs' third claim for Breach of Implied Warranty of Habitability, fourth claim for Violation of the Landlord-Tenant Code, and sixth claim for Negligence should all be dismissed pursuant to Rules 8(a) and 12(b)(6) because Plaintiffs' have not pleaded sufficient facts to support these claims.

---

[1] All references herein to a Rule or Rules are to the Federal Rules of Civil Procedure unless otherwise noted.

- Plaintiffs' fourth claim for Violation of the Landlord-Tenant Code should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs have failed to identify any independent statutory violations of the Landlord-Tenant Code and Plaintiffs do not seek any statutory remedies under the Landlord-Tenant Code.

- Plaintiffs' fifth claim for Unfair and Deceptive Acts or Practices, eighth claim for Fraud/Misrepresentation, and ninth claim for Negligent Misrepresentation should be dismissed pursuant to Rule 9(b) because Plaintiffs failed to plead these claims with particularity.

- Plaintiffs' seventh claim for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs failed to plead required elements of their claims.

- Plaintiffs' tenth claim for *Prima Facie* Tort should be dismissed pursuant to Rule 12(b)(6) because this claim is generally not recognized under Hawai'i law.

This motion is based upon the attached Memorandum in Support of Motion, the concurrently filed Request for Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint for Damages (and exhibits thereto), the records and files in this case, as well as other and further arguments that may be offered at the hearing.

DATED:  Honolulu, Hawaiʻi, May 13, 2014.

/s/ Randall C. Whattoff
LISA WOODS MUNGER
RANDALL C. WHATTOFF
CHRISTINE A. TERADA

Attorneys for Defendants
OHANA MILITARY COMMUNITIES, LLC
FOREST CITY RESIDENTIAL
MANAGEMENT, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER AND KATIE ECKROTH, On Behalf of Themselves and All Others Similarly Situated,<br><br>Class Plaintiffs,<br><br>vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>Defendants. | CIV NO 14-00217 HG-KSC<br><br>MEMORANDUM IN SUPPORT OF MOTION |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................1

II.    THE ALLEGATIONS IN THE COMPLAINT ............................................3

    A.    The Parties ...............................................................................3

    B.    Ohana Creates the Soil Management Plan to Address Organo-Chlorinated Pesticides at MCBH ..............................................4

    C.    Plaintiffs' Allegations of Misconduct ..........................................5

III.    LEGAL STANDARD .........................................................................7

IV.    ARGUMENT...................................................................................8

    A.    Plaintiffs' Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because an Exceedance of Tier 1 EALs Cannot Serve as the Basis for a Complaint .......................................8

        1.    The Exceedance of Tier 1 EALs Does Not Establish the Existence of Any Unsafe Condition .........................................8

        2.    The Complaint Should Be Dismissed Because Each of Plaintiffs' Claims Is Premised on the Exceedance of Tier 1 EALs ...............................................................................11

    B.    Plaintiffs' Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because Plaintiffs Do Not Make Any Allegations About the State of the Soil at the Time They Lived in their Homes................................................................................14

    C.    The Individual Claims Also Fail for Numerous Reasons .................16

        1.    Plaintiffs' First Claim Should Be Dismissed Because Plaintiffs Have Failed to Plead the Elements of a Claim for Breach of Contract ..........................................................16

        2.    Plaintiffs' Second Claim Should Be Dismissed Because Hawai'i Has "Abolished" Claims for Tortious Breach of Contract...................................................................................18

# TABLE OF CONTENTS
## (continued)

Page

3.  Plaintiffs' Third, Fourth, and Sixth Claims Should Be Dismissed Because Plaintiffs' Allegations Are Nothing More Than Legal Conclusions .................................................. 18

4.  Plaintiffs' Fourth Claim Should Be Dismissed Because Plaintiffs Have Failed to Identify Any Independent Statutory Violations or Seek Any Statutory Remedies Under the Landlord-Tenant Code ............................................ 20

5.  Plaintiffs' Fifth Claim Fails Because It Is Not Pled With Particularity .................................................................................. 22

6.  Plaintiffs' Seventh Claim Should Be Dismissed for Failure to Plead "Outrageous Conduct" or "Physically Manifested Harm" ................................................................... 22

7.  Plaintiffs' Eighth Claim Should Be Dismissed Because Plaintiffs Failed to Plead Fraud With Particularity ................. 24

8.  Plaintiffs' Ninth Claim Should Be Dismissed Because It Also Must Be Pled With Particularity ..................................... 26

9.  Plaintiffs' Tenth Claim Should Be Dismissed Because "Prima Facie Tort" Is Generally Not a Cognizable Cause of Action ................................................................................. 26

V.  CONCLUSION .......................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................... passim

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007) ............................................................................7, 19

*Cholla Ready Mix, Inc. v. Civish*,
   382 F.3d 969 (9th Cir. 2004) ...................................................................8

*Eisen v. Porsche Cars N. Am., Inc.*,
   Case No. CV-11-9405 CAS, 2012 U.S. Dist. LEXIS 116836 (C.D. Cal.
   Feb. 22, 2012) .......................................................................................25

*Fitzgerald v. Am. Sav. Bank, F.S.B.*,
   Civil No. 1-00199 DAE-RLP, 2012 U.S. Dist. LEXIS 33344 (D. Haw.
   March 13, 2012) ....................................................................................17

*Francis v. Lee Enterprises, Inc.*,
   89 Hawaiʻi 234, 971 P.2d 707 (1999) .....................................................18

*Hokama v. Univ. of Hawaiʻi*,
   92 Hawaiʻi 268, 990 P.2d 1150 (1999) ...................................................18

*Kapunakea Partners v. Equilon Enterprises LLC*,
   679 F. Supp. 2d 1203 (D. Haw. 2009) ....................................................18

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...........................................................24, 25

