LYNCH, HOPPER, SALZANO & SMITH
P. KYLE SMITH
Hawaii Bar No. 9533
970 N. Kalaheo Ave., # A301
Kailua, HI 9 6734
T: (808) 791-9555

REVERE & ASSOCIATES
TERRANCE M. REVERE     5857-0
MALIA R. NICKISON-BEAZLEY   9289-0
Pali Palms Plaza
970 North Kalaheo Avenue, Suite A301
Kailua, Hawaii 96734
T: (808) 791-9550

*Attorneys on behalf of Class Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| Plaintiffs Cara Barber, Melissa Jones, Melissa Streeter, and Katie Eckroth, On Behalf of Themselves and All Others Similarly Situated,<br><br>Class Plaintiffs,<br><br>Vs.<br><br>Ohana Military Communities, LLC, Forest City Residential Management, Inc.; and DOE Defendants 1-10,<br><br>Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br>**PLAINTIFFS' OPPOSIITON TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT; DECLARATION OF KYLE SMITH; EXHIBITS 1-3, AND CERTIFICATE OF SERVICE** |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    LEGAL STANDARD ......................................................................... 2

III.   ARGUMENT ...................................................................................... 3

    A.   Ohana's "Tier 1" Argument Misrepresents the Law and the Facts Alleged by Plaintiffs ................................................................. 6

        1.   Ohana's Tier 1 Arguments Ignores Ohana's Undisputed Knowledge That Pesticides at MCBH Were in Excess of its Own Tier 2 Levels and Carried Extreme Risks for Cancer and Non-Cancer Outcomes ................................. 3

        2.   *Tilot Oil* Demonstrates a Tier 1 Exceedance <u>Can</u> Support Tort Causes of Action ....................................................... 7

    B.   The Complaint Alleges, Ohana Admits, and the Evidence Establishes Pesticide-Contaminated Soils at MCBH ................ 9

    C.   Plaintiffs' Individual Claims Also Survive Ohana's 12(b)(6) Challenge ............. 11

        1.   The Factual Allegations of the Complaint Satisfy the Elements of Breach of Contract ........................................ 11

        2.   Plaintiffs Agree to Voluntarily Withdraw Their Claim for Tortious Breach of Contract ............................... 13

        3.   Claims 3, 4, and 6 Are All Supported by the Allegations of Plaintiffs' Complaint ............................ 13

           i.   *Hawaii law and sufficient facts support Plaintiffs' Third Claim for Breach of Implied Duty of Habitability* ............ 14

           ii.   *Hawaii Landlord Tenant Code, Haw. R. Stat. § 521 is relevant to Plaintiffs' claims under contract and tort* ........ 15

           iii.  *Hawaii law and sufficient facts support Plaintiffs' Sixth Claim for Negligence* ............................ 16

4.   Plaintiffs' Fifth Claim (Unfair and Deceptive Trade Practices) Survives Because Ohana's Failure to Disclose Pesticide-Contaminated Soils Has the "Tendency to Mislead .................................................................................. 19

5.   Plaintiffs' State Valid Claims for Negligent & Intentional Infliction of Emotional Distress ................................................................................... 20

   i.   *Plaintiffs' Claim for Intentional Infliction of Emotional Distress* ............. 20

   ii.   *Plaintiffs' Claim for Negligent Infliction of Emotional Distress* ............... 22

6.   The Allegations of the Complaint State a Claim for Fraud Omission ......... 24

7.   Plaintiffs State Sufficient Facts to Establish Negligent Misrepresentation .. 27

8.   Ohana's Challenge to Prima Facie Tort is Premature ................................. 27

V.   CONCLUSION ........................................................................................... 29

## TABLE OF AUTHORITIES

## I. CASES

*Zamani v. Carnes,* 491 F.3d 990 (9th Cir. 2007) ...........................................................2

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)............................2

*Marcus v. Holder,* 574 F.3d 1182, 1184 (9th Cir. 2009)..........................................................2, 10

*Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007)........................................................2

*Sprewell v. Golden State Warriors,* 266 F.3d 979 (9th Cir.2001)....................................................3

*United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003) ......................................................3

*Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir.1994) ......................................................3

*Rick-Mik Enterprises, Inc. v. Equilong Enterprises, LLC*, 532 F.3d 963, 977 (9th Cir. 2008)........3

*Tilot Oil, LLC, v. BP Products North America, Inc.*, 907 F.Supp.2d 963 (2012) ...........................8

*Lemle v. Breedon*, 51 Haw. 426, 433, 462 P.2d 470, 474 (Haw. 1969) ......................................14

*Camara v. Agsalud*, 76 Haw. 212, 218, 685 P.2d 794, 798 (Haw. 1984) ...................................16

*Kajiya v. Department of Water Supply*, 629 P.2d 635 (Haw. 1981) .....................................17, 18,

*Sams v.Englewood Ready-Mix Corp.*, 22 Ohio App.2d 168, 259 N.E.2d 507 (1969)).................18

*Smallwood v. NCsoft Corp.*, 730 F.Supp.2d 1213, 1233 (D.Haw. 2010)....................................19

*State by Bronster v. U.S. Steel Corp.*, 82 Haw. 32, 51, 919 P2d 294, 313 (Haw. 1996)..............19

*Eastern Star, Inc. v. Union Building Materials Corp.*, 6 Haw. App. 125, 712 P.2d 1148 (1985))19

*Bockenstette v. FTC*, 134 F.2d 369 (10th Cir. 1943)....................................................19

*Ross v. Stouffer Hotel Co. (Hawaii) Ltd., Inc.*, 76 Haw. 454, 879 P.1037 (Haw. 1994)...............21

*Wong v. Panis,* 7 Haw.App. 414, 421, 772 P.2d 695, 700 (1989).................................................21

*John & Jane Roes, 1-100 v. FHP, Inc., et al.*, 985 P.2d 661 (Haw 1999) ...............................22, 23

*Washington v. Baenziger*, 673 F.Supp. 14789, 1482 (N.D.Cal. 1987)..........................................24

*Falk v. General Motor Corp.*, 496 F.Supp. 1088, 1098-99 (N.D. Cal. 2007).........................25, 26

*Giulani v. Chuck*, 1 Haw. App. 379, 620 P.2d 733 (1980)......................................................27, 28

*Metzler Contr.Co. LLC v. Stephens,* 2009 WL 1046666 (D.Haw. April 17, 2009) ......................28

## II. STATUTES, RULES, & AUTHORITY

Federal Rules of Civil Procedure § 12(b)(6) ..................................................................................2

Federal Rules of Civil Procedure § 8(a)(2) ...................................................................................2

Hawaii Revised Statutes §521-10...........................................................................................15, 16

Hawaii Revised Statutes §521-41(a)(3).........................................................................................15

65 C.J.S. *Negligence* § 100(2)(b) (1966)......................................................................................18

57 Am.Jur. 2d Negligence, §108 (1971) .......................................................................................18

Restatement (Second) of Torts § 46 comment h ...........................................................................18

Restatement (Second) of Torts §871 ............................................................................................27

6 Wright & Miller, Federal Practice and Procedure, *Civil* §1473 ................................................29

# I.

# INTRODUCTION

This case concerns Ohana Military Communities, LLC, and Forest City Residential Management, LCC's (collectively "Ohana") knowing and intentional lease of pesticide-contaminated homes to thousands of military families at Marine Corps Base Hawaii (MCBH), which resulted in the exposing military families to increases risks of cancer and other health impacts without their knowledge. This is not disputed by Ohana and cannot be challenged under Rule 12(b)(6) for the purpose of a motion to dismiss. Nevertheless, Ohana would have this Court hold as a matter of law that exposing military families to pesticide-contaminated soils is reasonable as a matter of law. Plaintiffs disagree. Further, Ohana's motion ignores the plain allegations of Plaintiffs complaint, rests upon improper factual conclusions under Rule 12(b)(6),[1] and selectively quotes a host of cases to argue for dismissal. Accordingly, because Plaintiffs' complaint states valid claims for Ohana's intentional failure to disclose pesticide-contaminated soils at MCBH, Plaintiffs respectfully request this Court to deny Ohana's motion because:

- **Pesticide Contaminated Soil Levels at MCBH Levels Exceed Tier 2 Levels…not just Tier 1.** As alleged by the complaint and confirmed within Ohana's Pesticide Soils Management Plans, MCBH soils were contaminated with numerous pesticides (including heptachlor, heptachlor epoxide, chlordane, dieldrin, and aldrin) at levels well above Ohana's own site-specific Tier 2 EAL, not just Tier 1.

