**LYNCH, HOPPER, SALZANO & SMITH**
P. KYLE SMITH        9533-0
CHRISTINA LAMBE    8702-0
970 N. Kalaheo Ave., #A301
Kailua, HI  96734
T: (808) 791-9555

**REVERE & ASSOCIATES**
TERRANCE M. REVERE        5857-0
MALIA R. NICKISON-BEAZLEY    9289-0
Pali Palms Plaza
970 North Kalaheo Avenue, Suite A301
Kailua, Hawaii 96734
T: (808) 791-9550

*Attorneys on behalf of Class Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER, AND KATIE ECKROTH, On Behalf of Themselves And All Others Similarly Situated,<br><br>Class Plaintiffs,<br><br>vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; MEMORANDUM IN SUPPORT OF MOTION; EXHIBITS 1-3; DECLARATION OF PATRICK KYLE SMITH; NOTICE OF HEARING MOTION and CERTIFICATE OF SERVICE**<br><br>Hearing Motion<br>Judge: Hon. Helen Gillmore |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs Cara Barber, Melissa Jones, Melissa Streeter, and Katie Eckroth, by and through their attorneys, respectfully request this Court to grant class certification pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. In support of this motion, Plaintiffs stated as follows:

1. Defendants Ohana Military Communities, LLC ("Ohana") and Forest City Residential Management, LLC ("Forest City RM") have renovated, constructed, leased, and managed residential housing on Marine Corps Base Hawaii (MCBH) from 2006 to the present.[1]

2. Forest City RM has acted as Ohana's agent for the lease of residential housing to military families on MCBH from 2006 to the present and is authorized to manage residential housing at MCBH on Ohana's behalf under the terms of Ohana's leases with military families.[2]

3. Between 2006 and 2014, Ohana, by and through its agent Forest City RM, entered into thousands of rental agreements with military families renting housing on MCBH.[3]

4. Although Ohana was aware that soils on MCBH were contaminated with chlordane and other pesticides and contaminants at levels many times higher

---

[1] Plaintiffs' First Amended Complaint ("FAC")(ECF 25) at 7, ¶¶21-23.

[2] FAC at 7, ¶23.

[3] FAC at 7, ¶24.

than the Environmental Protection Agency's ("EPA") EPA's Tier 1 and 2 environmental action levels ("EALs"), Ohana unfairly and deceptively failed to disclose the presence of pesticide-contaminated soils and other toxins to military families before leasing residential housing from Ohana.[4]

5.   Accordingly, Plaintiffs respectfully request this Court certify a damage class on behalf of:

**All current and former persons who have leased or resided in residential properties leased by Ohana Military Communities, LLC, at Marine Corps Base Hawaii ("MCBH") in Kaneohe, Oahu, Hawaii, between 2006 to 2014.**

6.   The Class involves questions of law and fact common to all individual members of the Class, which include: a) Defendants' knowledge and disclosure of pesticide-contaminated soils' b) whether Defendants engaged in deceptive or unfair trade practices related to the lease of residential housing to military families; and c) Defendants' failure to disclose the risks and presence of toxic pesticides and other toxins to military families at MCBH.

7.   The claims, relief, and defenses for the Class are typical of the claims, relief and defenses that apply to individual members of the class. Specifically, all members have suffered similar injury and damages as a result of Defendants'

---

[4] FAC at 22-23, ¶¶74-77.

unfair and deceptive trade practices and class-wide representations. Further the Class claims, relief, and defenses arise from the same conduct by Defendants and are based on the same legal theories.

8. Plaintiffs will adequately and fairly represent the interests of individual members of the proposed Class in that they are similarly situated persons who entered leases with Defendants, lived on MCBH, and were subject to Defendants' unfair or deceptive trade practices.

9. Finally, prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class. Accordingly, a class action under Rule 23 of the Federal Rules of Civil Procedure is in the best interests of judicial economy and is the superior method to resolve this litigation.

DATED:  Honolulu, Hawaii, this 29th day of October 2014.

P. KYLE SMITH
TERRANCE M. REVERE
MALIA R. NICKISON-BEAZLEY
CHRISTINA LAMBE

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................1

II.  STATEMENT OF FACTS ..........................................................2

III.  ARGUMENT ..............................................................................6

A.  Requirements for Class Action Certification under FRCP 23 .............6

B.  Class Plaintiffs Satisfy Each of FRCP 23(a)'s Requirements..............9

    1.  The Class is so Numerous that Joinder is Impracticable.........9

    2.  The Class Shares Common Questions of Law or Fact ............9

    3.  The Claims and Defenses of the Class Representatives are
        Typical of the Class ...............................................................15

    4.  The Class Representatives and their Counsel will Fairly and
        Adequately Protect the Interests of the Class .........................18

        i.  The named class representatives are adequate under Rule
            23(a) ..............................................................................19

        ii.  Plaintiffs' counsel are adequate under Rule 23(a). ......20

C.  Plaintiffs Satisfy the Additional Requirements of FRCP 23(b)(3) ....20

    1.  Common Issues Predominate .................................................21

    2.  Class Treatment is the Superior Method for Litigating Plaintiffs'
        Claims ....................................................................................23

        i.  The interests of individual members of the class are
            served by a class action ................................................24

        ii.  Other litigation has not been commenced by or against
            class members ...............................................................25

        iii.  Concentrating litigation in the particular forum...........26

        iv.  The class can be efficiently managed............................27

D.    Request for Approval of Notice of Class Action and Order Compelling Disclosure of Names and Addresses of MCBH Tenants from 2007 to 2014 ....................................................................................................29

IV.   CONCLUSION ...........................................................................................30

## TABLE OF AUTHORITIES

## <u>CASES</u>

*Accord Joint Executive Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands,*
    244 F .3d 1152, 1163 (9th Cir. 201), cert. denied 534 U.S. 973, 122 S. Ct.
    395, 151 L.Ed.2d 299 (200) ....................................................................28

*Amchem Products, Inc. v. Windsor*
    521 U.S. 591, 625 (1997)..............................................................21, 22

*Amone v. Aveiro,*
    226 F.R.D. 677, 683 (D. Haw. 2005).....................................................10, 13

*Blackie v. Barrack*
    524 F.2d 891, 901 n17 (9th Cir.)..............................................................8, 16

*Blake v. Arnett*
    663 F.2d 906, 912 (9th Cir. 1981).................................................................8

*Dale Electronics, Inc. v. R.C.L. Electronics, Inc.,*
    53 F.R.D. 531 (D.N.H.1971)..........................................................................9

*Daly v. Harris,*
    209 F.RD. 180,185 (D. Haw. 2002)....................................9, 10, 13, 16, 21

*Davis v. Four Seasons Hotel, Ltd.,*
    277 F.R.D. 429, 436-37 (D.Haw. 2011) ...............................9, 12, 16, 17, 18