*Mariano v. Liberty Dialysis-Hawaii, LLC*,
   Civil No. 11-00652 LEK-BMK, 2013 U.S. Dist. LEXIS 18270 (D. Haw.
   Feb. 11, 2013) .......................................................................................27

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) ..........................................25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Metzler Contr. Co. LLC v. Stephens*,
  Civil No. 07-00261 LEK, 2009 U.S. Dist. LEXIS 32956 (D. Haw. Apr.
  17, 2009)....................................................................................................26

*Nottage v. Bank of N.Y. Mellon*,
  Civil No. 12-00418 JMS/BMK, 2012 U.S. Dist. LEXIS 153340 (D. Haw.
  Oct. 25, 2012) ...........................................................................................16

*Robertson v. Dean Witter Reynolds, Inc.*,
  749 F.2d 530 (9th Cir. 1984)........................................................................7

*Ross v. Stouffer Hotel Co.*,
  76 Hawai'i 454, 879 P.2d 1037 (1994) ......................................................23

*Siales v. Haw. Elec. Co.*,
  Civil No. 13-00413 LEK-KSC, 2013 U.S. Dist. LEXIS 168958 (D. Haw.
  Nov. 27, 2013) ...........................................................................................23

*Smallwood v. NCsoft Corp.*,
  730 F. Supp. 2d 1213 (D. Haw. 2010)...................................................22, 26

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)......................................................................24

*Tilot Oil, LLC, v. BP Products North America, Inc.*,
  907 F.Supp.2d 955 (2012) ....................................................................13, 14

*Waimanalo Village Residents' Corp. v. Young*,
  87 Hawai'i 353, 956 P.2d 1285 (App. 1998)..............................................21

*Washington v. Baenziger*,
  673 F. Supp. 1478 (N.D. Cal. 1987) ..........................................................24

*Zimmerman v. City of Oakland*,
  255 F.3d 734 (9th Cir. 2001) .......................................................................7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

STATUTES

Hawaiʻi Revised Statutes
    Chapter 521 ...............................................................................................21
    § 128D-1 ...................................................................................................8
    § 521-10 ..............................................................................................20, 21
    § 521-42(a)(1) .....................................................................................20, 21
    § 663-8.9 ..................................................................................................23

RULES

Hawaiʻi Rules of Civil Procedure
    Rule 8(a) ....................................................................................................20
    Rule 9(b) .........................................................................................22, 24, 26
    Rule 12(b)(6) ...................................................................................... passim

OTHER AUTHORITIES

Department of Health, *Evaluation of Environmental Hazards at Sites with Contaminated Soil and Groundwater*, Vol. 1 (Fall 2011; rev. Jan. 2012), *available at* http://eha-web.doh.hawaii.gov/eha-cma/documents/8935e423-25fb-46b9-adaa-fc0a207d5518 .........................9, 10, 11

Department of Health, *Technical Guidance Manual for the Implementation of the Hawaiʻi State Contingency Plan* (Interim Final – Nov. 12, 2009; rev. Mar. 2013), *available at* http://www.hawaiidoh.org/tgm-pdfs/HTGM.pdf..........................................................................................8, 10

## MEMORANDUM IN SUPPORT OF MOTION

**I.      INTRODUCTION**

Plaintiffs' Class Action Complaint for Damages ("Complaint") should be dismissed for the fundamental reason that it fails to allege any misconduct by Defendants Ohana Military Communities, LLC ("Ohana") and Forest City Residential Management, Inc. ("Forest City") (collectively, "Defendants").

Plaintiffs are four current and former residents of privatized military housing owned by Ohana and managed by Forest City on Marine Corp Base Hawai'i ("MCBH").  Compl., ¶¶ 5-12.  Plaintiffs contend that when Ohana began redeveloping these neighborhoods in 2006, Ohana was informed that organo-chlorinated pesticides were present in the soils around the homes.  *Id.*, ¶¶ 26-27.  Plaintiffs allege that Ohana investigated the soils and confirmed the presence of pesticides at levels above the Hawai'i Department of Health's ("DOH") Tier 1 Environmental Action Levels ("EALs").  *Id.*, ¶ 28.  Plaintiffs contend that because Defendants failed to disclose this issue, they are liable for an array of claims ranging from Breach of Contract to Fraud.

All of Plaintiffs' claims fail for two basic reasons.  First, the entire Complaint is premised on the assertion that pesticide levels above Tier 1 EALs are necessarily hazardous.  This is simply not true.  Tier 1 EALs are nothing more than initial screening levels that allow site owners to quickly determine whether further

investigation is necessary.  As the DOH succinctly put it:  "Exceeding the Tier 1 EAL for a specific chemical does not necessarily indicate that the contamination poses significant environmental concerns, <u>only that additional evaluation is warranted</u>."  (Emphasis added.)  Thus, while a lack of Tier 1 exceedances establishes that a site is safe for all uses, the existence of an exceedance does not mean a site is unsafe.

Second, the Complaint contains no allegations—at all—about the state of the neighborhoods when Plaintiffs actually lived in them.  For instance, Plaintiffs claim that "<u>[b]efore</u> taking control of MCBH housing, Defendants were warned by the contractor previously hired by the Department of the Navy to carry out demolition and construction of military housing that MCBH soils were contaminated with pesticides . . . , and that <u>all</u> contaminated topsoil should be removed in addition to other measures."  Compl., ¶ 27 (emphasis original). Plaintiffs do not allege that top soils were <u>not</u> removed or that other measures were <u>not</u> taken by Ohana.  To the contrary, Plaintiffs recognize that Ohana implemented a comprehensive Soil Management Plan that was approved by DOH.  *Id.*, ¶ 35. Under the Soil Management Plan, extensive soil removal and other efforts were taken by Ohana.  Because Plaintiffs do not make any allegations about the state of the neighborhoods when they actually lived in them, there are insufficient facts to support a claim against Defendants.