- *Tilot Oil* **wholly contradicts Ohana's motion.** Indeed, rather than demonstrating that the equivalent of a Tier 1 exceedance cannot support any claim for relief, *Tilot Oil* actually stands for demonstrates that the equivalent of a Tier 1 exceedance can not only support claims for relief, but can even survive summary judgment.

- **Each of the claims alleged by Plaintiffs are supported by specific factual allegations in the complaint.** Finally, as demonstrated below, the complaint contains substantial allegations concerning Ohana's intentional failure to disclose the presence of pesticide-contaminated soils at MCBH, which has resulted in the exposure of thousands of military families to higher risks of cancer and other adverse health consequences.

---

[1] *See, e.g.*, Motion at 15, n6 ("Defendants properly handled the soils.").

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint that fails 'to state a claim upon which relief can be granted.[2] "Rule 12(b)(6) 'dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'"[3] To state a claim, however, a pleading must only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[4] "While Rule 8 does not demand detailed factual allegations, 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[5] On a Rule 12(b)(6) motion, a court must take "all allegations of material fact as true and construe them in the light most favorable to the nonmoving party."[6] "As the Ninth Circuit has stated, '[t]he issue is not whether a plaintiffs' success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims.'"[7] Thus, "the court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any sort of facts that might be proved in support of a plaintiffs' claims."[8]

---

[2] FED. R. CIV. P. 12(b)(6).

[3] *Zamani v. Carnes,* 491 F.3d 990, 996–97 (9th Cir. 2007) (quoting *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001)) (brackets omitted).

[4] FED. R. CIV. P. 8(a)(2).

[5] *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

[6] *Marcus v. Holder,* 574 F.3d 1182, 1184 (9th Cir. 2009).

[7] *Smallwood v. NCsoft Corp.,* 730 F.Supp. 2d 1213, 1220-21 (D.Haw.2010)(quoting *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.) *cert. denied,* 441 U.S.965, 99 S.Ct. 2416 (1979).

[8] *Id.*; *see also Bell Atlantic v. Twombly,* 550 U.S. 544, 557 (2007)(quoting *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct 1827 ("Rule 12(b)(6) does not countenance…**dismissals based on a judge's disbelief of a complaint's factual allegations."**)(emphasis added)(quoting *Scheuer v. Rhodes,* 419 U.S. 232, 94 S.Ct 1683 (1974)(**A well-pleaded complaint may proceed even if it appears "that recovery is very remote or unlikely**.")(emphasis added).

In making this determination, though review is generally limited to the contents of the complaint,[9] a court may also "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."[10] For example, documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss.[11] Finally, if Rule 12(b)(6) dismissal is granted against any claim, leave to amend is still allowed in order for a plaintiff to cure their complaint.[12]

### III.

### ARGUMENT

**A.  Ohana's "Tier 1" Argument Misrepresents the Law and the Facts Alleged by Plaintiffs.**

**1.  Ohana's Tier 1 Arguments Ignores Ohana's Undisputed Knowledge That Pesticides at MCBH Were in Excess of its Own Tier 2 Levels and Carried Extreme Risks for Cancer and Non-Cancer Outcomes.**

Ohana/FC's motion begins its motion with the disingenuous argument that exposing military families to pesticide-contaminated soils ("PI Soils") above Tier 1 Environmental Action Levels (EAL) "cannot serve as the basis for a complaint."[13] In support of this argument, Ohana provides an extended explanation how Tier I EALs are mere "screening levels" and that

---

[9] *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001); *Campanelli v. Bockrath,* 100 F.3d 1476, 1479 (9th Cir.1996).

[10] *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003).

[11] *Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir.1994).

[12] *Rick-Mik Enterprises, Inc. v. Equilong Enterprises, LLC*, 532 F.3d 963, 977 (9th Cir. 2008).

[13] Motion at 8.

"[e]xceeding the Tier I EAL for a specific chemical does not necessarily indicate that the contamination poses significant environmental hazards."[14]

The flaw with this argument is obvious. While exceeding a Tier I EAL does not *necessarily* mean a site is hazardous, it also does not mean a site is *necessarily* safe. Instead, "[w]hen the presence of a potential hazard(s) is confirmed, the specific hazard posed by the contamination is identified and the scope of follow-up actions necessary to address the hazard(s) is identified."[15] In other words, exceeding a Tier I EAL indicates the need for further evaluation based upon the specific risks of the site and the costs of remediation. This second, "site-specific," review is called a "Tier 2 risk assessment." "In a Tier 2 risk assessment, a selected component(s) of the Tier 1 EAL is modified with respect to site-specific considerations. An example may be the adjustment of a screening level for direct exposure with respect to an approved, alternative target risk level…This provides an intermediate but still relatively rapid and cost-effective option for preparing more site-specific risk assessments."[16]

This is what occurred at MCBH. After initial tests confirmed that pesticide-contaminated soils were present MCBH above Tier 1, Ohana developed a Tier 2 EAL for the pesticides at

---

[14] Motion at 10 (quoting Hawaii Department of Health (HDOH) *Technical Guidance Manual for the Implementation of the Hawaii State Contingency Plan*, §13.3 (Interim Final – Nov. 12, 2009; rev. Mar. 2013)("Technical Guidance Manual"), attached to Ohana's Request for Judicial Notice (ECF 9) as Exhibit B. Note that Plaintiffs have no objection to this Court taking judicial notice of the Hawaii Department of Health's Technical Guidance Manual and the Evaluation of Environmental Hazards at Sites with Contaminated Soil and Groundwater.

[15] Ex. B to ECF 9, Technical Guidance Manual, at 13-6 to 13-7.

[16] Ohana Military Communities, LLC, February 2008, Pesticide Soils Management Plan, attached hereto as **Exhibit 1**, at 12. Note that Ohana's Pesticide Soil Management Plan is referenced in the Complaint at 7, ¶34 ("After learning of the presence of pesticide-contaminated soils at MCBH, Defendants created a Pesticide Soils Management Plan (the "Plan") with input from the Hawaii Department of Health (HDOH).").

issue.[17] As Ohana's Pesticide Soil Management Plan at MCBH explains, the Tier 2 EAL chosen

by Ohana would result in exposing military families to the higher excess cancer/non-cancer risk

of "one in one-hundred thousand"($10^{-5}$) rather than the more usual level of "one-in-a-million"

($10^{-6}$):

> Tier 1 EALs are designed to be protective of human health (i.e., direct-exposure) and other potential environmental concerns (e.g., future soil-to-groundwater impacts and urban ecological impacts). Human health Tier 1 soil EALs for pesticides were derived based on the following common assumptions (refer to HDOH [2005] for details on all other input assumptions): 1) unrestricted (i.e., residential) land use; 2) exposure to COPCs in soil via incidental ingestion, dermal contact, and inhalation of volatiles/particulates; 3) a target cancer risk and non-cancer hazard of one-in-one million (i.e., 1E-06) and one, respectively; and 4) exposure for 350 days/yr. for 30 years as a child/adult.
>
> **Site-specific Tier 2 EALs for the target pesticides were derived from HDOH (2005) human health direct exposure Tier 1 values based on an alternative target cancer risk level of 1E-05 and the potential for cumulative cancer effects from exposure to multiple pesticides.** All other Tier 2 residential EAL human health (i.e., direct exposure) exposure assumptions were the same as those used by HDOH for Tier 1 EALs. The justifications for the alternative target cancer risk level of 1E-05 and the adjustment for potential cumulative effects are provided below. The equation and input parameters used to derive Tier 2 EALs, along with a table listing Tier 1 and 2 EALs are also provided below.[18]

Thus, while the Tier 1 EALs for the pesticides at issue were based upon an excess target cancer

and non-cancer risk of one-in-one million, the Tier 2 levels created by Ohana allowed an

alternative excess cancer risk of IE-05, or one-in-one hundred thousand.[19] Ohana justified this

change with the flawed assumption that military families would only live at MCBH for 6 years

(i.e. 2 3-year tours) rather than the usual 30-year assumption.[20] And, using this Tier 2 threshold,

---

[17] Complaint at 7, ¶29 (ECF 1, Exhibit A)  ("Instead, after learning of the presence of pesticide-contaminated soils, Ohana MC investigated and *confirmed* the presence of pesticide contamination at MCBH.").