*Eisen v. Carlisle & Jacqueline*
    417 U.S. 156, 177-78 (1974) .........................................................................8

*Esplin v. Hirschi,*
    402 F .2d 94, 99 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S. Ct. 1194,
    L.Ed.2d 459 (1969) ....................................................................................29

*Garner v. State Dept. of Ed.,*
    122 Haw 150, 164 223 P.3d 215, 229 (Haw. 2009).....................................12

*General Telephone Co. of Northwest v. EEOC,*
446 US 318 (1980) ...................................................................9, 18

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011, 1019 (9th Cir. 1998)..........................8, 13, 18, 24

*Hum v. Dericks,*
162 F.RD. 628, 633 (D. Haw. 1995) .......................8, 9, 10, 13, 21

*In re Dalkon Shield IUD Products Liability Litig.,*
693 F.2D 847 (9'h Cir. 1982) .......................................................18

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
962 F. Supp. 450 (D. N.J. 1997) ..................................................26

*In re Serzone Products Liability Litig.,*
31 F.R.D. 221, 240 (S.D. W. Va. 2005) .........................................7

*In Re Synthroid Marketing Litigation.*
188 F.R.D. 287,291 (N. D. 111. I999)(quoting *Garner v. Healv*, 184 F.RD.
598, 601 (NO. Ill. 1999) ..............................................................13

*Jimenez v. Allstate Ins. Co.,*
765 F.3d 1161, 1168 (9th Cir. 2014)............................................19

*Klay v. Humana Inc.,*
382 F.3d 1241, 1273 (l1th Cir. 204), cert. denied 543 U.S. 1081, 125 S. Ct.
877, 160 L.Ed2d 825 (2005) ........................................................29

*Life of the Land v. Land Use Commission,*
63 Haw. 166, 179, 623 P.2d 431, 442 (1981), quoting *Montgomery Ward &*
*Co. v. Langer*, 168 F.2d 182 (8th Cir. 1948).............................6, 10

*Nakamura v. Countrywide Home Loans, Inc.,*
122 Hawai'i 238, 244, 225 P.3d 680 ,686 (App. 2010)................22

*Parra v. Bashas', Inc.,*
536 F.3d 975, 978-79 (9th Cir. 2008) ..........................................13

*Payne v. Goodyear Tire & Rubber Co.*
    216 F.R.D. 21, 23 (D. Mass. 2003) ............................................................21

*Pistoll v. Lynch*
    96 F.R.D. 22, 28, (D. Haw. 1982) ..............................................................21

*Roper v. Conserve, Inc.,*
    578 F.2d 1106, 1112 (5th Cir. 1978) ..........................................................28

*R.P.-Kv. State,*
    272 F.R.D. 541, 547 (D. Haw. 2011 ...........................................................10

*Smilow v. Southwestern Bell Mobile Sys, Inc.,*
    323 F.3d 32, 42 n.9 (1st Cir. 2003) ............................................................22

*Sugai Prods., Inc. v. Kona Kai Farms, Inc.,*
    1997 WL 824022 at *7 (D. Haw. 1997) .................................................10, 11

*Technograph Printed Circuits, Ltd V Methode Electronics, Inc.,*
    285 F. Supp. 714, 724-725 (N.D.Ill. 1986) ................................................27

*Wal-Mart, Inc. v. Dukes,*
    131 S.Ct. 2541, 2551 (2011) .........................................................12, 13, 14

## <u>STATUTES</u>

Federal Rules of Civil Procedure § 23 ............................................................*passim*

Federal Rules of Civil Procedure § 23(a) ........................................................*passim*

Federal Rules of Civil Procedure § 23(a)(1) ............................................................9

Federal Rules of Civil Procedure § 23(a)(2) .......................................................9, 10

Federal Rules of Civil Procedure § 23(a)(3) .....................................................10, 11

Federal Rules of Civil Procedure § 23(b) ...........................................................6, 14

Federal Rules of Civil Procedure § 23(b)(2) ................................................10, 19, 20

Federal Rules of Civil Procedure § 23(b)(3) ................................................... *passim*

Federal Rules of Civil Procedure § 23(b)(3)(A-D) ................................................. 16

## **OTHER AUTHORITIES**

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS,
     Initial Class Determination: Strategies & Procedures (5th ed. 2013) .... *passim*

7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
FEDERAL
     PRACTICE AND PROCEDURE §1777 (2D ED. 1986) ...................... 14, 18

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER, AND KATIE ECKROTH, On Behalf of Themselves And All Others Similarly Situated,<br><br>   Class Plaintiffs,<br><br> vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>   Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; MEMORANDUM IN SUPPORT OF MOTION; EXHIBITS 1-3; DECLARATION OF PATRICK KYLE SMITH; NOTICE OF HEARING MOTION and CERTIFICATE OF SERVICE**<br><br><br>Hearing Motion<br>Judge: Hon. Helen Gillmore |

## I. INTRODUCTION

This case concerns Ohana Military Communities, LLC ("Ohana") and Forest City Residential Management, LCC's ("Forest City RM") lease of pesticide-contaminated properties to thousands of military families at Marine Corps Base Hawaii (MCBH) from 2006 to 2014. Despite Ohana's actual knowledge – based on hundreds of soil tests – that MCBH neighborhoods were contaminated with pesticides in excess of Tier 1 and Tier 2 Environmental Action Levels ("EALs") before leasing to military families, Ohana told potential tenants only that chlordane and other pesticides "may be found in soils and under and around housing

1

constructed in civilian and military communities" across the United States.[5] Thus, between 2006 and 2014, Ohana entered thousands of residential leases with military families at MCBH claiming only that chlordane and other pesticides **may be found** when it knew beyond a shadow of a doubt these pesticides **had been found** at MCBH. Accordingly, because Ohana's practice of leasing residential properties to military families within contaminated communities without disclosing the contamination constitutes an unfair and deceptive trade practice, Plaintiffs respectfully request this Court to certify a class action on behalf of:

> **All current and former persons who have leased or resided in residential properties leased by Ohana Military Communities, LLC, at Marine Corps Base Hawaii ("MCBH") in Kaneohe, Oahu, Hawaii, between 2006 to 2014.**

## II.   STATEMENT OF FACTS

### *Ohana's Knowledge of Pesticides*

In 1996, under the provisions of the Military Housing Privatization Initiative, the United States Congress authorized the privatization of military housing whereby private companies were allowed to own and manage housing on military bases.[6] Thereafter, in approximately 2006, Ohana took control of military housing on MCBH and has since entered more than a thousand leases with military families

---

[5] FAC at 12, ¶38(a); *see also* Forest City RM's Community Handbook for Marina Corps Neighborhoods ("Handbook"), attached hereto as **Exhibit 1**. Note this disclosure has not changed from 2006 to 2014.