2

The above issues affect every claim in the Complaint and require its dismissal, but there are also individual issues with all of Plaintiffs' claims. For instance, Plaintiffs' claim for Breach of Contact fails to identify numerous required elements and purports to state a claim against a non-party to the contract; Plaintiffs' claim for Tortious Breach of Contract has been "abolished" by the Supreme Court; and Plaintiffs' claims sounding in fraud are not pleaded with particularity. For all of these reasons, Plaintiffs' Complaint should be dismissed.

## II.   THE ALLEGATIONS IN THE COMPLAINT

### A.   The Parties

Ohana is a private-public partnership that was formed in 2004 by the Department of the Navy and Hawaiʻi Military Communities, LLC. *See* Compl., ¶¶ 10, 21.[2] The venture was formed as part of the Military Housing Privatization Initiative for the purpose of owning, renovating, and in many instances rebuilding, thousands of aging military housing units in Hawaiʻi. *See id.*, ¶¶ 20-21. Forest City manages the housing for Ohana. *Id.*, ¶ 22.

Plaintiffs are two former and two current residents of housing units owned by Ohana and managed by Forest City. Plaintiff Cara Barber was allegedly a tenant from August 2006 to November 2008 and August 2009 to April 2011, *id.*,

---

[2] Ohana is a Limited Liability Company, but the Complaint incorrectly identified it as a corporation. *See* Compl., ¶ 10.

¶ 6; Plaintiff Melissa Jones has allegedly been a tenant from July 2012 to the

present, *id.,* ¶ 7; Plaintiff Melissa Streeter was allegedly a tenant from June 2009 to

August 2011, *id.,* ¶ 8; and Plaintiff Katie Eckroth has allegedly been a tenant from

August 2009 to present, *id.,* ¶ 9.

### B. Ohana Creates the Soil Management Plan to Address Organo-Chlorinated Pesticides at MCBH

As Plaintiffs point out, when certain housing units were transferred

from the military to Ohana the soils around them contained chlordane, heptachlor,

and other organo-chlorinated pesticides in excess of the DOH's Tier 1 EALs. *Id.,*

¶¶ 27-28. These organo-chlorinated pesticides are all common termiticides that

were applied near homes throughout the United States and Hawai'i for decades.

Because these pesticides were designed to break down slowly over time, they are

still present around homes throughout Hawai'i.[3]

According to the Complaint, "after learning of the presence of

pesticide-contaminated soils, Ohana [] investigated and confirmed the presence of

pesticide contamination at MCBH." *Id.,* ¶ 30. Plaintiffs allege that, "[b]ecause of

positive test results within several MCBH neighborhoods, Ohana [] concluded that

---

[3] This information is provided for contextual background only, and is not necessary for Defendants' motion. *See* Hawai'i State Department of Health, *Past Use of Chlordane, Dieldrin, and Other Organochlorine Pesticides for Termite Control in Hawai'i: Safe Management Practices Around Treated Foundations or During Building Demolition* (Sept. 2011), *available at* http://eha-web.doh.hawaii.gov/eha-cma/Downloads/HEER/termiticidefactsheetfinalsept2011.pdf.

all neighborhoods should be assumed to contain pesticide impacted soils beneath all existing foundations and surrounding perimeters." *Id.*, ¶ 31.

In order to address these issues, "Defendants created a Pesticide Soils Management Plan (the 'Plan') with input from [DOH]." *Id.*, ¶ 34. According to Plaintiffs, "[w]ithin the Plan, Defendants decided to allow soil contamination levels above the Tier 1 EALs based on the underlying assumption that military families would not live at MCBH longer than 6 years (i.e. two 3-year tours of duty at MCBH)." *Id.*, ¶ 35. The Plan "[r]ecommended specific remediation practices to address pesticide contaminated soils . . . ." *Id.*, ¶ 35(c).

### C.   Plaintiffs' Allegations of Misconduct

Plaintiffs contend that Defendants acted improperly in three ways. First, Plaintiffs contend that Defendants "did not inform military families of the [Soil Management] Plan nor did Defendants tell military families that Defendants had agreed to accept pesticide-contaminated soils above the Tier 1 EAL at MCBH." *Id.*, ¶ 36. Second, Plaintiffs contend that the Community Handbook that was provided to residents when they signed their lease only contained "a non-specific reference that chlordane and other pesticides 'may be found' throughout the United States rather than acknowledging pesticide-contaminated soils had been confirmed at MCBH." *Id.*, ¶ 36(a). According to Plaintiffs, the disclosure stated:

> Chlordane was one of the most common pesticides applied to the soil around homes and businesses throughout the United States for protection against termites from 1948 to 1988.  Other pesticides used in and around housing to prevent insect infestation and disease outbreak have also been banned.  Although chlordane and other pesticides are no longer used, they may be found in soils under and around housing constructed in both civilian and military communities.  Families can safely work and play in their yards; however, we recommend residents use prudent practices by thoroughly washing their hands after direct soil contact and washing all plants and vegetables grown on-site before consuming.

*Id.*  Plaintiffs do not identify anything that is incorrect or inaccurate about the statements in the Community Handbook, but merely contend that it is not sufficiently "specific."  *Id.*  Third, Plaintiffs contend that "substantial fugitive dust occurred at MCBH throughout the demolition of old housing and the construction of new housing."  *Id.*, ¶ 37.  Plaintiffs do not provide any information about where or when this dust occurred, who it affected, what damage it caused, or whether it contained any pesticides.  Indeed, there is no allegation that the dust was any different than dust generated at any other construction site.