[18] Ex. 1, Pesticide Soil Management Plan, at 12.

[19] *Id.*

[20] Complaint at 8, ¶35.

Ohana developed its Pesticide Soils Management Plan to remediate neighborhoods in the future that tested *above* Tier 2 by removing and burying the pesticide-contaminated soil and then covering it beneath clean topsoil.[21]

After developing its Tier 2 thresholds for the pesticides at issue, Ohana conducted extensive testing within representative MCBH neighborhoods to determine the level of pesticide contamination of soils at MCBH.[22] This testing involved more than a thousand (1000+) samples[23] and conclusively established that MCBH soils were contaminated with pesticides not just in excess of the Tier 1 EALS, **but in excess of Ohana's site-specific Tier 2 EALS as well**.[24]

Thus, as the complaint alleges and Pesticide Soils Management Plan confirms, Ohana was aware of pesticide-contaminated soils in excess of its own Tier 2 EALs as early as 2008 when it generally described the results of these tests in its Pesticide Soils Management Plan[25] Further, because of these test results, Ohana "concluded that *all* neighborhoods should be assumed to contain pesticide impacted soils beneath *all* existing foundations and surrounding perimeters."[26] Importantly, because Ohana knew levels were many times higher than its own

---

[21] Ex.1, Plan at 23, ¶3.1 ("**Therefore, the overall objective of pesticide soils management is to eliminate these exposure pathways and/or reduce contact with impacted soils that are above levels designed to be protective, i.e. the Tier 2 EALs discussed in Section 3.2**.)(emphasis added).

[22] Complaint at 7, ¶30("Ohana MC investigated and *confirmed* the presence of pesticide contamination at MCBH.").

[23] Plan at 11 (*see* Table 1 confirming Sampling at Mololani & Ulupau neighborhoods.).

[24] Plan at 18 (*see* Table 3 confirming Tier 2 exceedances at Mololani & Ulupau neighborhoods at MCBH).

[25] Complaint at 7, ¶33 ("Upon information and belief, in addition to heptachlor, chlordane, and heptachlor epoxide levels in excess of EPA Tier 1 and Tier 2 levels EAL levels, Defendants are also aware of chemical contamination for aldrin, dieldrin, and endrin at MCBH in excess of recommended limits, but likewise failed to provide any notice of dangers associated with these risks to military families.")(emphasis added).

[26] Complaint at 7, ¶31("Because of positive test results within several MCBH neighborhoods, Ohana MC concluded that *all* neighborhoods should be assumed to contain pesticide impacted soils beneath *all* existing foundations and surrounding perimeters."); *see* Ex. 1, Plan at 23, ¶3.2, *Identifying Pesticide-Impacted Soils* (" All housing communities undergoing demolition and construction must either be previously assessed for pesticide-impacted soils (as described in Section 2.0) **or, in the absence of any**

Tier 2 thresholds, Ohana possessed actual knowledge that cancer and non-cancer risks in these neighborhoods were far above even the "One in a Hundred Thousand" cancer/non-cancer risk threshold that it had unilaterally decided was okay for military families to be exposed to. Despite actual knowledge that pesticide-contaminated soils at MCBH were "in excess of EPA Tier 1 and Tier 2 levels," Ohana "failed to provide any notice of dangers associated with these risks to military families."[27]

Ohana now plays the same games with this Court that it previously played with military families. While Ohana and its counsel absolutely know that pesticides at MCBH were far in excess of both Tier 1 and Tier 2 levels because of its own testing, Ohana filed this motion in hopes it could keep the Court in the dark. Given this knowledge, Ohana's assertions that: a) "[n]ondisclosure of Tier 1 exceedences is not improper if there is nothing inherently hazardous about Tier 1 exceedences;" b) a "less 'specific' pesticide disclosure is appropriate if the amount of pesticides are not hazardous;" and c) it "is not improper to allow 'fugitive dust' if the contamination levels in the dust are not hazardous,") are not just wrong, but patently offensive because all of these arguments imply that levels at MCBH only minimally exceed the Tier 1 EAL when Ohana absolutely knows this is false. Such an omission is misleading at best and is the exact same kind conduct that gives rise to Plaintiffs' claims.

   2.  *Tilot Oil* Demonstrates a Tier 1 Exceedance <u>Can</u> Support Tort Causes of Action.

Ohana's reliance upon *Tilot Oil* is more of the same. *Tilot Oil* concerns potential liability for defendant BP's contamination of groundwater with petroleum, which resulted in benzene

---

previous testing, conservatively assumed to contain pesticide-impacted soils in locations based on the CSM discussed in Section 1.1.4.")(emphasis added).

[27] Complaint 7, ¶¶32-33.

contamination of plaintiffs' property and building, and alleges claims under the Resource Conservation and Recover Act ("RCRA"), 42 U.S.C. §6972(a)(1)(B), and Wisconsin tort law.[28]

Under the RCRA, a person may bring a claim against any person if the contamination poses "an imminent and substantial endangerment to the health or the environment."[29] Importantly, "[r]emedies available under the provision are limited to mandatory or prohibitory injunctions."[30] In other words, a claim under the RCRA is a claim for injunctive relief, which is reflected by the heightened "substantial endangerment" language.

Based on this standard, the court refused to grant the injunctive relief requested by plaintiff, and granted summary judgment for BP, because evidence (i.e. actual test results) demonstrated that current levels of benzene were below relevant OSHA PELs because of the ongoing remediation element.[31] Therefore, the court concluded there was no *threat of imminent and substantial endangerment*. In reaching this decision, the court refused plaintiff's argument that simply exceeding Wisconsin's vapor action levels (VALs) was sufficient evidence of imminent harm because these levels "tells the court only that *something* should be done, not that the current remediation is insufficient to abate a threat of substantial harm."[32]

Importantly, while the *Tilot Oil* court found that injunctive relief was not appropriate, it *refused* to grant summary judgment against plaintiff's tort claims of negligence, nuisance, and trespass. For example, while BP argued that it owed no duty to the plaintiff, the court noted "[d]uty is a question of law, and in Wisconsin 'everyone owes to the world at large the duty of

---

[28] *Tilot Oil, LLC, v. BP Products North America, Inc.*, 907 F.Supp.2d 963 (2012).

[29] *Tilot*, 907 F.Supp.2d at 963.

[30] *Id.*

[31] *Id.* at 965.

[32] *Id.* at 965.

refraining from those acts that may unreasonably threaten the safety of others,"[33] to find that "the court is convinced that BP owes a duty to Tilot in this case."[34]  Thus, *Tilot Oil* "is instructive" for reasons diametrically opposed to Ohana's position because it shows that chemical contamination, even when only in excess of a Tier 1 EAL can support tort claims and even survive summary judgment.

Accordingly, because Ohana provides no legal support for its claim that Tier 1 exceedances cannot support claims for relief – as *Tilot Oil* demonstrates – Plaintiffs respectfully request this Court to deny Ohana's motion to dismiss.

**B.  The Complaint Alleges, Ohana Admits, and the Evidence Establishes Pesticide-Contaminated Soils at MCBH.**

Ohana next argues that "Plaintiffs fail to make any allegations about the actual pesticide levels in the soils around their home,"[35] claiming "there is no allegation that any of [the] neighborhoods Plaintiffs lived in had improper pesticide levels at any point when Plaintiffs actually lived in them,"[36] and that Plaintiffs "make almost no allegations at all about Defendants' activities in managing the soils after taking control of the properties."[37] Further, Ohana asserts, in a footnote, that everyone can go home because "Defendants properly handled the soils."[38]

These argument fails for several reasons. First, these arguments ignore the complaint. Plaintiffs plainly allege that "after learning of the presence of pesticide-contaminated soils,

---

[33] *Id.* at 973 (citations omitted).