[6] *Id.* at 7, ¶ 21.

on MCBH.[7] Before leasing at MCBH, Ohana were warned that MCBH soils were potentially contaminated with chlordane and other pesticides.[8] Ohana's consultants therefore conducted extensive testing at MCBH, which **confirmed the presence pesticide-contaminated soils at MCBH**. [9] After confirming pesticide-contaminated soils, Ohana created a Pesticide Soils Management Plan to address the risks of pesticide-contaminated properties for MCBH military families, that *approved exposing military families to higher excess cancer and non-cancer health risks* and *required the removal of soil underneath all homes where Ohana planned to build new housing*.[10] Further, the Plan contemplated that, in the absence of other testing, <u>all</u> neighborhoods should be conservatively assumed to contain pesticide-impacted soils beneath and next to all existing foundations.[11]

---

[7] *Id.* at 7, ¶24*; see* Answer to First Amended Complaint ("Answer") (ECF 26) at 7, ¶24 ("Defendants admit that, since 2006, Ohana (and not Forest City) has entered more than 1,000 leases with service members at MCBH.").

[8] FAC at 9, ¶28.

[9] FAC at 9, ¶31.

[10] FAC at 10, ¶34; *see* Pesticide Soil Management Plan, attached hereto as **Exhibit 2**, at 12

[11] FAC at 11, ¶35(b); Ex. 2, Pesticide Soils Management Plan, at 23 ("In the absence of any previous testing, neighborhoods should be conservatively assumed to contain pesticide-impacted soils beneath all existing foundations, within a distance of 2 fee from the foundation, and to a depth of 2 feet bgs. These conservative assumptions for uninvestigated neighborhoods are based on the [Conceptual Site Model] and the results developed from testing at other neighborhoods, as described in Section 2.0.")

**These facts are undisputed by Ohana.** Ohana admits that: a) it was aware of pesticide-contaminated soils in excess of the Hawaii Department of Health's Tier 1 Environmental Action Levels before leasing homes at MCBH;[12] b) it hired environmental consultants who conducted extensive environmental testing and confirmed the presence of pesticide-impacted soils on MCBH;[13] c) testing confirmed the presence of chlordane, heptachlor, and heptachlor epoxide in MCBH soils, in addition to presence of aldrin, dieldrin endrin;[14] d) pesticide levels at MCBH required creation of a Pesticide Soils Management Plan that set

---

[12] Answer at ¶29 ("In response to paragraph 29 of the FAC, **Defendants admit they were aware of pesticide levels above the Hawaiʻi Department of Health's ("DOH") Tier 1 Environmental Action Levels ("EALs"),** but deny that the Soil Management Plan failed to properly address all exceedances. Defendants further deny the implication that they failed to properly manage or address the soils at issue. Defendants deny all remaining allegations of said paragraph.") (emphasis added).

[13] *Id.* at ¶31("In response to paragraph 31 of the FAC, **Defendants admit that Defendants hired independent environmental firms to conduct extensive testing throughout MCBH. These firms have conducted extensive surface and subsurface soil investigations for organo-chlorinated pesticides, and have completed environmental site assessments for all phases of construction.** Defendants deny the implication that they failed to properly manage or address the soils at issue. Defendants deny all remaining allegations of said paragraph.") (emphasis added).

[14] *Id.* at ¶33 ("In response to paragraph 33 of the FAC, **Defendants admit the Soil Management Plan reflects the presence of heptachlor, chlordane, heptachlor epoxide, aldrin, dieldrin and endrin at MCBH**, but deny that the Soil Management Plan failed to properly address all compounds. Defendants further deny the implication that they failed to properly manage or address the soils at issue. Defendants deny all remaining allegations of said paragraph.") (emphasis added).

requirements for managing pesticide-impacting soils based on heightened Tier 2 Environmental Action Levels (EALs);[15] and e) that Ohana's Pesticide Soils Management Plan contemplated the removal of pesticide-contaminated soils from around and underneath <u>all</u> homes before building new homes because of the potential presence of pesticides.[16]

### *Ohana's Failure to Disclose*

Despite Ohana's knowledge of pesticide-contaminated properties on MCBH, however, Ohana did <u>not</u> disclose this information to potential or existing tenants.[17] Instead, Ohana only told military families that "although chlordane and other pesticides are no longer used, they may be found in soils under and around housing constructed in both military and civilian communities" in the United States.[18] Thus,

---

[15] *Id.* at 10, ¶34 ("In response to paragraph 34 of the FAC, **Defendants admit that as a result of extensive surface and subsurface soil investigations, Defendants developed a Soil Management Plan, which was approved by DOH on March 23, 2007. The Plan establishes Tier 2 EALs consistent with guidance from DOH, and sets requirements for the handling of pesticide-impacted soils.** Defendants deny any remaining allegations that are inconsistent therewith.") (emphasis added); *see also* Ex. 2 Soil Management Plan.

[16] *Id.* at 10, ¶35(B) ("In response to paragraph 35(b) of the FAC, **Defendants admit that, in an effort to be as conservative as possible, for each neighborhood where Defendants built new military housing, Defendants removed the soil from around and underneath all homes, regardless of whether the homes actually tested positive for pesticide impacted soil.** Defendants deny all remaining allegations of said paragraph.") (emphasis added).

[17] FAC, at 9, ¶30.

[18] Ex. 1, Community Handbook, at 14 (emphasis added); Note that Defendants admits that this disclosure is provided to MCBH tenants. Answer at 38(A) ("In

despite undisputed knowledge that pesticide-contaminated properties ***had*** **been found at MCBH**, Ohana told military families only that chlordane and other pesticides ***may*** **be found in the United States,** which is intentionally misleading when Ohana had actual knowledge that MCBH neighborhoods were contaminated with pesticides and had even created a Plan because of the risk to military families at MCBH.

## III.   ARGUMENT

### A. Requirements for Class Action Certification under FRCP 23(a)

"The class action was an invention of equity…mothered by the practical necessity of providing a procedural devise so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs."[19] Courts widely recognize that pursuing a case as a "class action will achieve economies for both the litigants and the court. A class action significantly reduces the overall cost of complex litigation, allowing plaintiffs' attorneys to pool their resources and requiring

---

response to 38(a) of the FAC, **Defendants admit that residents generally receive the Residential Community Handbook upon entering a residential lease in a neighborhood managed by Forest City at MCBH. Defendants admit the lease agreements with Plaintiffs' spouses contain the quoted disclosure provisions, but Defendants deny the implications and conclusions drawn by Plaintiffs.**")(emphasis added).