Plaintiffs contend that these three issues give rise to claims for the following causes of action:  (1) Breach of Contract; (2) Tortious Breach of Contract; (3) Breach of Implied Warranty of Habitability; (4) Violation of the Landlord-Tenant Code; (5) Unfair and Deceptive Trade Practices; (6) Negligence;

(7) Negligent and Intentional Infliction of Emotional Distress; (8) Fraud;

(9) Negligent Misrepresentation; and (10) *Prima Facie* Tort.

## III.   LEGAL STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a

motion to dismiss will be granted where the plaintiff fails to state a claim upon

which relief can be granted.  A complaint may be dismissed as a matter of law for

one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts

under a cognizable legal claim."  *Robertson v. Dean Witter Reynolds, Inc.*, 749

F.2d 530, 534 (9th Cir. 1984).

In reviewing a Rule 12(b)(6) motion, the court must accept as true all

well-pleaded allegations of fact in the complaint and construe them in the light

most favorable to plaintiffs.  *Zimmerman v. City of Oakland*, 255 F.3d 734, 737

(9th Cir. 2001).  However, "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atl. Corp v.*

*Twombly*, 550 U.S. 544, 555 (2007).  "While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Moreover, a court is not required to

accept legal conclusions on the face of the complaint, if those conclusions cannot

be reasonably drawn from the facts alleged.  *Cholla Ready Mix, Inc. v. Civish*, 382

F.3d 969, 973 (9th Cir. 2004).

## IV.  ARGUMENT

### A.  Plaintiffs' Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because an Exceedance of Tier 1 EALs Cannot Serve as the Basis for a Complaint

#### 1.  The Exceedance of Tier 1 EALs Does Not Establish the Existence of Any Unsafe Condition

The DOH's Hazard Evaluation and Emergency Response Office

("HEER") was created in 1990 under Hawai'i's Environmental Response Law.  This

statute established authority at the state level to respond to releases of hazardous

substances.  *See generally* HRS §§ 128D-1 *et seq.*  Under the Environmental

Response Law and other related statutes, HEER's mission is to "protect human

health, public welfare, and the environment and provide state leadership, support and

partnership in preventing, planning for, responding to, and enforcing environmental

laws relating to releases or threats of releases of hazardous substances, pollutants or

contaminants."  DOH, *Technical Guidance Manual for the Implementation of the*

*Hawai'i State Contingency Plan*, § 1.3 (Interim Final – Nov. 12, 2009; rev. Mar.

2013), *available at* http://www.hawaiidoh.org/tgm-pdfs/HTGM.pdf (hereinafter

"Technical Guidance Manual").[4]

As part of its role in assessing environmental contamination levels,

HEER has established certain minimal levels below which no action is necessary.

These minimal contamination levels, known as Tier 1 EALs, are so low that they

are safe in all environments and for all circumstances and land uses:

> The lowest action level represents the concentration of
> the contaminant in the respective media where the threat
> to human health or the environment is considered to be
> insignificant under any site condition.  This is selected as
> that contaminants Tier 1 EAL.
>
> * * *
>
> The Tier 1 EALs for soil listed in Tables A and B were
> developed to allow unrestricted current and future use of
> a property.  This includes consideration of direct
> exposure action levels suitable for use of the site as
> residences, hospitals, day-care centers, and other
> sensitive purposes.

*See* DOH, *Evaluation of Environmental Hazards at Sites with Contaminated Soil*

*and Groundwater*, Vol. 1, §§ 2.1, 2.4.1 (Fall 2011; rev. Jan. 2012), *available at*

http://eha-web.doh.hawaii.gov/eha-cma/documents/8935e423-25fb-46b9-adaa-

fc0a207d5518 (hereinafter "Environmental Hazards Report").

---

[4] Concurrently with this motion, Defendants have filed a request for judicial notice
of the Technical Guidance Manual and Environmental Hazards Report.

The purpose of the Tier 1 EALs is to allow site owners to quickly and easily screen sites in order to determine whether further investigation is necessary.  *See* Environmental Hazards Report at vii.

> [T]he presence of a chemical . . . at concentrations below the corresponding Tier 1 EAL can be assumed to not pose a significant threat to human health and the environment.  This allows sites or portions of sites with minimal or no contamination to be quickly cleared for potential environmental concerns, a task which could easily take months or even years using a traditional, environmental risk assessment approach.

*Id.*  Because the Tier 1 EALs are designed to be rapid evaluation criteria, "[e]xceeding the Tier 1 EAL for a specific chemical does not necessarily indicate that the contamination poses significant environmental concerns, only that additional evaluation is warranted."  *Id.* at vii (emphasis added); *see also id.* at § 1.3 ("Exceeding the Tier 1 EAL does not necessarily indicate that contamination at the site poses environmental hazards."); Technical Guidance Manual, § 13.3 (same).

Moreover, there is no requirement that sites with Tier 1 exceedances be remediated to below Tier 1 levels.  Environmental Hazards Report, § 1.6.  As HEER has made clear, "[t]he Tier 1 EALs . . . are NOT required, regulatory 'cleanup standards'."  *Id.* (emphasis original).  In small sites where it is easier to remediate than to conduct further studies, immediate remediation may sometimes be the most cost effective approach.  *See id.*; *see also* Technical Guidance Manual

§ 13.3.6 ("The Tier 1 EALs are not strict cleanup standards.  In cases where the extent of contamination is minimal and time is of the essence, however, it may be more cost-effective to simply remediate soil contaminated above the Tier 1 EALs (or acceptable, alternative action levels) without further evaluation.").  For larger sites, HEER has established the "Environmental Hazard Evaluation" approach, which requires a site-specific evaluation to determine whether there are any environmental hazards and whether any action is necessary.  *See* Environmental Hazards Report, §§ 1.6, 3.