[34] *Id.* at 973.

[35] Motion at 14.

[36] Motion at 15.

[37] Motion at 15.

[38] Motion at 15, n.6.

Ohana MC investigated *and confirmed the presence of pesticide contamination at MCBH*,"[39] that this pesticide contamination was in excess of both Tier 1 and Tier 2 levels,[40] and that "chemical contamination at MCBH housing presented increased health risks for military families at MCBH."[41] Thus, Plaintiffs clearly allege that "[the] neighborhoods Plaintiffs lived in had improper pesticide levels" when they lived at MCBH.

Second, Ohana's claim that "Defendants properly handled the soil" contradicts the allegations of the complaint and such factual assertions are improper under Rule 12(b)(6).[42] For example, although Ohana's Pesticide Soils Management Plan mandated "no visible dust" should occur during reconstruction because of the risk of PI Soils,[43] required "detailed maps would be kept and made available" to HDOH and MCBH property management,[44] and "written notification would be provided to residents anywhere they may contact pesticide contaminated soils,"[45] Ohana did <u>not</u> take these steps. Instead, as Plaintiffs' complaint alleges, Ohana "failed to follow their own Plan" by failing to provide disclosure of the actual risks at MCBH,[46] failing to control fugitive dust, which occurred "throughout the demolition of old housing and the construction of new housing,"[47] and "knowingly and intentionally expos[ing] military families at

---

[39] Complaint at 7, ¶30 (emphasis added)

[40] Complaint at 7, ¶33.

[41] Complaint at 7, ¶28.

[42] *Marcus v. Holder,* 574 F.3d 1182, 1184 (9th Cir. 2009)(On a Rule 12(b)(6) motion, a court must take "all allegations of material fact as true and construe them in the light most favorable to the nonmoving party.").

[43] Complaint at 8, ¶35(c).

[44] *Id.* at 8, ¶35(d).

[45] *Id.* at 8, ¶35(e).

[46] Complaint at 8, ¶36(a)

[47] Complaint at 9, ¶37.

MCBH to higher rates of cancer and other adverse health outcomes."[48] Ohana's claim that the complaint "contains no allegations – at all – about the state of the neighborhoods when Plaintiffs actually lived in them"[49] simply ignores the factual allegations of this complaint.

## C.  Plaintiffs' Individual Claims Also Survive Ohana's 12(b)(6) Challenge.

The majority of Ohana's challenges to Plaintiffs' individual claims fail for the same reason because Ohana repeatedly ignores the allegations of the complaint and presents questionable interpretations of case law. As the Court can no doubt guess, such arguments are largely for the purpose of delay, and should be refused for the following reasons:

### 1.  The Factual Allegations of the Complaint Satisfy the Elements of Breach of Contract.

Ohana's first challenge of this section alleges that Plaintiffs have failed to plead the elements of breach of contract. Particularly, Ohana claims that Plaintiffs fail to describe how their leases were breached and have not identified what provision of the lease that was breached.[50] Like its prior representations about Tier 1 EALS and *Tilot Oil*, however, Ohana's arguments play fast and loose with the language of the complaint.

As noted, a court must take all allegations of material fact as true and construe them in the light most favorable to plaintiffs. Here, paragraph 25 of Plaintiffs' complaint plainly states that "[u]nder the terms of their leases, Ohana MC and tenants agree: a) Military families will pay monthly rent equal to their Basic Allowance for Military Housing ("BAH"); Ohana MC will provide safe and habitable housing; and will mediate any disputes or claim between them arising

---

[48] *Id.* at 9, ¶39.

[49] Motion at 2 ("[T]he Complaint contains no allegations – at all – about the state of the neighborhoods.").

[50] Motion at 17.

out of this Lease."[51] Paragraph 25 also provides the specific provisions of Ohana's lease at issue.[52] For example, Paragraph 12 of Ohana's Lease states that "Owner is responsible for maintenance and repair of the Premises, and for ensuring the Premises are safe and habitable."[53]

Similarly, paragraph 34 of Ohana's Lease concerns mediation, which states in relevant part:

> **Mediation**. Owner and Resident agree to mediate any dispute or claim arising between them out of this Lease, before resorting to court action, Mediation fees, if any, shall be divided equally among the parties involved. The parties agree to use a mediator selected from the mediation list incorporated in the Community Handbook. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to make reasonable efforts to resolve the matter through mediation, or refuses to mediate in good faith after a request has been made, then that party shall not be entitled to recover attorney's fees even if that party eventually prevails in the court proceeding.[54]

Plaintiffs' therefore expressly reference the provisions of the lease at issue in their complaint contrary to Ohana's assertions. Further, Plaintiffs specifically describe "when and how" these provisions were breached. With respect to Ohana's breach of safe and habitable housing, Plaintiffs allege:

> 39) Since at least 2006, Defendants have therefore failed to warn military families of pesticide-contaminated soils at MCBH and knowingly and intentionally exposed military families at MCBH to higher rates of cancer and other adverse health outcomes without disclosing these risks to military families or taking sufficient steps to protect military families from such chemical contamination.[55]

Similarly, with respect to mediation, Plaintiffs allege that "[a]fter military families discovered Defendants' failure to disclose the presence of pesticide-contaminated soils, residents asked

---

[51] Complaint at 6, ¶25 (footnotes omitted).

[52] *Id.*, at 6¶25 (see footnotes 1, 2, and 3).

[53] Complaint at 6, ¶25(b), n.2 (quoting Ohana MC Lease Agreement at 5, ¶12); *see* Example of Ohana Lease, attached hereto as **Exhibit 2** (P0000001-17).

[54] Ex. 2, Ohana MC Lease Agreement at 10, ¶34.

[55] Complaint at 9, ¶39.

Defendants to confirm what steps had been taken to address pesticide-contaminated soils at their homes and also asked for Defendants to mediate with them to address their concerns about pesticide-contaminated soils at MCBH."[56] "Defendants, however, refused to mediate with residents despite the plain language of their lease agreements with the Class to address these issues."[57]

Ohana's representation that "Plaintiffs have not identified particular provision of the lease," or that they have "failed to describe the 'when and the how'" of Ohana's breach, is demonstrably untrue.[58] Accordingly, because Plaintiffs' breach of contract claim does not rely upon "bare legal conclusions," Ohana's motion to dismiss Plaintiffs' breach of contract claim should be refused.

**2. Plaintiffs Agree to Voluntarily Withdraw Their Claim for Tortious Breach of Contract.**

Next, Ohana challenges Plaintiffs' claim for Tortious Breach of Contract. Plaintiffs agree that the claim of tortious breach of contract is no longer recognized under Hawaii law and therefore voluntarily agree to withdraw their second claim for relief based upon Tortious Breach of Contract.

**3. Claims 3, 4, and 6 Are All Supported by the Allegations of Plaintiffs' Complaint.**

Ohana's challenge to Plaintiffs claim for Breach of the Implied Warranty of Habitability (Claim 3), Violation of the Landlord Tenant Code (Claim 4), and Negligence (Claim 6) argues

---

[56] Complaint at 9, ¶40.

[57] Complaint at 9, ¶41.

[58] Motion at 17

these three claims are based solely on legal conclusions.[59] Like before, however, Ohana ignores

factual allegations of the complaint to the contrary.

> ### i.   Hawaii law and sufficient facts support Plaintiffs' Third Claim for Breach of Implied Duty of Habitability.