[19] *Life of the Land* v. *Land Use Commission,* 63 Haw. 166, 179,623 P.2d 431, 442 (1981), quoting *Montgomery Ward & Co. v. Langer*, 168 F.2d 182, 187 (8th Cir. 1948).

defendants to litigate all potential claims at once, thereby leveling the playing fields between the two sides."[20]  "Class actions are often the only means for assuring that defendants who have harmed consumers will not benefit from their unlawful conduct simply because of the magnitude of the misconduct and aggregated harm compared to the small magnitude of individual harm."[21] "The individual harm is often too minimal to bear the high costs of individual litigation. Thus, without the class action device, thousands of plaintiffs could be denied their day in court."[22]

Federal Rule of Civil Procedure 23 governs the process of class certification,[23] and directs courts to determine, "[a]t an early practicable time," whether to certify an action as a class action.[24]  Under Rule 23(a), one or more members of a class may sue as the representative parties on behalf of all when:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[25]

---

[20] *In Re Serzone Products Liability Litig.,* 231 F.R.D. 221, 240 (S.D.W. Va. 2005).

[21] *Id.* at 240-41 (citing *Gunnells v. Healthplan Serv., Inc.,* 348 F.3d 417, 426 (4th Cir. 2003)).

[22] *Id.*

[23] FED. R. CIV. P. 23.

[24] FED. R. CIV. P. 23(c)(1)(A).

[25] FED. R. CIV. P. 23(a).

"These four requirements have been more conveniently termed: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy." [26]   In addition to these four requirements, a litigant must also satisfy at least one of the categories of FRCP 23(b), which generally tests whether a class action is logistically possible and superior to other actions.[27]

A trial court is vested with broad discretion in deciding whether to certify a class.[28]   In determining whether a case is appropriate for class treatment, the "attention of the court and the parties, in primarily a non-adversary context, properly focuses on whether the facts meet Rule 23 criteria, and if so, whether class treatment is appropriate or superior."[29]   Generally "for purposes of a class certification motion, the allegations of the complaint must be taken a true."[30] "Since Rule 23 is generally required to be liberally construed, these presumptions

---

[26] *Hum* v. *Dericks,* 162 F.RD. 628, 633 (D. Haw. 1995*); see also Daly* v. *Harris,* 209 F.RD. 180,185 (D. Haw. 2002).

[27] *Hanlon* v. *Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998).

[28] *Blake v. Arnett,* 663 F.2d 906, 912 (9th Cir. 1981).

[29] ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS, *Initial Class Determination: Strategies & Procedures.* § 7: 17 (4th ed. 2002).

[30] *Id.* at §7:17, n.8; *see also Eisen* v. *Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974)(question is not whether plaintiffs will prevail on the merits, but simply whether requirements of Rule 23 have been met); *Hum,* 162 F.R.D. at 633 (not appropriate to consider merits of proposed class action during certification motion); *Blackie v. Barrack*, 524 F.2d 891,901 n17 (9th Cir.)(in ruling on motion for class certification, the district court must accept the substantive allegations of the complaint as true).

arising at an early stage of the litigation, are invoked for the most part in favor of upholding the class."[31] Indeed, "except where underlying class facts and circumstances are sheer speculation the initial burden on the party invoking the class action to show class facts is light.   A well pleaded complaint usually constitutes prima facie showing of these facts sufficient to shift the burden of disproving them to the party opposing the class."[32]

## B. Class Plaintiffs' Satisfy Each of FRCP 23(a)'s Requirements.

### 1. The Class is so Numerous that Joinder is Impracticable.

The first requirement of FRCP 23(a)(1) is that the class be so numerous that joinder of all members be impracticable.[33]  Although "no magic number" has been identified for satisfying the numerosity requirement,[34] decisions reflect that numerosity usually exists when the number of class members exceeds forty.[35] Thus, "the plaintiff whose class numbers in the 25 to 30 range should have a

---

[31] *Id.* at §7.17

[32] NEWBERG ON CLASS ACTIONS at §7:20.

[33] FED. R. CIV. P. 23(a)(1).

[34] *Hum,* 162 F.R.D. at 634.

[35] *See Dale Electronics, Inc.* v. *R.C.L. Electronics, Inc.,* 53 F.R.D. 531 (D.N.H.1971); *General Telephone Co. of Northwest v. EEOC,* 446 US 318 (1980); *Davis v. Four Seasons Hotel Ltd.,* 277 F.R.D. 429, 435 (D. Haw. 2011)(court certifies class of 64 employees).

reasonable chance of success on the basis of number alone."[36] Importantly, while sufficient evidence of class size is needed, a statement of exact class size is not required.[37] The term "impracticable" does not mean "impossible."[38] In determining the numerosity requirement, a court must examine the specific facts of each case and impose no absolute limitations.[39] In determining whether joinder of all members is impracticable, courts consider factors such as class size, geographic dispersion of class members, whether class members are identifiable, ability or motivation of class members to pursue their claims individually, and size of the individual claims.[40]

---

[36] 1 NEWBERG ON CLASS ACTIONS § 3:11 (5th ed. 2013) ("No specific number alone is determinative of whether numerosity is present, **but joinder is generally deemed practicable in classes with fewer than 20 members and impracticable in classes with more 40 members**.")(emphasis added).

[37] *Daly* v. *Harris,* 209 F.R.D. 180, 186 (D. Haw. 2002)(citing 1 NEWBERG ON CLASS ACTIONS § 3:05 (3rd ed. 1992)(citations omitted)).

[38] *Sugai Prods., Inc.* v. *Kana Kai Farms, Inc.,* 1997 WL 824022 at *7 (D. Haw. 1997); *Hum*, 162 F.RD. at 633- 634.

[39] *R.P.-Kv. State,* 272 F.R.D. 541, 547 (D. Haw. *2011). See also, Amone v. Aveiro,* 226 F.R.D. 677, 683 (D. Haw. 2005) ("The numerosity requirement requires examination of the specific facts to each case and imposes no absolute limitations.").

[40] *See Life of the Land,* 63 Haw. 166, 182,623 P.2d 431,444 (1981) (did not disturb finding of numerosity because the record denoted the proposed class consisted of over 150 identifiable members.); *Amone* v. *Aveiro,* 226 F.R.D. 677, 683 (D. Haw. 2005) ("factors relevant to the joinder impracticability issue include judicial economy arising from avoidance of a multiplicity of actions, geographic dispersement of class members, size of individual claims, financial resources of class members, the ability of claimants to institute individual suits, and requests for

Here, Rule 23's numerosity requirement is readily satisfied because the class includes in excess of 1000 current and former tenants as Ohana admits.[41] The sheer number of tenants subjected to Ohana and Forest City RM's unfair and deceptive trade practice therefore makes joinder impracticable. A group of this size, whether pursued by 1000 individual actions or joined into a single action with 1000 military families would, without question, be difficult if not impossible for the courts to effectively administer, which raises the presumption of impracticability.[42] Joinder is further impracticable because military families are frequently relocated to other military bases and locations and/or are deployed on a routine basis. While military families can be readily identified for the purpose of notice, this geographic dispersion would make individual joinder incredibly difficult. Joinder is also impracticable because of the military culture, which exerts pressure upon military families to not make complaints for fear of retaliation. Finally, litigation of these

---

prospective injunctive relief which would involve future class members."); *Sugai Prods., Inc.* v. *Kona Kai Farms, Inc.,* 1997 WL 824022 at *7 (D. Haw. 1997)(Joinder is more practicable when all class members are from the same geographic area or may be easily identified. ).