> **2.** **The Complaint Should Be Dismissed Because Each of Plaintiffs' Claims Is Premised on the Exceedance of Tier 1 EALs**

As discussed above, Plaintiffs generally allege three types of wrongdoing.  Plaintiffs contend that (1) Defendants failed to inform residents that "Defendants had agreed to accept pesticide-contaminated soils above the Tier 1 EAL at MCBH," Compl., ¶ 36; (2) that the disclosure in the Residential Community Handbook was not sufficiently specific because it did not "acknowledg[e] pesticide-contaminated soils had been confirmed at MCBH," *id.*, ¶ 36(a); and (3) "substantial fugitive dust occurred at MCBH," *id.*, ¶ 37.  Elsewhere in the Complaint, Plaintiffs broadly assert that Defendants failed to "[p]rovide safe and healthy housing" and/or "intentionally and knowingly exposed Class Plaintiffs and their families to increased health risks for cancer and other

adverse health outcomes." *See, e.g.*, ¶¶ 46(b), 54, 66, 73, 81-83, 90, 102, 109-12, 120-24, 131-34.

All of these claims are premised on Plaintiffs' assertion that soils exceeding Tier 1 EALs are hazardous. Because this is a false premise, however, none of these allegations can support a claim for wrongdoing. For instance:

- Nondisclosure of Tier 1 exceedances is not improper if there is nothing inherently hazardous about Tier 1 exceedances;

- A less "specific" pesticide disclosure is appropriate if the amount of pesticides are not hazardous; and

- It is not improper to allow "fugitive dust" if the contamination levels in the dust are not hazardous.[5]

Moreover, if Tier 1 EALs are not necessarily hazardous, there is no support for the general claim that Defendants "exposed Class Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes." Simply put, because an exceedance of Tier 1 EALs, by itself, does not mean there is an environmental hazard, these allegations are insufficient to support Plaintiff's Complaint.

---

[5] The claims related to fugitive dust also fail because they are nothing more than "conclusory statements." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Among other things, there are no allegations about when this fugitive dust occurred, where it occurred, the extent of any problem, whether the dust contained pesticides, or how it damaged Plaintiffs.

The Court's reasoning in *Tilot Oil, LLC, v. BP Products North America, Inc.*, 907 F.Supp.2d 955 (2012), is instructive.  In *Tilot*, plaintiff alleged that defendant was responsible for petroleum-contaminated groundwater that was impairing the use of certain buildings on plaintiff's property.  *Id.* at 957.  In particular, plaintiff alleged that benzene levels present in the air in Building D were sufficient to support a claim under the Resource Conservation and Recovery Act ("RCRA").  *Id.* at 963-64.  Defendant moved for summary judgment on the ground that plaintiff could not show an "imminent and substantial danger to health or the environment," as required by RCRA.  *Id.* at 963.  Plaintiff responded that "danger to health or the environment" was established because the benzene levels in Building D exceeded the United States Environmental Protection Agency's Screening Levels and Wisconsin's vapor action levels ("VAL") (*i.e.*, the federal and Wisconsin counterparts to Hawai'i's EALs).  The Court rejected plaintiff's argument:

> [T]he court agrees with [defendant] that the EPA
> screening level sheds little insight on whether a
> possible imminent and substantial endangerment exists
> because screening levels are developed solely for the
> purpose of setting a level at which further investigation is
> required; they are not a determination of actual
> danger.  [Plaintiff] also urges that Wisconsin's VAL
> standards are relevant, and that other sampling has
> exceeded the VALs, establishing sufficient
> endangerment.  But, similar to EPA screening levels,
> VALs are used to determine whether further action is

> required. . . . Thus, exceedance of Wisconsin's VALs
> tells the court only that <u>something</u> should be done, not
> that the current remediation is insufficient to abate a
> threat of substantial harm.

*Id.* at 965 (second emphasis original).

While Plaintiffs' state law claims are subject to a different standard than RCRA, the Court's reasoning is nevertheless highly relevant.  For all of Plaintiffs' claims, Plaintiffs must plead that some environmental hazard was present at the time they were living in their homes.  Plaintiffs' assertion that the soil exceeded Tier 1 EALs is the <u>only</u> hazard they have pleaded.  As *Tilot* explains, this is insufficient to establish a hazard "because screening levels are developed solely for the purpose of setting a level at which further investigation is required; they are not a determination of actual danger."  *Id.*  Because all of Plaintiffs' claims rely on Tier 1 exceedances, Plaintiffs' complaint should be dismissed under Rule 12(b)(6).

> **B.  Plaintiffs' Complaint Should Be Dismissed Pursuant to
> Rule 12(b)(6) Because Plaintiffs Do Not Make Any Allegations
> About the State of the Soil at the Time They Lived in their Homes**

Moreover, even if a Tier 1 exceedance was somehow sufficient to support Plaintiffs' claims, Plaintiffs' Complaint should nevertheless be dismissed because Plaintiffs fail to make any allegations about the actual pesticide levels in the soils around their homes.  Indeed, Plaintiffs make almost no allegations at all

about Defendants' activities in managing the soils after taking control of the

properties.  Among other things, <u>there is no allegation that any of neighborhoods</u>

<u>Plaintiffs lived in had improper pesticide levels at any point when Plaintiffs</u>

<u>actually lived in them</u>.[6]

       Instead, Plaintiffs make allegations about the past condition of the

housing.  For instance, Plaintiffs claim that "[b]efore taking control of MCBH

housing, Defendants were warned by the contractor previously hired by the

Department of the Navy to carry out demolition and construction of military

housing that MCBH soils were contaminated with pesticides . . . , and that <u>all</u>

contaminated topsoil should be removed in addition to other measures."  Compl.,

¶ 27 (emphasis original).  Plaintiffs do not allege, however, that top soils were not

removed or that other measures were not taken by Ohana.  (In fact, extensive soil

removal and other efforts were taken by Ohana.  *See* Note 6, *supra*.)  Elsewhere,