As the Hawaii Supreme Court recognized in 1969, the implied duty of habitability applies

to the lease of real property.[60] This warranty is recognized because it is the landlord who is in the

best position to know of problems with the property:

> **It has come to be recognized that ordinarily the lessee does not have as much knowledge of the condition of the premises as the lessor. Building code requirements and violations are known or made known to the lessor, not the lessee. He is in a better position to know of latent defects, structural and otherwise, in a building which might go unnoticed by a lessee who rarely has sufficient knowledge or expertise to see or to discover them.** A prospective lessee, such as a small businessman, cannot be expected to know if the plumbing or wiring systems are adequate or conform to local codes. Nor should he be expected to hire experts to advise him. Ordinarily all this information should be considered readily available to the lessor who in turn can inform the prospective lessee. These factors have produced persuasive arguments for re-evaluation of the caveat emptor doctrine and, for imposition of an implied warranty that the premises are suitable for the leased purposes and conform to local codes and zoning laws.[61]

Like Plaintiffs' other claims, the complaint's allegations support a claim for the implied

duty of habitability, which is treated as if it is a contractual provision in every contract for lease

or sale of a residence.[62] And as Plaintiffs allege, "Defendants exposed Class Plaintiffs and their

families to increased health risks for cancer and other adverse health outcomes without their

---

[59] Motion at 18.

[60] *Lemle v. Breedon*, 51 Haw. 426, 433, 462 P.2d 470, 474 (Haw. 1969)("The application of an implied warranty of habitability in leases gives recognition to the changes in leasing transactions today…. **Legal fictions and artificial exceptions to wooden rules of property law aside, we hold that in the lease of a dwelling house, such as in this case, there is an implied warranty of habitability and fitness for the use intended.**")(emphasis added).

[61] *Lemle*, 51 Haw. at 433 (quoting *Reste Realty Corp. v. Cooper*, 53 N.J. 444, 452, 251 A.2d 268, 272 (1969)(emphasis added)).

[62] *Id.* at 433 ("**From that contractual relationship an implied warranty of habitability and fitness for the purposes intended is a just and necessary implication.**")(emphasis added).

knowledge and against their will," which breached Ohana's warranty of habitability.[63] In other words, this implied duty of habitability and fitness is breached because the primary reason a person leases a home for themselves and their family is to be safe and have a clean and healthy place to live. Because of Ohana's breach of the implied warranty of habitability, "Plaintiff have sustained damages as a result of Defendants' breach, which includes the overpayment of rent and future medical expenses and medical monitoring of their health and the health of their family members."[64] Further, this claim, like the rest of Plaintiffs' claims rests upon and incorporates the underlying factual allegations of the complaint, which go into great detail about Ohana's knowledge of pesticide-contaminated soils and its failure to discuss this knowledge to military families at MCBHs.[65] Therefore, Ohana's challenge to Plaintiffs' Claim for Breach of the Implied Warranty of Habitability should be denied.

ii. **Hawaii Landlord Tenant Code, Haw. R. Stat. § 521 is relevant to Plaintiffs' claims under contract and tort.**

In similar vein, Ohana's challenge to Claim 4 (Violation of Hawaii Revised Statute Chapter 521 – Landlord Code), argues that neither of the statutory provisions cited by Plaintiffs create an "independent obligation" upon Ohana. The two provisions of Chapter 521 relied upon by Plaintiffs are that Ohana bears an obligation: 1) to act in good faith in the performance of its duties as a landlord;[66] and 2) to maintain the premises in a habitable condition.[67] Again, Ohana's claim that Chapter 521 does not create an "independent" obligation contradicts the plain

---

[63] Complaint at 13, ¶66.

[64] Complaint at 13, ¶67-68.

[65] Complaint at 12, ¶62 ("Class Plaintiffs repeat and incorporate the above paragraphs herein."); *id.* at 7, ¶¶28-33.

[66] HAW. R. STAT. §521-10 ("Every duty imposed by this chapter and every act which must be performed as a condition precedent to the exercise of a right or remedy under this chapter imposes an obligation of good faith in its performance or enforcement.").

[67] HAW. R. STAT. §521-41(a)(3).

language of the statute, which expressly states "[e]very duty imposed by this chapter and every act which must be performed as a condition precedent to the exercise of a right or remedy under this chapter imposes an obligation of good faith in its performance or enforcement."[68] Thus, the chapter itself contemplates that the provisions of Chapter 521 are independent duties for landlords and tenants who wish to pursue remedies under Chapter 521. Chapter 521 is also incorporated into the actual lease obligations of the parties,[69] and is any violation is also evidence of negligence.[70] Therefore, Ohana's compliance with Chapter 521 is at issue whether it is considered an "independent" cause of action or not.

### iii. *Hawaii law and sufficient facts support Plaintiffs' Sixth Claim for Negligence.*

Ohana's last argument of this section contends Plaintiffs fail to allege sufficient facts to support a claim for negligence. Again, Ohana's claim that the complaint contains "no factual allegations," contradicts the clear provisions of the complaint, which not only incorporate the underlying factual allegations, but also contend:

89) Defendants have an obligation to provide safe and health housing for residents and a duty to warn residents of risks.

90) Despite actual knowledge of the presence of pesticide-contaminated soils at MCBH and related health risks, Defendants provided no warning to military families and instead intentionally and knowingly exposed Plaintiffs and their families to increased health risks for cancer and other adverse health outcomes without their knowledge and against their will in addition to knowing violation of Defendants' own Pesticide Soils Management Plan.

---

[68] HAW. R. STAT. §521-10.

[69] Ex. 2, at 10, ¶35; *see also* Complaint at 10, ¶44 ("Under the terms of their lease contracts, Class Plaintiffs agreed to pay rent in exchange for safe and healthy residential housing and that the parties' respective lease obligations and responsibilities will be construed exclusively under the substantive laws of the State of Hawaii, **including but not limited to, Hawaii Revised Statutes Chapter 521 and the common law interpreting those statutes**.")(emphasis added).

[70] *Camara v. Agsalud*, 76 Haw. 212, 218, 685 P.2d 794, 798 (Haw. 1984)(Noncompliance with an established statutory standard is evidence of negligence.).

91)   Defendants have therefore breached their duties to military families at MCBH and Plaintiffs are entitled to all rights and remedies, which incudes their reasonable attorneys fees and costs.

92)   Because of Defendants' negligence, it has been necessary for Class members to incur expenses and other special damages in an amount to be proven at trial.

Plaintiffs therefore allege specific facts that establish Ohana's duty, actual knowledge of pesticide-contaminated soils, breach, and damages.

It should also be recognized that Hawaii law specifically recognizes a claim for negligence under "failure to warn" about dangerous chemicals. In *Kajiya v. Dept. of Water Supply*,[71] the Hawaii Supreme Court addressed the alleged poisoning of plaintiffs' prize koi fish, which were allegedly poisoned by chlorine in the public water supply added by the Board of Water Supply for the County of Maui. Although the trial court granted summary judgment against the plaintiffs' claims, the Intermediate Court of Appeals reversed, specifically holding that the Board of Water Supply's *failure to warn* about the dangerous chemical chlorine in the water stated a claim *under negligence* that survived summary judgment even though it presented no immediate danger to plaintiffs' themselves.[72]

As the Court of Appeals held, "[w]hen one is in control of what he knows or should know is a dangerous agency, which creates a foreseeable peril to persons or property that is not readily apparent to those endangered, to the extent that it is reasonably possible, **one owes a duty to warn them of such potential danger**."[73] The duty to warn arises out of long-recognized negligence law with respect to dangerous agencies and instrumentalities. Thus, "[l]iability for negligence in respect of dangerous instrumentalities, as liability for negligence generally, arises from the failure to use due care, and the general rules and principles governing the standard and

---

[71] *Kajiya v. Department of Water Supply*, 629 P.2d 635 (Haw. 1981).

[72] *Id.* at 640.

[73] *Id. at* 639 (emphasis added).

degree of care which a person is required to exercise to avoid harming another and, in particular, the rule that the care exercised must be in proportion to the danger, are applied where an injury is caused by a dangerous instrumentality or agency.[74]

And while "it is not possible to formulate an all-inclusive list of dangerous agencies, an inherently dangerous substance has been defined as 'one burdened with a latent danger or dangers which derives from the very nature of the substance itself.'"[75] "Poisonous or dangerous drugs, as well as dangerous chemicals, are familiar examples of substances recognized as inherently dangerous."[76] "Chlorine, a toxic gas used among other things as a disinfecting agent in water purification *and in insecticides and herbicides*…falls within this category."[77] Therefore, it is "axiomatic that a person who controls an instrumentality that he knows or should know to be dangerous has, if the danger is not obvious and apparent, **a duty to give warning of the danger**."[78] This "**duty to warn against unusual hazards has long been recognized as a source of tort liability**."[79]

Accordingly, because Hawaii law recognizes that a failure to warn states a claim under negligence, in addition to a defendants' general duty to protect persons from harm, and Plaintiffs allege sufficient facts throughout their complaint concerning Ohana's failure to warn and exposure of military families to pesticide-contaminated soils, Plaintiffs state a valid claim under negligence and Ohana's challenge to this claim must be denied.