[41] Answer at 7, ¶24 ("**Defendants admit that, since 2006, Ohana (and not Forest City) has entered more than 1,000 leases with service members at MCBH**.")(emphasis added).

[42] *See* 1 NEWBERG ON CLASS ACTIONS at §3:12 (4th ed. 2002) ("[a]s a general guideline, however, a class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder, while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

claims in a manner other than a class would result in a tremendous duplication of work and waste of judicial resources in addition to raising the risk of inconsistent and conflicting results between different forums. Therefore, because this proposed class includes more than 1000 tenants and the nature of the proposed class makes joinder inherently impracticable, the proposed class readily satisfies the numerosity requirement of Rule 23(a)(1).

### 2.   The Class Shares Common Questions of Law or Fact.

The second prong of FRCP 23(a)(2) requires that common questions of law or fact exist for the class.[43] As the Supreme Court notes, commonality requires that class members' claims "depend upon a common contention…of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[44] "The rule does not require that every question of law or fact be common to every member of the class. Instead, commonality requirement is satisfied 'where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not

---

[43] FED. R. CIV. P. 23(a)(2).

[44] *Davis v. Four Seasons Hotel Ltd.* 277 F.R.D. 429 (D. Haw. 2011), citing *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

identically situated.'"[45]   Thus, commonality is a "flexible standard," which is satisfied when class claims "retain a common core of factual or legal issues with the rest of the class."[46]

As the Ninth Circuit explained in *Hanlon* v. *Chrysler Corp.,* the "commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).   Indeed, Rule 23(a)(2) is construed permissively. All questions of fact and law need not be common to satisfy the rule."[47] Thus, the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."[48]   In other words, Rule 23(a)(2) is satisfied when members of the proposed class share similar legal claims based on *different* facts <u>or</u> similar facts with *different* legal claims.

---

[45] *Hum,* 162 F.R.D. at 635; *Amone,* 226 F.R.D. at 684 ("**Commonality is established by the existence of shared legal issues with divergent factual predicates or a common core of salient facts coupled with disparate legal remedies within the class.**")(emphasis added); *Daly* v. *Harris,* 209 F.R.D. 180, 187 (D. Haw. 2002); *see also Dukes*, 131 S.Ct. at 2556 ("We quite agree that for purposes of Rule 23(a)(2), even a single common question will do.")(citations omitted).

[46] *Parra* v. *Bashas', Inc.,* 536 F.3d 975, 978-79 (9th Cir. 2008).

[47] *Hanlon* v. *Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).

[48] *Id.*, *see also In Re Synthroid Marketing Litigation.* 188 F.R.D. 287,291 (N. D. 111. I999)(*quoting Garner v. Healv.* 184 F.RD. 598, 601 (NO. Ill. 1999)(When "allegations involve standardized conduct by the defendants toward the potential class members ... 'courts have readily found a common nucleus of operative facts.'").

In this case, both the facts *and* legal claims of the class are substantially identical. This is because the core of this case arises and revolves around Defendants common trade practices and conduct related to the lease of MCBH housing. Thus, Defendants' knowledge and response to contaminated properties, as well as rental practices used by Defendants to lease MCBH properties to military families, are two examples of questions of fact that generate class-wide answers for all members of the class.[49] When Ohana learned of pesticide contamination, how Ohana responded, the amount of money Ohana saved by not disclosing contamination, and whether Ohana and Forest City RM's rental practices were unfair or deceptive for consumers, are all key questions that have class-wide *answers* that reflect a "common nucleus of operative fact" extending throughout the class and relevant to every class member.

While these common questions of fact and their answers satisfy FRCP Rule 23(a)(2) by themselves, the class also shares common legal questions and claims that will require classwide resolution. For example, all class members entered residential leases with Ohana and received an identical chlordane "disclosure"

---

[49] *Dukes,* 113 S.Ct. at 2551(quoting Nagarada, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.Rev. 97, 132 (2009)("What matters to class certification …is not the raising of common 'questions' – even in droves – but rather the capacity of class wide proceedings to generate common *answers* apt to drive the resolution of the ligation.").

within Forest City RM's Community Handbook,[50] which is expressly incorporated into the lease.[51] Plaintiffs also allege that Ohana's failure to inform military families about pesticide-contamination at MCBH constitutes an unfair and deceptive trade practice under Hawaii Revised Statute 480-2,[52] in addition to a breach of Ohana's contractual duties to homeowners.[53] Thus, the validity of Defendants' disclosure and their duties to warn tenants of known dangers rests upon a shared questions of law that will apply to every member of the class.[54]

Accordingly, because the class shares common questions of law *and* fact arising from Ohana and Forest City RM's common conduct, Rule 23(b)(2)'s commonality requirement is satisfied as members of

### 3. The Claims and Defenses of the Class Representatives are Typical to the Class.

This case also satisfies the typicality prong of Rule 23(a)(3), because the claims or defenses of the named plaintiffs are typical of the claims and defenses of

---

[50] FAC at 13, ¶38(b).

[51] FAC at 12, ¶38(a)(quoting Ohana MC Exemplar Lease Agreement at 4, ¶11.

[52] FAC at 21-23, ¶¶71-81(Unfair & Deceptive Trade Practices); *id.* at ¶74 ("Leasing residential housing at MCBH after the presence of pesticide-contaminated soils were confirmed at MCBH without disclosing this fact to potential tenants constitutes an unfair and deceptive trade practice in the conduct of trade and commerce that had the tendency to mislead potential tenants.").

[53] FAC at 17-18, ¶¶46-18(Breach of Contract); *id.* at 19-20 ¶¶55-62 (Breach of Implied Warranty of Habitability); and FAC at 20-21, ¶¶63-70 (Violation of HRS Chapter 521 – Hawaii Landlord Tenant Code).

[54] FAC at 24-25, ¶¶82-91 (Negligent Failure to Warn).

all putative class members.[55] Rule23(a)(3) requires that Plaintiffs' claims "be of the same nature as the rest of the class."[56]  In general, typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."[57]  This prong has not been interpreted to mean that all claims of the class members must be identical, but merely that a common significant thread of law or fact must run throughout all of the claims.[58]  "[R]epresentative claims are therefore 'typical' if they are reasonably co-extensive with those of absent class members; [but] they need not be substantially identical."[59]

Rule 23(a)(3)'s typicality requirement is met in this case because there is no "conflict of interest" between the proposed class representatives and members of

---

[55] *See* FED. R. CIV. P. 23(a)(3).