Plaintiffs allege that the Soil Management Plan "allow[ed]" soil contamination

levels above the Tier 1 EALs, *id.* ¶ 35, but Plaintiffs do not allege that the soils

---

[6] The reason for this omission is because Defendants properly handled the soils.
As Plaintiffs recognize, "Defendants created a Pesticide Soils Management Plan
with input from the Hawaii Department of Health."  Compl., ¶ 34 (parentheticals
omitted).  If this case proceeds, Defendants will show that they followed the Soil
Management Plan, and that for each neighborhood where Defendants built new
military housing, Defendants took a conservative approach and removed the soil
from around and underneath <u>all</u> homes, regardless of whether the homes actually
tested positive for pesticide impacted soil.

around their homes actually exceeded <u>even</u> Tier 1 EALs (or any other level).

These omissions make it impossible for Defendants to address or respond to

Plaintiffs' claims in any substantive manner, and they require dismissal under

Rule 12(b)(6).  It is axiomatic that a Complaint based upon alleged soil

contamination must allege actual soil contamination at the time Plaintiffs lived in

the area.

### C.  The Individual Claims Also Fail for Numerous Reasons

In addition to the issues discussed above, which apply to Plaintiffs'

Complaint as a whole, all of Plaintiffs' individual claims also suffer from critical

problems that require their dismissal.

### 1.  Plaintiffs' First Claim Should Be Dismissed Because Plaintiffs Have Failed to Plead the Elements of a Claim for Breach of Contract

A breach of contract claim requires a plaintiff to identify "(1) the

contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed

under the contract; (4) the particular provision of the contract allegedly violated by

the Defendant; (5) when and how the Defendant allegedly breached the contract;

and (6) how Plaintiff was injured."  *Nottage v. Bank of N.Y. Mellon*, Civil No. 12-

00418 JMS/BMK, 2012 U.S. Dist. LEXIS 153340, *24 (D. Haw. Oct. 25, 2012)

(dismissing claim where plaintiff failed to identify the "particular provision of the

mortgage loan that [defendant] violated," or include "any assertion that Plaintiffs

performed under the mortgage loan, or an assertion of how Plaintiffs were injured"); *see also Fitzgerald v. Am. Sav. Bank, F.S.B.*, Civil No. 1-00199 DAE-RLP, 2012 U.S. Dist. LEXIS 33344, *20 (D. Haw. March 13, 2012) (dismissing claim) ("To allege breach of contract, the complaint must, at a minimum, cite the contractual provision allegedly violated.").

Plaintiffs have plainly failed to plead all of these requirements.  First, the only contract Plaintiffs have identified is the lease, which was only entered into by Ohana and cannot support Plaintiffs' claims against Forest City.  Compl., ¶ 44. Second, Plaintiffs have not identified the particular provision of the lease (or any other contract) that was allegedly violated by Defendants.  Third, Plaintiffs failed to describe "when and how" the Defendants allegedly breached the lease. Plaintiffs vaguely assert that Defendants failed to "a. Disclose the presence of pesticide-contaminated soils at MCBH; b. Provide safe and healthy housing; c. Fully implement their Pesticide Soil Management Plan; and d. Mediate residents' concerns as required under the terms of Plaintiffs' leases," Compl., ¶ 46, but Plaintiffs do not explain "when and how" Defendants actually failed to do any of these things.  Plaintiffs' reliance on these bare legal conclusions is insufficient. *See Iqbal*, 556 U.S. at 678.  Any one of these three issues—let alone all three—is sufficient to require dismissal of Plaintiffs' first claim for Breach of Contract pursuant to Rule 12(b)(6).

### 2. Plaintiffs' Second Claim Should Be Dismissed Because Hawai'i Has "Abolished" Claims for Tortious Breach of Contract

Plaintiffs' second claim for Tortious Breach of Contract fails because the Hawai'i Supreme Court has abolished this cause of action.  *See Francis v. Lee Enterprises, Inc.*, 89 Hawai'i 234, 244, 971 P.2d 707, 708 (1999) ("Hawai'i law will not allow a recovery in tort, including a recovery of punitive damages, in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract."); *see also Hokama v. Univ. of Hawai'i*, 92 Hawai'i 268, 273, 990 P.2d 1150, 1155 (1999) ("This court recently repudiated the cause of action for tortious breach of contract in *Francis* . . . ."); *Kapunakea Partners v. Equilon Enterprises LLC*, 679 F. Supp. 2d 1203, 1218 (D. Haw. 2009) ("the *Francis* court abolished the tort of tortious breach of contract").  The Hawai'i Supreme Court's repudiation of this claim requires its dismissal pursuant to Rule 12(b)(6).

### 3. Plaintiffs' Third, Fourth, and Sixth Claims Should Be Dismissed Because Plaintiffs' Allegations Are Nothing More Than Legal Conclusions

Plaintiffs' third claim for Breach of Implied Warranty of Habitability, Fourth Claim for Violation of the Landlord-Tenant Code, and Sixth Claim for Negligence should all be dismissed because they are based upon nothing more than legal conclusions.

Two recent Supreme Court decisions have substantially clarified a plaintiff's burden when pleading a cause of action.  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 549-50 (2007), plaintiff telephone customers sued a number of telephone operators alleging an antitrust conspiracy to control prices and competition.  The trial court dismissed the complaint pursuant to Rule 12(b)(6) after finding that plaintiffs failed to plead sufficient facts to demonstrate the elements of their claim.  The Supreme Court agreed:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  <u>Factual allegations must be enough to raise a right to relief above the speculative level</u>, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations omitted, emphasis added).  Because plaintiffs' antitrust claim required plaintiffs to plead and prove an agreement, the Court held "that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."  *Id.* at 556.