---

[74] *Id.* at 639 (quoting 57 Am.Jur. 2d Negligence, §108 (1971)(footnotes omitted)).

[75] *Id.* (citing *Hobart v. Sohio Petroleum*, 255 F.Supp. 972, 975, aff'd 376 F.2d 1011 (D.C.Miss.1966)).

[76] *Id.* (citing 65 C.J.S. *Negligence* § 100(2)(b) (1966).

[77] *Id.* (emphasis added).

[78] *Id.* at 639 (emphasis added)(note the *Kajiya* court cites the jury instruction of 18 Am.Jur. Pl & Pr. Forms (Rev. Negligence Form 157 (1972) with approval, which states: You are

[79] *Id.* (emphasis added)(quoting *Sams v.Englewood Ready-Mix Corp.*, 22 Ohio App.2d 168, 259 N.E.2d 507, 509 (1969)).

**4. Plaintiffs' Fifth Claim (Unfair and Deceptive Trade Practices) Survives Because Ohana's Failure to Disclose Pesticide-Contaminated Soils Has the "Tendency to Mislead."**

Ohana challenge to Claim 5 (Unfair and Deceptive Trade Practices) argues that Plaintiffs' allegations lack specificity.[80] Hawaii law recognizes the validity of this claim, however, and the complaint alleges specific facts to establish Ohana's deceptive and unfair trade practice of leasing military housing without disclosing the presence of pesticide-contaminated soils.

In *State by Bronster v. United States Steel Corp.*, the Hawaii Supreme Court disposed of the concept that defendant needed to have a fraudulent mindset when misleading consumers and held that a deceptive act need only have "***the capacity or tendency to mislead***."[81] Similarly, "federal cases have defined deception as an act causing, as a natural and probable result, a person to do that which he (or she) would not otherwise do.[82] **However, the cases indicate that actual deception need not be shown; the capacity to deceive is sufficient**."[83]

As the complaint explains, "Class Plaintiffs are 'consumers' under Hawaii Revised Statute 480-1 who have personally invested their resources to lease military housing from Defendants,"[84] and "[t]o entice military families to enter leases with Defendants at MCBH, Defendants did not disclose that pesticide-contaminated soils had been confirmed at MCBH and that Defendants had decided to accept pesticide-contaminated soils at MCBH."[85] Instead, "after entering leases with Class Plaintiffs, Defendants asserted it is safe for families to work and play

---

[80] *Smallwood v. NCsoft Corp.*, 730 F.Supp.2d 1213, 1233 (D.Haw. 2010).

[81] *State by Bronster v. U.S. Steel Corp.*, 82 Haw. 32, 51, 919 P2d 294, 313 (Haw. 1996)(citing *Eastern Star, Inc. v. Union Building Materials Corp.*, 6 Haw. App. 125, 712 P.2d 1148 (1985)) (emphasis added).

[82] *Bockenstette v. FTC*, 134 F.2d 369 (10th Cir. 1943).

[83] *Bronster*, 82 Haw. at 51, 919 P2d at 313 (citation omitted)(emphasis added).

[84] Complaint at 15, ¶80.

[85] Complaint at 15, ¶82.

in their yards although they now admit that children and pets should <u>not</u> be allowed to play in the yards near old house foundations and that families should <u>not</u> grow fruits or vegetables in the yards near old house foundations."[86] Because "[t]hese unfair and deceptive trade practices had a *tendency to mislead* Class Plaintiffs into leasing housing at MCBH,"[87] Plaintiffs contend Ohana's practice of leasing "residential housing at MCBH after the presence of pesticide-contaminated soils [were] confirmed at MCBH without disclosing this fact to potential tenants constitutes an unfair and deceptive act and practice in the conduct of trade and commerce that had the tendency to mislead potential tenants."[88] The complaint therefore plainly states a claim for Ohana's unfair and deceptive trade practices and Ohana's motion on this point should be denied.

### 5. Plaintiffs' State Valid Claims for Negligent & Intentional Infliction of Emotional Distress.

#### i. *Plaintiffs' Claim for Intentional Infliction of Emotional Distress.*

Ohana's challenge to Plaintiffs' Claim for Intentional Infliction of Emotional Distress argues that Plaintiffs claim should be dismissed because Ohana's conduct is not so outrageous to qualify for IIED. Plaintiffs allege, however, that Ohana had *actual knowledge* of high levels of pesticide contamination – far in excess of Tier 1 and Tier 2 levels – and failed to disclose these levels to military families leasing at MCBH. While Ohana argues "there is no suggestion that [Ohana] intentionally acted to harm Plaintiffs or that Defendants believed their conduct could somehow harm Plaintiffs," this kind of factual assumption is precisely the kind of assumption Rule 12(b)(6) prohibits. Also, Ohana's claim that "it did believe its conduct could hurt Plaintiffs"

---

[86] Complaint at 15, ¶83.

[87] Complaint at 15, ¶84 (emphasis added).

[88] Complaint at 15, ¶81.

is particularly ridiculous given that the express purpose behind Ohana's Tier 2 analysis was to determine the level of health risks that Ohana felt were acceptable to expose military families to. Thus, when Ohana's test results confirmed pesticide contaminated soils at MCBH far in excess of its Tier 2 threshold, Ohana immediately knew *without doubt* that these contaminated soils carried rates of cancer and non-cancer risks far beyond its own safety threshold.[89]

As *Ross v. Stouffer Hotel Co.* explains, "[r]ecovery for intentional infliction of emotional distress is permitted only if the alleged tortfeasor's acts were 'unreasonable.'"[90] "An act is 'unreasonable' if it is 'without just cause or excuse and beyond all bounds of decency.'"[91] While Ohana claims that "[t]he question of outrageousness 'is for the court in the first instance'" and cites *Ross* for this point, Ohana conveniently ignores the rest of the sentence in *Ross*. What *Ross* actually says is that while "[t]he question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance … [but] where reasonable persons may differ on that question it should be left to the jury."[92] Thus, while the question of reasonableness in the context of a claim for IIED can be made by the Court in some instances, when "reasonable persons may differ on that question it should be left to the jury."[93]

If knowingly exposing thousands of soldiers, spouses, children, and their pets to higher risks of cancer to save money is not "unreasonable" then Plaintiffs are not sure what conduct

---

[89] Complaint at 9, ¶39 ("Since at least 2006, Defendants have therefore failed to warn military families of pesticide-contaminated soils at MCBH and **knowingly and intentionally exposed military families at MCBH to higher rates of cancer and other adverse health outcomes without disclosing these risks to military families or taking sufficient steps to protect military families from such chemical contamination**.")(emphasis).

[90] *Ross v. Stouffer Hotel Co. (Hawaii) Ltd., Inc.*, 76 Haw. 454, 465, 879 P.1037, 1048 (Haw. 1994).

[91] *Ross*, 76 Haw. at 454 (citations omitted).

[92] *Id*. at 454 (quoting *Wong v. Panis*, 7 Haw.App. 414, 421, 772 P.2d 695, 700 (1989) (citing Restatement (Second) of Torts § 46 comment h).

[93] *Id*.

qualifies. Further, Plaintiffs believe this question – i.e. whether Ohana's intentional exposure of thousands of military families to pesticide-contaminated soils is "reasonable" – is one reasonable persons may differ upon and is therefore a question for a jury after development of the evidence. Accordingly, Plaintiffs request Ohana's challenge to Plaintiffs' Claim for Intentional Infliction of Emotional Distress to be denied.