[56] *Daly v. Harris*, 209 F.R.D. 180, 188 (D. Haw. 2002).

[57] *Davis v. Four Seasons Hotel Ltd.* 277 F.R.D. 429, 436-37 (D. Haw. 2011), citing *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir.2010).

[58] 1 NEWBERG ON CLASS ACTIONS, §3.29 (4th ed. 2002) ("claims need not be identical to those of the class; typicality will be satisfied so long as the named representatives' claims share the same essential characteristics as the claims of the class at large.); *see Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975) (typicality does not mean that the representative's claims be coextensive with, or factually identical with, those of the putative Class.).

[59] *Hanlon*, 150 F.3d at 1020; *see also Davis v. Four Seasons Hotel, Ltd.*, 277 F.R.D. 429, 436-37 (D. Haw. 2011)("The class representative claims need only be 'reasonably coextensive with those absent class members; **they need not be 'identical or substantially identical to those of the absent class members.'**")(emphasis added).

16

the proposed class. As this court recognized in *Davis v. Four Seasons Hotel*, the primary requisite of Rule 23(a)(3) is that the representative's claim or defense be "essentially similar" to the claims or defenses throughout the class.[60] Here, all of the proposed class members are present or former tenants of Ohana, who lived at MCBH between 2006 and the present. While class members may have rented MCBH properties at different times within different communities, the "essential similarity" shared by the class is whether Defendants' failure to disclose the presence of pesticide contamination constitutes an unfair and deceptive trade practice for all owners, whether Defendants' breached their contractual duties by not disclosing the presence of pesticide-contaminated soils, and whether Defendants had a duty to warn tenants about the presence of pesticide-contaminated properties. Likewise, Defendants' central defense – that its "disclosure" chlordane and other pesticides "may have been used" in the United States insulates it from liability – applies to all class members equally.

Thus, Rule 23(a)(3) is satisfied because common and significant threads of law and fact run throughout the claims and defenses of the class, and the claims of the class representatives are essentially similar to the claims of the proposed class so that there is no conflict of interest between the class representatives and absent class members.

---

[60] *Davis,* 277 F.R.D. at 436-37.

### 4. The Class Representatives and their Counsel will Fairly and Adequately Protect the Interests of the Class.

The fourth and final requirement of Rule 23(a) is that the class representatives adequately represent the interests of the unnamed class members.[61] As the Ninth Circuit Court of Appeals summarized in *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998), "[r]esolution of two questions determine legal adequacy: 1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and 2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[62] In *Davis v. Four Seasons Hotel Ltd.*, this Court applied this test to find adequacy for a class of service employees although the representative held different practical roles, geographic locations, and wages.[63] While some factual distinctions existed between the class and class representatives, the court still recognized the mutual interest shared by class representatives and members to address their employer's

---

[61] *In re Dalkon Shield IUD Products Liability Litig.*, 693 F.2D 847 (9th Cir. 1982); *see also General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364 (1982)(where representatives possess same interest and have suffered the same injury they will generally be considered to represent the class fairly and adequately).

[62] *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998),

[63] *Davis*, 277 F.R.D. at 436-37.

misleading gratuity practices. [64] Moreover, those minor, relevant, factual distinctions did not bar certification because the same general interest was being served throughout the class.

### i.     The named class representatives are adequate under Rule 23(a).

In this case, the named Plaintiffs are adequate representatives for the proposed class' interests. The class members and class representatives' claims arise from the same misconduct by Ohana.  *All* class members possess an identical interest in demonstrating Ohana's decision to purposefully withhold information about the presence of pesticide-impacted soils and other toxins was deceptive and unfair; *all* class members possess an identical interest in demonstrating that Ohana's failure to disclose the presence of pesticide-impacted soils and other toxins breached its duty to provide safe and habitable housing to tenants and its duty to warn tenants of risks. Thus, there is no antagonism or relevant difference between the named class representatives and the members of the proposed class. Further, because there are four class representatives proposed, any minor differences that might exist will not overwhelm the ability of the class representatives to fairly and adequately represent the interest of MCBH tenants.

---

[64] *Id.*; *see, e.g. Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014)("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification.").

### ii.     Plaintiffs' counsel are adequate under Rule 23(a).

Plaintiff's counsel will adequately protect the interests of the entire class. These attorneys are highly experienced in the prosecution of class actions, have substantial trial and litigation experience, and have tried cases to successful verdicts. Plaintiffs' counsel are well accustomed to the Federal Rules of Civil Procedure, relevant case law, and other pertinent legal issues regarding class actions, and thereby meet the second prong of FRCP(a)'s adequacy requirement. Accordingly, because class representatives and class counsel will both fairly and adequately represent the interests of class, Rule23(a)(4)'s requirement is satisfied.

### C.     Plaintiffs Satisfy the Additional Requirements of FRCP 23(b)(3).

In addition to meeting the FRCP 23(a) prerequisites, plaintiffs seeking class certification must also satisfy one of three conditions in FRCP 23(b).   Here, Plaintiffs seek certification under Rule 23(b)(3). Rule 23(b) concerns whether a class action is logistically possible and superior to other actions. Certification under Rule 23(b)(3) requires movants to demonstrate predominance of common questions and superiority of the class action vehicle under the particular circumstances of this case.[65] This section supplies a means to decide similar disputes efficiently and economically.[66] "The primary question…is whether the

---

[65] *Hum,* 162 F.R.D. at 639.

[66] *Id.*

class is brought together more by a mutual interest in the settlement of common questions than it is divided by the individual member's interesting the matters peculiar to them."[67] Thus, "[c]ertification is appropriate whenever the actual interests of the parties can be served best settling their differences in a single action."[68] Certification under Rule 23(b)(3) requires a predominance of common questions and superiority of the class action vehicle under the particular circumstances.[69]  Both elements are established here.

### 1.    Common Issues Predominate.

The predominance prong of Rule 23(b) examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[70] The rule "does not require uniformity of claims across the entire class," but rather "presupposes that individual issues will exist."[71] Thus, when "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute

---

[67] *Pistoll v. Lynch,* 96 F.R.D. 22, 28, (D. Haw. 1982).

[68] *Daly v. Harris*, 209 F.R.D. 180, 192 (D. Haw. 2002)(citing *Hanlon*, 150 F.3d at 1022 (quoting 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1777 (2d ed. 1986)).

[69] *Hum v. Dericks*, 162 F.R.D. 628, 639 (D.Haw. 1995).