Two years later, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court confirmed that *Twombly* applied to all civil actions and provided additional guidance for applying this standard.  The Court explained that motions to dismiss should be decided using a two-part analysis.  The trial court should "begin by

identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  The trial court should omit these conclusory allegations from its analysis and determine whether the remaining allegations "plausibly give rise to an entitlement to relief." *Id.*

Here, none of these three claims contain anything more than legal conclusions.  In each claim, Plaintiffs assert that "Defendants exposed Class Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will."  Compl., ¶ 66; *see also id.*, ¶¶ 73, 90.  There is no further factual explanation regarding how Defendants allegedly breached the implied warranty of habitability, breached the Landlord-Tenant Code, or acted negligently.  Because Plaintiffs' claims are nothing more than legal conclusions and lack any factual content, they should be dismissed pursuant to Rules 8(a) and 12(b)(6).

### 4. Plaintiffs' Fourth Claim Should Be Dismissed Because Plaintiffs Have Failed to Identify Any Independent Statutory Violations or Seek Any Statutory Remedies Under the Landlord-Tenant Code

Plaintiffs' Fourth Claim for Violation of the Landlord-Tenant Code asserts that Defendant breached HRS §§ 521-10 and 521-42(a)(1).  As discussed

above, Plaintiffs do not provide any factual explanation of how Defendants allegedly violated these statutory provisions.  *See* Section IV.C.3, *supra*.  This claim fails for at least two additional and independent reasons.

First, neither of these statutory provisions contains any independent obligations.  Under HRS § 521-10, "[e]very duty imposed by [the Landlord-Tenant Code] and every act which must be performed as a condition precedent to the exercise of a right or remedy under [the Landlord-Tenant Code] imposes an obligation of good faith in its performance or enforcement."  Under HRS § 521-42(a)(1), a landlord is required to "[c]omply with all applicable building and housing laws materially affecting health and safety[.]"  Neither of these provisions create a substantive duty by themselves, but they instead ensure that the Landlord-Tenant Code applies to landlords.  Because Plaintiffs do not allege any violation of the substantive provisions of the Landlord-Tenant Code or any other "applicable building and housing laws materially affecting health and safety," Plaintiffs' claim should be dismissed pursuant to Rule 12(b)(6).

Second, the remedies for violations of the Landlord-Tenant Code are limited to those remedies contained in HRS Chapter 521, Part VI (Remedies and Penalties).  *See Waimanalo Village Residents' Corp. v. Young*, 87 Hawai'i 353, 369, 956 P.2d 1285, 1301 (App. 1998) (discussing limitation on landlord's remedies under Landlord-Tenant Code).  Here, Plaintiffs' Complaint does not

identify any statutory remedies they seek under the Landlord-Tenant Code.

Plaintiffs' Fourth Claim for Violation of the Landlord-Tenant Code should be

dismissed pursuant to Rule 12(b)(6) for this separate and independent reason.

### 5. Plaintiffs' Fifth Claim Fails Because It Is Not Pled With Particularity

Like a claim for fraud, a claim for Unfair and Deceptive Acts or

Practices must be pled with specificity. *Smallwood v. NCsoft Corp.*, 730 F. Supp.

2d 1213, 1233 (D. Haw. 2010). As discussed at length in connection with

Plaintiffs' eighth claim for Fraud, *see* Section IV.C.7, *infra*, Plaintiffs have failed

to plead their claims with the particularity required by Rule 9(b), and they should

therefore be dismissed.

### 6. Plaintiffs' Seventh Claim Should Be Dismissed for Failure to Plead "Outrageous Conduct" or "Physically Manifested Harm"

Plaintiffs' seventh claim actually contains two causes of action—

Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional

Distress—neither of which is supported by the allegations in the Complaint.

With respect to Plaintiffs' claim for Intentional Infliction of

Emotional Distress, Plaintiff is required to show "outrageous conduct," which

requires a very high burden:

> It has not been enough that the defendant has acted with
> an intent which is tortious or even criminal, or that he has

> intended to inflict emotional distress, or even that his
> conduct has been characterized by "malice," or a degree
> of aggravation which would entitle the plaintiff to
> punitive damages for another tort.  Liability has been
> found only where the conduct has been so outrageous in
> character, and so extreme in degree, <u>as to go beyond all
> bounds of decency, and to be regarded as atrocious, and
> utterly intolerable in a civilized community</u>.

*Ross v. Stouffer Hotel Co.*, 76 Hawaiʻi 454, 465, 879 P.2d 1037, 1048 n.12 (1994)

(emphasis added).  The question of outrageousness "is for the court in the first

instance," *id.*, and it is therefore capable of determination on a motion for dismiss,

*see, e.g.*, *Siales v. Haw. Elec. Co.*, Civil No. 13-00413 LEK-KSC, 2013 U.S. Dist.

LEXIS 168958, *27 (D. Haw. Nov. 27, 2013) (granting motion to dismiss).  Here,

there is no suggestion that Plaintiffs intentionally acted to harm Plaintiffs or that

Defendants believed their conduct could somehow harm Plaintiffs.  It is therefore

clear that the conduct alleged in the Complaint does not come close to meeting the

high standard required for outrageousness.

　　　　With respect to Plaintiffs' claim for Negligent Infliction of Emotional

Distress, Plaintiffs are required to plead the existence of a "physically manifested

harm" to either themselves or a third-party.  *See Ross*, 76 Haw. at 465-66, 879 P.2d

at 1048-49; HRS § 663-8.9.  Here Plaintiffs do not plead that they or anyone else

are currently suffering from any injury.  Plaintiffs' seventh claim should therefore

be dismissed pursuant to Rule 12(b)(6) because Plaintiffs have failed to plead necessary elements underlying their causes of action.