### ii.   *Plaintiffs' Claim for Negligent Infliction of Emotional Distress.*

Ohana's challenge to Plaintiffs' claim for Negligent Infliction of Emotion Distress should also be refused. Though Ohana claims "Plaintiffs are required to plead the existence of a 'physically manifested harm' to either themselves or a third-party," it forgets that exposure to a fear of illness will also support a claim for NIED. As the Hawaii Supreme Court recognized in its 1999 decision of *John & Jane Roes, 1-100, v. FHP*, a claim for emotional distress may also arise through the fear of developing AIDS *even without actual physical harm*.[94]

Although *John & Jane Roes* discusses the fear of AIDS, its application is not limited to AIDS. Rather, the underlying reasoning of *John & Jane Roes* applies equally to other life-threatening diseases and exposures. As the Court explains, "[i]n our view, a reasonable person would foreseeably be unable to cope with the mental stress engendered by an actual, direct, imminent, and potentially life-endangering threat to his or her physical safety."[95] "This concept is not . . . a departure from 'long-standing precedent in the areas of negligence theory and the independent cause of action for [NIED],' but merely entails a recognition that the reasonableness

---

[94] *John & Jane Roes, 1-100 v. FHP, Inc., et al.*, 985 P.2d 661 (Haw. 1999); *see id.* at 668 ("[W]e hold that a plaintiff states a claim of NIED for which relief may be granted where he or she alleges, inter alia, actual exposure to HIV-positive blood, **whether or not there is a predicate physical harm. Thus, assuming that the other elements of NIED are proved, a plaintiff is entitled to a recover if such actual exposure is proved as well.**")(emphasis added).

[95] *Id.* at 666.

standard established in *Rodriguez* has broader application than has previously been employed."[96] Thus, fear of illness, whether AIDS or other sickness such as cancer, is not a departure from "long-standing precedent," but simply one form of emotional distress recognized by Hawaii courts.

Here, Ohana's failure to disclose the presence of pesticide-contaminated soils has resulted in the knowing and intentional exposure of "military families to higher rates of cancer and other adverse health outcomes."[97] Further, after MCBH residents recently learned of Ohana's failure to disclose pesticide-contaminated soils, MCBH residents "asked for maps and other information that is supposed to be available to confirm their homes are safe," but Ohana was neither willing nor able to provide such maps or assurances.[98] And while Ohana originally told MCBH residents that "[f]amilies can safely work and play in their yards,"[99] Ohana now tells MCBH residents they should "keep children or pets from playing in dirt near the foundation of your home,"[100] which confirms why Plaintiffs are now afraid about what they and their families have been exposed to.[101] Thus, because Ohana has "intentionally and knowingly exposed Class Plaintiffs and their families to increased health risks for cancer and other adverse health

---

[96] *Id.* (Note that the reference within *John & Jane Roes* to "*Rodriguez*," refers to the well-known Hawaii case of *Rodriguez v. State*, 52 Haw. 156, 472 P.2d 509 (1970), wherein the Hawaii Supreme Court first recognized the independent tort of negligent infliction of "mental" distress based on alleged emotional distress caused by extensive flood damage to plaintiffs' home that was allegedly caused by the State.).

[97] Complaint at 9, ¶39.

[98] Complaint at 17, ¶101.

[99] Complaint at 8, ¶36 (quoting Ohana's Residential Community Handbook for Marine Corps Neighborhoods, attached hereto as **Exhibit 3,** 14).

[100] Complaint at 17, ¶100.

[101] Complaint at 18, ¶102; *see also id.* at ¶103 ("Defendants' intentional, negligent and/or reckless conduct, acts and omissions have caused emotional distress by causing fear in the community of exposure to harmful pesticides.").

outcomes without their knowledge and against their will,"[102] and that Plaintiffs are fearful of,[103] Plaintiffs have stated a valid claim for Negligent Infliction of Emotional Distress and Ohana's motion must be denied.

**6.  The Allegations of the Complaint State a Claim for Fraud Omission.**

Like its challenge to Plaintiffs' Unfair & Deceptive Trade Practices Claim, Ohana also argues that Plaintiffs fail to state a claim for Fraud (Claim 8) with particularity.[104] Though Ohana concedes with a fraud by omission, "plaintiffs often cannot plead the 'specific time of the omission or the place,'" Ohana still argues Plaintiffs "must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples…of other representations that plaintiff[s] relied on…that failed to include the allegedly omitted information."[105]

As will come as no surprise by now, Plaintiffs do. As Ohana acknowledges, "[w]here the fraud consists of omissions on the part of the defendants, the plaintiff may find alternative ways to plead the particular circumstances of the fraud."[106] "For example, a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, **but a failure to act**."[107] Similarly, in *Falk v. General Motors*, the court discussed the holding of its sister court in *Washington v. Baenziger*:

> **Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.** Another judge in this district has recognized that a fraud

---

[102] Complaint at 18, ¶102.

[103] Complaint at 18, ¶102; *see also id.* at ¶103.

[104] Motion at 24.

[105] Motion at 24-25.

[106] *Washington v. Baenziger*, 673 F.Supp. 14789, 1482 (N.D.Cal. 1987)(cited by Motion at 24).

[107] *Washington*, 673 F.Supp. at 1482 (emphasis added).

by omission claim can succeed without the same level of specificity required by a normal fraud claim. *See, e.g., Washington v. Baenziger,* 673 F.Supp. 1478, 1482 (N.D.Cal.1987) (Weigel, J.) ("Where the fraud consists of omissions on the part of the defendants, the plaintiff may find alternative ways to plead the particular circumstances of the fraud. [F]or example, a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act.") (internal citations and quotations omitted); *see also David K. Lindemuth Co. v. Shannon Financial Corp.,* 637 F.Supp. 991, 995 (N.D.Cal.1986) (Weigel, J.). Accordingly, plaintiffs' fraud by omission claim will not be dismissed purely for failure to precisely state the time and place of the fraudulent conduct.

The elements of fraud in California are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.,* 34 Cal.4th 979, 990, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004). Plaintiffs allege sufficient facts that, if taken as true, suggest that GM had a duty to disclose information about its defective speedometers. Plaintiffs also allege facts that show that defendant actively concealed and failed to disclose material facts that were in its exclusive knowledge. Plaintiffs show knowledge of falsity and intent to defraud by pleading facts that demonstrate that GM knew about the alleged defects, yet did nothing to fix them or to alert customers. The justifiable reliance element of the fraud by omission claim is easily satisfied. As pleaded by plaintiffs, a "reasonable customer" would not have paid the asking price had it been disclosed that the speedometer was defective; similarly, this same customer may have justifiably relied on GM's failure to disclose defects in the speedometer. Finally, plaintiffs allege damages for the expense of replacing their speedometers.[108]

Here, like the plaintiff in *Falk*, Plaintiffs allege that Ohana had a duty to disclose information about pesticide-contaminated soils to military families renting homes in MCBH. This duty can be found in several places. For example, Ohana's Pesticide Soils Management Plan specifically states "that written notification would be provided to residents anywhere they may contact pesticide-contaminated soils"[109] and Hawaii law states that "[w]hen one is in control of what he knows or should know is a dangerous agency, which creates a foreseeable peril to persons or property that is not readily apparent to those endangered, to the extent that it is

---

[108] *Falk v. General Motor Corp.*, 496 F.Supp. 1088, 1098-99 (N.D. Cal. 2007).

[109] *See, e.g.*, Complaint at 8,¶35.

reasonably possible, **one owes a duty to warn them of such potential danger**."[110] Like *Falk*, Plaintiffs also allege facts that show Ohana failed to disclose material facts that were within its exclusive knowledge.[111] Like *Falk*, Plaintiffs show knowledge of the falsity by pleading facts that demonstrate Ohana knew about pesticide-contaminated soils, but did nothing to alert residents.[112] Instead, Ohana put a pesticide "disclosure" into the MCBH Community Handbook that intentionally minimized the risk.[113]Like *Falk*, the "justifiable reliance" element of the fraud by omission is easily satisfied as a "reasonable customer" would no more likely pay full rent for a home in a community contaminated with pesticides with much higher health risks for cancer, than a "reasonable customer" would pay the full price for a car with a defective speedometer.[114] Finally, like *Falk*, Plaintiffs allege damages for Ohana's fraudulent conduct.[115] Plaintiffs therefore adequately state a claim for fraud by omission and request this Court to deny Ohana's motion on this argument.