[70] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

[71] *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 23 (D. Mass. 2003).

on a representative rather than on an individual basis."[72]  "There is no rigid test of predominance; rather, it simply requires finding that a sufficient constellation of issues binds class members together."[73]  Thus, a "single, central issue as to the defendants' conduct vis a vis class members can satisfy the predominance requirement even when other elements of the claim require individualized proof."[74]

As the First Circuit has admonished, "classes…made up of consumers are especially likely to satisfy the predominance requirement."[75] Here, Ohana and Forest City RM's failure to inform thousands of military families that MCBH housing was contaminated with pesticides is a "single central issue as to defendants' conduct" that relates to the claims shared by all class members. Plaintiffs and members of the proposed class will require the exact same lay and expert witnesses to prove that Defendants knew of the existence of toxic chemicals. Defendants will likewise call the same witnesses in every case hoping to disprove plaintiffs' claims. "There is no reason for this issue to be rehashed" hundreds or thousands of times.[76]  A more appropriate case for class treatment would be hard to

---

[72] *Nakamura*, 122 Haw. at 247 (quoting *Hanlon*, 150 F.3d at 1019-20)

[73] *Achem Products, Inc.*, 521 U.S. at 625 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000)).

[74] *Id.*

[75] *Smilow v. Southwestern Bell Mobile Sys, Inc.*, 323 F.3d 32, 42 n.9 (1st Cir. 2003).

[76] *Id.* at 28.

imagine as a common nucleus of facts and legal remedies dominates this litigation, which can be resolved in a single class rather than thousands of individual actions.

### 2. Class Treatment is the Superior Method for Litigating Plaintiffs' Claims.

Rule 23(b)(3) requires an inquiry into whether the objectives of the particular class action procedure can be achieved in the particular case.[77] This determination frequently involves a comparative evaluation of alternative mechanisms of dispute resolution.[78] Specifically, this inquiry considers "a) the interests of members of the class in individually controlling the prosecution or defense of separate actions; b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the Class; c) the desirability or undesirability of concentrating the litigation of the claims in the particular form; [and] d) the likely difficulties to be encountered in the management of the class action."[79] In *Hanlon*, the Ninth Circuit explained the superiority of the class action vehicle for claims of owners of minivans with defective rear lift-gate latches:

> Even if efficacious, these claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs. In

---

[77] FED. R. CIV. P. 23(b)(3).

[78] *See* 1 NEWBERG ON CLASS ACTIONS § 4:86 (5th ed. 2013) ("some courts have gone a step further and considered whether a class action is superior in light of other, non-judicial ways of handling the controversy at issue.").

[79] FED. R. CIV. P. 23(b)(3)(A-D).

> most cases, litigation costs would dwarf potential recovery. In this sense, the proposed class is paradigmatic. A fair examination of alternatives can only result in the apodictic conclusion that a class action is the clearly preferred procedure in this case. . . . From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery. . . . A comparative examination of alternatives underscores the wisdom of a class action in this instance.[80]

The same pragmatic justifications apply to this case making a class action the superior method to resolve the thousands of near-identical claims at issue.

### i.   *The interests of individual members of the class are served by a class action.*

Other than a class action, the two alternative mechanisms that could resolve plaintiffs' claims would be: a) thousands of individual actions by individual plaintiffs, or b) a single action joining together thousands of plaintiffs.  Each of these hypothetical alternatives, however, would be both difficult to administer and extremely inefficient.   The difficulties of prosecuting more than a thousand individual lawsuits or managing a single lawsuit with thousands of individual plaintiffs would be out of proportion to the resources and time that would have to be expended by the court and the parties.  Allowing this litigation to proceed as a class action, however, will create efficiency for the court and the parties, and promote consistency by resolving the multitude of identical claims before a single,

---

[80] *Hanlon*, 150 F.3d at 1023.

competent court that can ensure the protection of all class members' interests. Conversely, forcing class members to bring individual claims would create an additional burden on an already overburdened court system, and result in a colossal waste of judicial and party resources because of the duplication of efforts in thousands of individual cases, before different judges, in different courts, simply to resolve *identical* issues of law and fact.

A class action also maximizes judicial economy and resources by streamlining discovery and other procedures under Rule 23. At the same time, because the potential recovery of individual owners is bounded by specific limits that will not change whether these claims are pursued individually or by a class, there is little reason for individual plaintiffs to prefer separate actions. In fact, individual actions would instead result in the inefficient resolution of claims while risking conflicting and inconsistent decisions by different courts.  Therefore, this case presents the ideal scenario for class treatment and is far superior to any available alternative.

### ii.    *Other litigation has not commenced by or against class members.*

After a check of the federal and state judiciary websites, Plaintiffs could not locate any suits filed against Ohana related to this matter that have been commenced by or against any member of the putative class. The lack of other actions supports Plaintiffs' position that this case presents the best vehicle for

certification because there are no other actions that are further along or present a better opportunity to resolve the class-wide questions of law and fact in this case.[81] Rather, because of common legal and factual issues shared by class members, there is a strong interest in resolving the common legal claims and defenses in this single action rather than a multitude of individual actions.

### iii.    *Concentrating litigation in the particular forum.*

This factor focuses on selection of the proper forum.[82] Ohana's business location is in Hawaii, and every member of the putative class has resided in Hawaii at some time, since the class is defined to include past and present residents on MCBH since 2006.  The location where the majority of members reside and the bulk of evidence is maintained is highly relevant in determining appropriate venue.[83]  Here, the location of the base, the properties at issue, and the evidence are all in this forum and venue.  Consequently, this is the proper forum to resolve this litigation. And while true that individual tenants may reside elsewhere, class members outside of Hawaii still have a clear interest in joining the class members

---

[81] *See In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450 (D. N.J. 1997) (explaining that the paucity of individual actions in comparison to the large number of Class Members "suggests little individual interest in prosecuting actions against Prudential").

[82] 1 NEWBERG ON CLASS ACTIONS § 6:29 (5th ed. 2013) (emphasis of factor is on forum selection).

[83] 1 NEWBERG ON CLASS ACTIONS § 6:30 (5th ed. 2013).

in the United States District of Hawai'i and being represented by qualified class counsel in this venue.

### iv.    *The class can be efficiently managed.*

The fourth and final factor concerns the likely difficulties in managing the action.  This includes the size or contentiousness of the class, the onerousness of complying with notice requirements, the number of class members who may try to intervene and participate, and the presence of special and individual issues.[84] Manageability, however, offers grounds for denying class certification only when such difficulties make a class action less fair and efficient than some other method.[85]  Moreover, "the difficulties likely to be encountered in the management of a class action are not important when weighed against the benefits to the class, and any sub-class thereof, and to the administration of justice."[86]

A class involving more than 1,000 families is large, but it is by no means unmanageable.  Liability focuses on whether Ohana engaged in a common misleading trade practice by leasing contaminated homes to military families with disclosure. Members of the class can be easily ascertained through military records

---

[84] 7 A Wright, Miller, & Kane, *Federal Practice and Procedure* § 1780 (1986).