### 7.   Plaintiffs' Eighth Claim Should Be Dismissed Because Plaintiffs Failed to Plead Fraud With Particularity

Because fraud is a serious allegation, a plaintiff asserting such a claim must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b).  The complaint for fraud must not lump multiple defendants together; rather, for each defendant, it must differentiate allegations to inform each one of the alleged role it played in the fraud.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citations and quotations omitted).  In addition, conclusory allegations of fraud are insufficient.  The complaint must specifically identify "the who, what, when, where, and how" of the fraud.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

These same rules apply to a complaint alleging fraud by omission. *Kearns*, 567 F.3d at 1127 (dismissing claim) (holding that in jurisdictions where omissions can support a claim for fraud, the complaint "must be pleaded with particularity under Rule 9(b)").  While courts recognize that plaintiffs often cannot plead the "specific time of the omission or the place," plaintiffs must nevertheless "find alternative ways to plead the particular circumstances of the fraud." *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987).  As such,

plaintiffs "must describe the content of the omission and where the omitted

information should or could have been revealed, as well as provide representative

samples of . . . other representations that plaintiff[s] relied on . . . that failed to

include the allegedly omitted information." *Eisen v. Porsche Cars N. Am., Inc.*,

Case No. CV-11-9405 CAS (FEMx), 2012 U.S. Dist. LEXIS 116836, *8-9 (C.D.

Cal. Feb. 22, 2012) (quoting *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992,

1002 (N.D. Cal. 2009)).

   Here, Plaintiffs' claim of fraud by omission is not pled with

particularity for all of the following reasons. <u>First</u>, Plaintiffs do not distinguish

what role each defendant played in the alleged fraud. *See* Compl., ¶¶ 109-18.

<u>Second</u>, Plaintiffs' assertion that Defendants had a duty to disclose is based

entirely on the allegation that "Defendants have expressly represented that the

housing they provide is safe and habitable for military families." *Id.*, ¶ 109. This

is insufficient because Plaintiffs fail to describe when this representation was

made, who made it, or the specific content of the representation. *See Kearns*, 567

F.3d at 1124 (holding that Plaintiffs must identify "the who, what, when, where,

and how" of the fraud). <u>Third</u>, Plaintiffs fail to describe the "content of the

omission"—*i.e.*, what information should have been disclosed. Plaintiffs

acknowledge that Defendants' disclosed the presence of pesticides in the soil, *see*

*id.*, ¶¶ 36, 110, 111, 113, but Plaintiffs do not state what Defendants should have

said to avoid being fraudulent. *See id.* Without all of this information, Defendants are not provided sufficient notice of their alleged fraudulent misconduct, and Plaintiffs' claim must therefore be dismissed pursuant to Rule 9(b).

> **8.      Plaintiffs' Ninth Claim Should Be Dismissed Because It Also Must Be Pled With Particularity**

Although a claim for Negligent Misrepresentation does not need to be pled with particularity in all instances, it does have to comply with the requirements of Rule 9(b) where the allegations are "grounded in fraud" and contain an element of deception. *See Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1232 (D. Haw. 2010) ("[B]ecause these allegations are grounded in fraud and not pled with specificity, any purported claim for negligent misrepresentation is dismissed with prejudice."). Because the allegations supporting Plaintiffs ninth claim for Negligent Misrepresentation are <u>virtually identical</u> to Plaintiffs' eighth claim for Fraud, they should be dismissed pursuant to Rule 9(b).

> **9.      Plaintiffs' Tenth Claim Should Be Dismissed Because "Prima Facie Tort" Is Generally Not a Cognizable Cause of Action**

Finally, Plaintiffs' tenth claim for *Prima Facie* Tort should be dismissed for the simple reasons that this is generally not a claim recognized by Hawaiʻi law. *See, e.g.*, *Metzler Contr. Co. LLC v. Stephens*, Civil No. 07-00261 LEK, 2009 U.S. Dist. LEXIS 32956, *14 (D. Haw. Apr. 17, 2009) (dismissing

claim for *prima facie* tort); *Mariano v. Liberty Dialysis-Hawaii, LLC*, Civil No. 11-00652 LEK-BMK, 2013 U.S. Dist. LEXIS 18270, *34-35 (D. Haw. Feb. 11, 2013).  Because no facts exist sufficient to justify such a claim, Plaintiffs' tenth claim should be dismissed pursuant to Rule 12(b)(6).

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant their motion and dismiss Plaintiffs' Complaint in its entirety.

DATED:  Honolulu, Hawai'i, May 13, 2014.

/s/ Randall C. Whattoff
LISA WOODS MUNGER
RANDALL C. WHATTOFF
CHRISTINE A. TERADA

Attorneys for Defendants
OHANA MILITARY COMMUNITIES, LLC
FOREST CITY RESIDENTIAL
MANAGEMENT, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER AND KATIE ECKROTH, On Behalf of Themselves and All Others Similarly Situated,<br><br>        Class Plaintiffs,<br><br>vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>        Defendants. | CIV NO 14-00217 HG-KSC<br><br>CERTIFICATE OF SERVICE |

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

**Served Electronically through CM/ECF**

P. Kyle Smith, Esq.            kyle@lhsshawaii.com
Terrance M. Revere, Esq.     terry@revereandassociates.com
Malia R. Nickison-Beazley, Esq.  Malia@revereandassociates.com

Attorneys for Class Plaintiffs

DATED:  Honolulu, Hawaiʻi, May 13, 2014, 2014.

/s/ Randall C. Whattoff
LISA WOODS MUNGER
RANDALL C. WHATTOFF
CHRISTINE A. TERADA

Attorneys for Defendants
OHANA MILITARY COMMUNITIES, LLC
FOREST CITY RESIDENTIAL
MANAGEMENT, LLC