---

[110] *Id. at* 639 (emphasis added).

[111] Complaint at 19, ¶110 ("Despite these representations, Defendants intentionally and knowingly omitted telling military families that living at MCBH would result in exposure to elevated risks for cancer and other adverse health outcomes."); ¶111 ("Despite these representations, Defendants intentionally and knowingly omitted telling military families that Defendants had decided it was acceptable to expose military families to pesticide contamination in excess of Tier 1 EALs."); and ¶112 ("Despite these representations, Defendants now acknowledge that children and pets should not be allowed to play in their yards and that families should not grow fruits or vegetables in their yards if near the foundation of pre-existing housing…that has never been disclosed.")

[112] *See, e.g.,* Complaint at 7, ¶32 ("Thus, in spite of specific knowledge of chemical contamination of MCBH residential housing, Defendants took over existing leases and entered new leases with military families without disclosure to these families that pesticide-contaminated soils had been found and confirmed at MCBH.").

[113] Complaint at 8-9, ¶36.

[114] Complaint at 19, ¶113 ("Defendants have therefore committed fraud against military families by claiming Defendants would provide safe housing while omitting that pesticide-contaminated have beenconfirmed at MCBH and these soils posed increased health risks for military families.").

[115] Complaint at 19, ¶114 ("Class Plaintiffs have sustained damages as a result of Defendants' fraudulent acts and omissions, which include the overpayment of rent and future medical expenses and medical monitoring of their health and the health of their family members.").

**7.   Plaintiffs State Sufficient Facts to Establish Negligent Misrepresentation.**

Ohana's motion challenges Plaintiffs' negligent misrepresentation claim for the same reasons as it challenges Plaintiff's claim for fraud. Therefore, just as Plaintiffs' complaint provides sufficient detail to satisfy their claim for fraud, Ohana's challenge to negligent misrepresentation fails as well and Ohana's motion should be denied.

**8.   Ohana's Challenge to Prima Facie Tort is Premature.**

Finally, Ohana challenges Plaintiffs' claim for "Prima Facie Tort" claiming that this tort is "generally not a claim recognized by Hawaii law.[116] This is not quite accurate. A claim for prima facie tort is recognized in Hawaii.[117] As *Guiliani* explains, the prima facie tort exists for:

> One who intentionally deprives another of his legally protected property interest or causes injury to the interest is subject to liability to the other if his conduct is generally culpable and not justifiable under the circumstances.[118]

This tort is based on the Restatement (Second) of Torts §871, which reads in relevant part that

> One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.[119]

Here, Plaintiffs undisputely have a legally protected property interest in their homes and an expectation that the homes leased to them by Ohana would be safe, healthy, and habitable. Ohana's failure to disclose the presence of pesticide-contaminated soils, however, deprives Plaintiffs of this interest and Ohana should be held accountable for its conduct.

---

[116] Motion at 26.

[117] *Giulani v. Chuck*, 1 Haw. App. 379, 620 P.2d 733 (1980)(recognizing prima facie tort.").

[118] *Guilani*, 1 Haw.App. at 386.

[119] *Id.* at 387, (quoting Restatement (Second) of Torts §871, s 870. *Liability for Intended Consequences General Principle*).

In *Metzler Contracting Co., LLC v. Stephens*, however, the Hawaii federal court refused to allow a plaintiff to plead prima facie tort as an alternative to a defamation claim reasoning that "[i]n light of the fact that *Giulani* has stood on its own for almost thirty years, this court predicts that the Hawaii Supreme Court would only recognize a separate cause of action for prima facie tort under facts virtually identical to *Giulani*.[120] Given that this tort on its face refers to any "legally protected property interest," Plaintiffs contend the application of prima facie tort is much broader than *Metzler* allows and assert that this tort essentially fills in where other torts leave off. Further, as the dissent in *Giulani* explains, determination of whether a prima facie tort liability exists, "is made by resorting to an evaluative process in balancing the conflicting interests of the litigants, in light of the social and economic interests of society."[121] In other words, a prima facie tort essentially fills in the gaps between other recognized torts and requires a fact and policy intensive evaluation that is arguably inappropriate on a motion to dismiss under Rule 12(b)(6). Accordingly, because this case is at the earliest stage and not yet strained through the process of discovery or advocacy, Plaintiffs request this Court to deny Ohana's motion.

---

[120] *Metzler Contr.Co. LLC v. Stephens,* unreported, 2009 WL 1046666 (D.Haw. April 17, 2009)(J. Kobayashi).

[121] *Giulani*, 1 Haw.App. at 388.

## IV.

## CONCLUSION

Pleadings are not an end in themselves. They are only a means to assist in the presentation of a case to enable it to be decided on the merits.[122] This case deserved to go forward on its merits.

Accordingly, Plaintiffs' respectfully request this Court to deny Ohana's motion to dismiss on all grounds except for its challenge to Tortious Breach of Contract (Claim 2), which Plaintiffs voluntarily withdraw. Further, should this Court grant Ohana's motion in other respect, Plaintiffs request leave to amend to address the Court's concerns.

DATED this 5th day of June 2014.

**LYNCH, HOPPER, SALZANO & SMITH**
P. KYLE SMITH, ESQ.
Hawaii Bar No. 9533
970 N. Kalaheo, Ste. A301
Kailua, Hawaii 96734
T:(702)868-1115

and

**REVERE & ASSOCIATES**
TERRANCE M. REVERE     5857-0
MALIA R. NICKISON-BEAZLEY  9289-0
Pali Palms Plaza
970 North Kalaheo Avenue, Suite A301
Kailua, Hawaii 96734
T: (808) 791-9550

---

[122] 6 Wright & Miller, *Federal Practice and Procedure, Civil* §1473.

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| Plaintiffs Cara Barber, Melissa Jones, Melissa Streeter, and Katie Eckroth, On Behalf of Themselves and All Others Similarly Situated, | CIVIL NO.: 14-00217 HG-KSC |
| Class Plaintiffs, | |
| Vs. | **DECLARATION OF KYLE SMITH** |
| Ohana Military Communities, LLC, Forest City Residential Management, Inc.; and DOE Defendants 1-10, | |
| Defendants. | |

1. I am licensed to practice law in the State of Hawaii;

2. I am one of the attorneys of record for Plaintiffs Cara Barber, et al. in this matter.

3. Attached hereto as Exhibit 1 is a true and accurate copy of Ohana Military Communities, LLC, February 2008, Pesticide Soils Management Plan.

4. Attached hereto as Exhibit 2 is a true and accurate copy of Ohana Military Communities, LLC, 2010 Lease.

5. Attached hereto as Exhibit 3 is a true and accurate copy of Forest City Residential's Community Handbook for Marine Corp Neighborhoods.

6. To the extent this Court considers the extrinsic evidence attached hereto, I hereby request this Court to delay reaching any decision until the close of discovery as contemplated by Federal Rule of Civil Procedure 56(d).

I, Kyle Smith, hereby declare under penalty of law that the foregoing is true and correct, except to those matters stated upon information and belief, and as to those matters, they are believed to be true.

DATED: Kailua, Hawaii, June 5, 2014.

KYLE SMITH

30

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| Plaintiffs Cara Barber, Melissa Jones, Melissa Streeter, and Katie Eckroth, On Behalf of Themselves and All Others Similarly Situated,<br><br>         Class Plaintiffs,<br><br>Vs.<br><br>Ohana Military Communities, LLC, Forest City Residential Management, Inc.; and DOE Defendants 1-10,<br>                    Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br><br><br>**CERTIFICATE OF SERVICE** |

## CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the method of service below, a true and correct copy of the foregoing was served on the following at the at their last known address:

Served electronically through CM/ECF:

        Randall Whattoff, Esq.                rwhattoff@goodsill.com
        Lisa Munger, Esq.                     lmunger@goodsill.com
        Attorneys for Defendants

DATED this 5th day of June 2014.

        _____
        **LYNCH, HOPPER, SALZANO & SMITH**
        P. KYLE SMITH, ESQ.
        Hawaii Bar No. 9533
        970 N. Kalaheo, Ste. A301
        Kailua, Hawaii 96734
        T:(702)868-1115
        *Attorneys for Class Plaintiffs*