[85] 1 NEWBERG ON CLASS ACTIONS § 6:29 (5th ed. 2013); *see also In re Workers' Compensation,* 130 F.R.D. 99, 110 (D. Minn. 1990) ("dismissal for management reasons is never favored").

[86] *Technograph Printed Circuits, Ltd V Methode Electronics, Inc.,* 285 F. Supp. 714, 724-725 (N.D.Ill. 1986).

and residential records identifying past tenants for the entire base for the relevant timeframe kept by Defendants. Plainly, a class that has available addresses to contact the current tenants, as well as available records to identify past tenants, is readily manageable. Accordingly, maintenance of this suit as a class action represents the most efficient and economical procedure for adjudicating Plaintiffs' claims by providing class members with their "day in court" without overburdening the judicial system with a multiplicity of duplicative lawsuits.[87]

Class adjudication also benefits Defendants. Ohana will be relieved of having to defend thousands of individual lawsuits and their culpability can be decided in one consolidated and fair proceeding. In addition, documents, fact witnesses, and expert testimony will only be presented once. Finally, no other practical litigation alternative exists. "[W]here a court has already made a finding that common issues predominate over individualized losses, we would be hard pressed to conclude that a class action is less manageable than individual

---

[87] *Accord Joint Executive Bd. Of Culinary/Bartender Trust Fund* v. *Las Vegas Sands,* 244 F .3d 1152, 1163 (9th Cir. 201), cert. denied 534 U.S. 973, 122 S. Ct. 395, 151 L.Ed.2d 299 (2001) ("If a comparative evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."); *Roper* v. *Conserve, Inc.,* 578 F.2d 1106, 1112 (5th Cir. 1978) ("The claims of a large number of individuals can be adjudicated at one time, with less expense than would be incurred in any other form of litigation.").

actions."[88]   For all these reasons, a class action is unquestionably the superior method of adjudication for this case.  Again, because the addresses of current and former tenants of MCBH are both easily obtained, adequate notice can be provided to the putative class members without trouble. Indeed, proposed class counsel has previously handled claims for multiple notices in classes involving *tens of thousands* of homeowners.  The logistics of providing notice to more than 1000 families will be neither difficult nor novel.  Finally, because there are no other means by which these claims can economically be brought, class members would otherwise be deprived of a remedy altogether if class certification were to be denied. "If there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require."[89]

## D.     Request for Approval of Notice and Order Compelling Disclosure of Names and Addresses of MCBH Tenants From 2006 to 2014.

Finally, attached hereto as **Exhibit 3** is Plaintiffs' proposed Notice of Class Action, which Plaintiffs respectfully request the Court to approve. Further, Plaintiffs request an order compelling the parties to meet and confer within thirty (30) days of the class certification hearing to develop an accurate address of

---

[88] *Klay* v. *Humana Inc.,* 382 F.3d 1241, 1273 (l1th Cir. 204), *cert. denied* 543 U.S. 1081, 125 S. Ct. 877, 160 L.Ed2d 825 (2005).

[89] *Esplin v. Hirschi,* 402 F .2d 94, 99 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S. Ct. 1194, L.Ed.2d 459 (1969).

military families who rented residential housing at MCBH from 2006 to 2014 in order for the purpose of mailing the approved notice. Subject to this Court's approval of the proposed Notice of Class Action, and after Defendants provide names and addresses for MCBH tenants, Class Counsel will serve the attached notice. Accordingly, Plaintiffs respectfully request this Court to approve the form of the notice and First Class U.S. Mail as the method of serving the same.

## IV.   CONCLUSION

Justice and judicial economy will be best served if these claims receive class certification.   Accordingly, and for the above reasons, Plaintiffs respectfully request this Court to:

1. Grant Plaintiffs' Motion for Class Certification under Federal Rule of Civil Procedure 23;
2. Compel Defendants to provide the names and addresses of all tenants at MCBH from 2006 to 2014;
3. Approve the form and content of the attached proposed Notice of Class Action and authorize Class Counsel to send the Notice to the putative class members by First Class U.S. Mail;[90]
4. Appoint the law firms of a) Lynch, Hopper Salzano & Smith; and b) Revere & Associates as Class Counsel.

DATED:  Honolulu, Hawaii, this 28[9h] day of October 2014.

P. KYLE SMITH
TERRANCE M. REVERE

---

[90] *See* Proposed Notice of Class Action, attached hereto as **Exhibit 3.**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF HAWAII**

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER, AND KATIE ECKROTH, On Behalf of Themselves And All Others Similarly Situated,<br><br>          Class Plaintiffs,<br><br>     vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>          Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br><br><br>**DECLARATION OF PATRICK KYLE SMITH** |

I, PATRICK KYLE SMITH, declare under penalty of law that the following is true and correct to the best of my knowledge and belief:

1. I am a partner in the law firm of Lynch, Hopper, Salzano & Smith, am over the age of eighteen, licensed to practice law before the courts of the State of Hawaii, and competent to testify to the matters herein.

2. The underlying claims concern Defendants' failure to disclose pesticide-impacted soils and other toxins to MCBH families.

3. Attached hereto as Exhibit 1 is a true and correct copy of Forest City RM's Community Handbook for Marine Corps Neighborhoods ("Handbook").

4. Attached hereto as Exhibit 2 is a true and correct copy of Ohana Military Communities, LLC's Pesticide Soils Management Plan.

. . .

5. Attached hereto as Exhibit 3 is a true and correct copy of the Proposed Notice of Class Action.

I declare under penalty of perjury of law that the foregoing is true and correct.


DATED:  Honolulu, Hawaii, October 29, 2014.


P. KYLE SMITH

2

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER, AND KATIE ECKROTH, On Behalf of Themselves And All Others Similarly Situated,<br><br>            Class Plaintiffs,<br><br>    vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br>            Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br><br><br><br>**CERTIFICATE OF SERVICE** |

Pursuant to Federal Rule of Civil Procedure 5(a), the undersigned hereby certifies that **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; MEMORANDUM IN SUPPORT OF MOTION; EXHIBITS 1-3; DECLARATION OF PATRICK KYLE SMITH; NOTICE OF HEARING MOTION and CERTIFICATE OF SERVICE** was served upon the following parties through CM/ECF:

Randall Whattoff, Esq.        rwhattoff@goodsill.com
Lisa Munger, Esq.             lmunger@goodsill.com
Attorneys for Defendants

DATED this 29th day of October 2014.

**LYNCH, HOPPER, SALZANO & SMITH**
P. KYLE SMITH, ESQ. - 9533
970 N. Kalaheo, Ste. A301
Kailua, Hawaii 96734