**LYNCH HOPPER SMITH, LLP**
P. KYLE SMITH                    9533-0
CHRISTINA LAMBE                  8702-0
970 N. Kalaheo Ave., #A301
Kailua, HI  96734
T: (808) 791-9555

**REVERE & ASSOCIATES**
TERRANCE M. REVERE               5857-0
Pali Palms Plaza
970 North Kalaheo Avenue, Suite A301
Kailua, Hawaii 96734
T: (808) 791-9550
*Attorneys on behalf of Class Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER, KATIE ECKROTH, BOB BARBER, TIM JONES, AND RYAN ECKROTH, On Behalf of Themselves And All Others Similarly Situated,<br><br>       Class Plaintiffs,<br><br>  vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>       Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br>**PLAINTIFF CARA BARBER'S OPPOSITION TO DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE RE VIOLATIONS OF THE PARTIES' SETTLEMENT AGREEMENT, FILED JULY 28, 2016; MEMORANDUM IN SUPPORT; DECLARATION OF PATRICK KYLE SMITH; DECLARATION OF CARA BARBER; EXHIBITS 1-3; CERTIFICATE OF SERVICE**<br><br>Hearing Motion<br>Judge: Hon. Helen Gillmor |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     PROCEDURAL HISTORY AND SETTLEMENT TERMS ...................... 4

III.    LEGAL STANDARD FOR MANDATORY INJUNCTIONS AGAINST
        SPEECH ................................................................................................... 7

IV.     OMC'S FACTUAL BACKGROUND IS ANYTHING BUT .................. 10

V.      ARGUMENT ........................................................................................ 14

        A.      This Court's Limited Jurisdiction Does Not Contemplate New Claims
                for Breach of the Agreement .............................................................. 14

        B.      OMC's Challenge to Mrs. Barber's Five Communications Should be
                Rejected Because They Are Not Related to the Agreement Nor Untrue
                ........................................................................................................ 14

                1.      May 3, 2016 Blog Entry ......................................................... 14

                        i.      OMC offers no evidence that contradicts Mrs. Barber's
                                speech .......................................................................... 15

                2.      May 12, 2016 Blog .................................................................. 17

                3.      May 12, 2016 Second Blog ..................................................... 18

                4.      May 13, 2016 Blog .................................................................. 20

                5.      May 16, 2016 Blog .................................................................. 21

                6.      May 29, 2016 Blog .................................................................. 22

                7.      Social Media Comments ......................................................... 23

        C.      OMC is Not Likely To Prevail on the Merits .................................... 24

        D.      Informing Military Families About Pesticide Contamination is Not
                Irreparable Injury .............................................................................. 25

E.    OMC's Balance of Equities Analysis Ignores the Interests of MCBH Families as well as the Unethical Restraint of Trade Sought by OMC26

F.    The Public Interest Does Not Favor OMC's Mandatory Injunctive . 27

G.    OMC's Motion Provides No Basis for and Order to Show Cause .... 29

V.    CONCLUSION ......................................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir.1979) (quoting *Martinez v. Mathews,* 544 F.2d 1233, 1243 (5th Cir.1976))................................................... 9

*Johnson v. Nguyen,* No. 3:12-CV-00538-MMD, 2015 WL 105826, at *9 (D. Nev. Jan. 7, 2015) ................................................................................................. 9

*Martin v. International Olympic Committee,* 740 F.2d 670, 675 (9th Cir.1984)...... 9

*McDermott v. Ampersand Pub., LLC.,* 593 F.3d 950, 957 (9th Cir. 2010) ............. 9

*Overstreet v. United Broth. Of Carpenters and Joiners of America, Local Union No. 1506,* 409 F.3d 1199, 1208 n. 13 (9th Cir. 2005).............................................. 9

*Sierra Forest Legacy v. Rey,* 691 F.Supp.2d 1204, 1207 (E.D. Cal. 2010) ............. 8

*Schrier v. University Of Co.,* 427 F.3d 1253, 1258-59 (C.A.10 (Colo.)(2005). ..... 10

*Stanley v. University of Southern California,* 13 F.3rd 1313 (9th Cir. 1994). ........... 7

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008) ................................................................................................. 7

## STATUTES/RULES

Hawaii Rule of Professional Conduct 5.6.................................................................. 3

Hawaii Revised Statute §634F-1 .............................................................................. 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, ET AL., On Behalf of Themselves And All Others Similarly Situated,<br><br>Class Plaintiffs,<br><br>vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br>**PLAINTIFF CARA BARBER'S OPPOSITION TO DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE RE VIOLATIONS OF THE PARTIES' SETTLEMENT AGREEMENT, FILED JULY 28, 2016; MEMORANDUM IN SUPPORT; DECLARATION OF PATRICK KYLE SMITH; DECLARATION OF CARA BARBER; EXHIBITS 1-3; CERTIFICATE OF SERVICE**<br><br>Hearing Motion<br><br>Judge: Hon. Helen Gillmor |

### PLAINTIFF CARA BARBER'S OPPOSITION TO DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE RE VIOLATIONS OF THE PARTIES' SETTLEMENT AGREEMENT

## I. INTRODUCTION

Defendants Ohana Military Communities, LLC, and Forest City Residential

Management, LCC's (collectively, "OMC") Motion for Preliminary Injunction and

Order to Show Cause [ECF 261][1] requests this Court to issue a mandatory injunction and gag order in response to protected speech by Plaintiff Cara Barber, which OMC claims to violate the Parties' February 2016 Settlement Agreement ("Agreement").

OMC's motion is an egregious misuse of this Court's resources and jurisdiction. Not only is OMC's motion replete with misrepresentations on the evidence and unsupported attacks upon Plaintiffs' counsels, recent evidence confirms the wholly improper purpose of OMC's motion. Indeed, while OMC claims this motion is submitted to address alleged defamatory statements by Mrs. Barber, OMC's recent "proposal" ("Proposal") – wherein it offers to withdraw its motion so long as Plaintiffs' counsel *withdraw as counsel* for hundreds of other Marine Corps Base Hawaii ("MCBH") families who have made recent mediation demands upon OMC – demonstrates the real justification for OMC's motion.[2]

---

[1] Defendants' Motion for Preliminary Injunction and Order to Show Cause Re Violations of the Parties' Settlement Agreement [ECF 261].

[2] *See* OMC's Injunction Proposal, attached hereto as Exhibit 1 ("Defendants proposed terms for a resolution of the current Barber dispute are as follows: …(3) The law firms of Revere and Associates and Lynch Hopper & Smith, and all of their attorneys (the "Revere and Lynch Firms") withdraw as counsel for any client that is a current or former resident of MCBH that retained the Revere and Lynch Firms after the effective date of the settlement agreement (January 5, 2016) to pursue non-disclosure or other soil or pesticide claims related to Marine Corps Base Hawai'i;(4) The Revere and Lynch Firms agree not to assist, refer, or participate, either indirectly or directly, with any other law firm or attorneys in prosecuting claims related to non-disclosure or other soil or pesticide claims related to Marine Corps Base Hawai'i…")(emphasis added).

Such demands are a blackletter violation of Hawaii Rule of Professional Conduct 5.6 [3] as well as SLAPP violation under Haw. Rev. Stat. 634F.[4] Thus, OMC's motion not only seeks to stifle speech by Mrs. Barber related to MCBH regardless of content, but OMC intentionally wields its motion as a sword to prevent new claims by other MCBH families. OMC's onerous blackmail tactics should not be rewarded by this Court and this SLAPP motion should be denied for the following reasons:

- **This Court's jurisdiction over the Agreement extends to disputes "related to the Settlement Agreement and Release," not new causes of action.** Here, OMC's matter requires a new complaint, jury, extensive discovery, and far more than six (6) months to resolve to determine whether speech that has nothing to do with the Agreement is defamatory.

- **OMC ignores key provisions of the Agreement, slants evidence, and misrepresents the content of confidential settlement negotiations.** As evidence and contemporaneous emails demonstrate, ███████████████ ████████████████████████████████████████████████████

- **OMC fails to address, much less meet, the higher standard for mandatory injunctions nor does OMC address injunctions that would curtail protected speech.** Despite its length, OMC's motion offers only cursory

---

[3] Hawaii Rule of Profession Conduct 5.6 Restrictions on Right to Practice (" A lawyer shall not participate in offering or making: … (b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy.") (emphasis added); *see also* ABAB Ethical Guidelines for Settlement Negotiations, Rule 4.2.1 Provisions Restricting Lawyers Right to Practice Law ("A lawyer may not propose, negotiate or agree upon a provision of a settlement agreement that precludes one party's lawyer from representing clients in future litigation against another party.").

[4] Haw. R. Stat. §634F-1 ("'SLAPP' means a strategic lawsuit against public participation and refers to a lawsuit that lacks substantial justification or is interposed for delay or harassment and that is solely based on the party's public participation before a governmental body.").

explanation and conclusory pronouncements that its request "obviously," "clearly," or "undeniably" should be granted without analysis.

## II.   PROCEDURAL HISTORY AND SETTLEMENT TERMS

### *Procedural History & Settlement*

In April 2014, Plaintiffs Cara Barber, Melissa Streeter, Melissa Jones, and Katie Eckroth filed a class action complaint in the First Circuit Court of Hawaii, which was later removed to this Court [ECF1].  On August 14, 2015, Plaintiffs filed their Renewed Motion for Class Certification of Non-UDAP Claims [ECF 211].

On November 13, 2015, Magistrate Judge Kevin Chang heard Plaintiffs' motion, and on November 20, 2015, Judge Chang issued a Finding and Recommendation ("F&R") to deny certification for Plaintiffs' non-UDAP claims [ECF 253]. Although the F&R found that Plaintiffs satisfied all of the requirements of Rule 23(a) and agreed that certification of Plaintiffs' claims as a class action would be the superior method of resolving this litigation under FRCP Rule 23(b)(3), the F&R nevertheless recommended denial of certification under the predominance prong of Rule 23(b)(3) because of: a) the "potential need" for individualized proof due to alleged variations between different MCBH neighborhoods; and b) Plaintiffs' "damage calculations will be highly individualized." On December 4, 2015, Plaintiffs filed an objection to the F&R pointing out that Judge Chang's individualized analysis, particularly with respect to damages, contradicted relevant Ninth Circuit precedent [ECF 258].

While Plaintiffs' objection was pending, the Parties negotiated a settlement with the assistance of Judge Chang. Importantly, while OMC quotes several

provisions of the Agreement within its motion, it repeatedly omits key language relevant to this injunction. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

[5] February 2016 Settlement Agreement, attached to OMC Motion as Exhibit P.

[6] *Id.* at ¶6, No Other Claims or Lawsuits.

On June 29, 2016, OMC filed the present Motion for Preliminary Injunction and Order to Show Cause [ECF 261] for alleged violations of the parties' February 2016 Agreement. OMC's motion claims that a mandatory injunction should issue to strike past speech by Mrs. Barber and prohibit future speech because her speech allegedly violates the Agreement's prohibition against ████████████████

██████████████████████████████████████████████████████

████████"[7] OMC's motion cites five primary communications by Mrs. Barber that OMC claims are either untrue or reveal confidential provisions of the Agreement. As shown below, each challenge fails. On June 29, 2016, the Court held a status conference to set the briefing schedule and to direct the parties to consider a mediated resolution of this matter. Thereafter, Plaintiffs requested a proposal from OMC as contemplated during the Court's status conference, which was received on Friday, July 8, 2016. Unfortunately, OMC's Proposal constitutes prima facie evidence of violation of the Hawaii Rules of Profession Conduct and confirms the SLAPP purpose behind OMC's motion. Importantly, when OMC's counsel was confronted with their blackletter ethics violation, OMC's counsel was not aware of this rule of professional conduct.

---

[7] *Id.*

## III.  LEGAL STANDARD FOR MANDATORY INJUNCTIONS AGAINST FREE SPEECH.

OMC is apparently unaware of the relevant standard for mandatory injunctions that seek to enjoin protected speech. As a starting point, a "preliminary injunction is an extraordinary remedy never awarded as of right."[8] This is true even if the injunction seeks only to maintain the status quo. As the Supreme Court explains, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[9]

"Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[10] "If a plaintiff fails to meet its burden on any of the four requirements for injunctive relief, its request must be denied."[11] "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party

---

[8] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008), citing *Munaf,* 553 U.S., at 689-690, 128 S.Ct., at 2218–2219.

[9] *Id.* at 21.

[10] *Winter,* 555 U.S. at 23, citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997)(emphasis added).

[11] *Sierra Forest Legacy v. Rey,* 691 F.Supp.2d 1204, 1207 (E.D. Cal. 2010) citing *Winter,* 555 U.S. at 22.

of the granting or withholding of the requested relief.'"[12] "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." [13]

When an injunction threatens free speech, however, the Ninth Circuit further warns "a higher bar than usual is set for those seeking injunctive relief where 'there is at least *some risk* that constitutionally protected speech will be enjoined.'"[14] Where there is some risk that protected First Amendment speech would be restrained, "only a particularly strong showing of likely success, and of harm…as well, could suffice to justify issuing the requested injunction."[15]

*Overstreet's* heightened equitable standard does not require the court to decide whether the First Amendment protects Ms. Barber's speech, or even if it *probably* does.[16] Rather, the court "need only determine whether granting the…injunction request would create 'at least some risk that constitutionally protected speech will be enjoined."[17] Here, there is no doubt that OMC's injunction presents "at least some risk" as OMC asks this Court to force Mrs. Barber to retract

---

[12] *Winter* at 24.

[13] *Winter,* at 24.

[14] *McDermott v. Ampersand Pub., LLC.,* 593 F.3d 950, 957 (9th Cir. 2010) citing *Overstreet v. United Broth. Of Carpenters and Joiners of America, Local Union No. 1506,* 409 F.3d 1199, 1208 n. 13 (9th Cir. 2005).

[15] *McDermott,* 593 at 958.

[16] *McDermott* at 959.

[17] *McDermott* at 959.

*all speech of any kind* related to soil at MCBH.[18] OMC's recent Proposal also uses the threat of this motion to demand that Plaintiffs' counsel withdraw from representation of more than one hundred additional MCBH families, thereby further stifling protected speech. Because OMC fails to provide justification to: a) bar Mrs. Barber's speech to military families; b) restrain counsel's professional trade; or c) diminish available information for military families, this motion should be denied.

Importantly, the mandatory nature of OMC's request must also be remembered. As numerous courts have recognized, "[a]n even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary, relief is sought."[19] This is because a mandatory injunction "'goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored.'"[20] When a mandatory injunction is requested, the district court should deny the relief " 'unless the facts and law clearly favor the moving party.'"[21] "Where a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction."[22]

---

[18] Mtn. at 36 ("Defendants respectfully request the Court….[require] Cara Barber to remove and/or retract all post-settlement publications, public statements, blog posts, and social media posts related to soil issues at Marine Corps Base Hawaii.").

[19] *Johnson v. Nguyen,* No. 3:12-CV-00538-MMD, 2015 WL 105826, at *9 (D. Nev. Jan. 7, 2015).

[20] *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir.1979) (quoting *Martinez v. Mathews,* 544 F.2d 1233, 1243 (5th Cir.1976)).

[21] *Stanley v. University of Southern California*, 13 F.3rd 1313 (9th Cir. 1994).

[22] *Martin v. International Olympic Committee,* 740 F.2d 670, 675 (9th Cir.1984) (citation omitted).

Other courts concur. "Because the limited purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), we have "identified the following three types of specifically disfavored preliminary injunctions ...:(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 977 (10th Cir.2004) (*en banc* ) (internal citations and quotations omitted), *cert. granted sub nom on other grounds, Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal,* 544 U.S. 973, 125 S.Ct. 1846, 161 L.Ed.2d 723 (2005)."[23] Thus, OMC's requested injunction is also disfavored because it seeks the very relief it would be entitled to at the conclusion of a trial.

## IV.    OMC'S "FACTUAL BACKGROUND" IS ANYTHING BUT.

It should also be noted at the start that OMC's "factual background" repeatedly misrepresents information to the Court. For the purpose of this opposition, there is neither time nor space to correct every mistake within OMC's motion. Three representations, however, deserve special mention:

### 1.  HDOH has specifically refused to lower EALs at MCBH.

---

[23] *Schrier v. University Of Co.,* 427 F.3d 1253, 1258-59 (C.A.10 (Colo.)(2005).

First, OMC's claim that the HDOH "revised many of its EALs in 2012", and the current Tier 1 EALs are in many cases *higher* than the Tier 2 EALS in the PSMP."[24] Obviously, this statement is made to the Court to suggest that pesticide contamination at MCBH is not that bad. OMC's discussion, however, is misleading because, as OMC concedes, a Tier 2 analysis is *site specific*. The fact that HDOH has different EALs elsewhere is irrelevant to whether the HDOH has allowed different EALs at MCBH. Unsurprising, OMC fails to mention that the HDOH has *expressly refused* to allow raise Tier 2 EALs at MCBH. As the HDOH explains:

> It is true that Ohana Military Communities (OMC) has proposed further adjustments to the site-specific action levels for use at Marine Corps and Navy military family housing in Hawaii. However, we do not intend to consider OMC's proposal unless and until OMC were to enter into a formal oversight agreement with HDOH to allow for the detailed level of review that would be required.[25]

Therefore, OMC's discussion of lower EALs elsewhere fails to candidly inform the Court that EALs at MCBH have <u>not</u> changed nor that the HDOH has refused to consider new EALs at MCBH until OMC submits to greater scrutiny.

## 2. *No Tests Support OMC's Repeated Claim that Soils are Safe.*

Similarly, throughout its motion OMC represents that MCBH soils are safe because OMC purportedly carried out a remediation effort wherein it buried contaminated soils on base beneath "clean" soil.[26] No test of any kind, however,

---

[24] Mtn. at 6.

[25] October 1, 2014, Hawaii Department of Health Letter to Walter Chun, Ph.D., attached hereto as **Exhibit 2**, at ¶1.

[26] Mtn. at 7.

establishes that OMC's efforts effectively remediated the soil. Again, this is confirmed by the Hawaii Department of Health.[27]

### 3. OMC's Misrepresents Settlement Discussions Between the Parties.

[REDACTED]

---

[27] Ex. 2, October 1, 2014, HDOH Letter at 3, ¶5 ("We concurred with OMC's *Pesticide Soils Management Plan* in 2007 because we determined that the effective implementation of the *Plan* would protect human health and the environment from risks posed by PI soils. However, since we do not have conclusive evidence regarding the effectiveness of OMC' s implementation of its *Plan,* we cannot approve or disapprove their actions.").

[28] Mtn. at 8.

[29] July 8, 2016 Email from Kyle Smith, Esq., to Randy Whattoff, Esq., attached hereto as **Exhibit 3.**



## V. ARGUMENT

### A. This Court's Limited Jurisdiction Does Not Contemplate New Claims by OMC for Breach of the Agreement.

---

[30] *Id.*

As this Court is aware, the federal court is one of limited jurisdiction. Here, under the terms of the Order of Dismissal, the parties agreed this Court should retain jurisdiction for six months (i.e., until August 25, 2016) to resolve disputes or actions related to the Agreement. [ECF 271-1] OMC's motion, however, seeks to enjoin Mrs. Barber's speech in advance of bringing claims against Mrs. Barber for breach of the Agreement and/or for disparagement. Such a lawsuit will require a new complaint, extensive discovery to resolve the disputed fact related to claims for negligence and defamation, and cannot be accomplished within the one month that remains under this Court's jurisdiction. Further, this Court's original exercise of jurisdiction was predicated under the Class Action Fairness Act, which is no longer at issue and will not extend jurisdiction over OMC's threatened claims. [ECF 1] Accordingly, Plaintiffs respectfully suggest that this mandatory injunction for an order against Mrs. Barber in advance of litigation would more appropriately be brought in state court where such an action must be maintained.

## B. OMC's Challenge to Mrs. Barber's Five Communications Should Be Rejected Because They Are Not Related to the Agreement Nor Untrue.

### 1) May 3, 2016, Blog Entry

#### i. OMC offers no evidence that contradicts Mrs. Barber's statement.

OMC's motion challenges speech by Mrs. Barber on five primary occasions. The first communication challenged is Mrs. Barber's May 3, 2016, blog post to military families. This lengthy post details Mrs. Barber's personal experiences at MCBH and her fight to address pesticide contamination at MCBH with OMC.

Despite the wide-ranging topics within this post, OMC singles out a single one statement wherein Mrs. Barber writes that "Forest City, the Navy, Marine Corps, Hawaii Department of Health (HDOH) and Hunt Companies know contamination levels in MCBH and Pearl Harbor neighborhoods remain at least 20 times higher then EPA safety recommendations, exposing residents, their children and pets to much higher lifetime rates of cancer and other diseases."[31] OMC challenges this statement for two reasons.

First, OMC claims this statement is untrue because "the soils around and underneath all of the homes built by Ohana were removed and replaced with clean soils."[32] To support this contention, Ohana cites the Declaration of Dennis Poma to argue there "is no evidence that the soils remained at those levels follow construction."[33] This challenge is flawed. First, as the HDOH confirms, no testing establishes that OMC's remediation efforts were effective.[34] Stated differently, while OMC claims that it has remediated soils at MCBH, no actual testing supports its claim. Rather, the only testing at MCBH establishes soils contamination levels that far exceed Tier 1 and 2 levels.[35] OMC reliance upon the self-serving declaration

---

[31] Mtn. at 12, quoting from Exhibit S to OMC's Motion.

[32] Mtn. at 12.

[33] *Id.*

[34] Ex. 2, HDOH Letter to Walter Chun, PhD.

[35] *See* Pesticide Soil Management Plan, attached to Motion as Exhibit D, at 3-1.

of Dennis Poma is no different than Cara Barber relying upon her own observations of improper practices during the alleged remediation.[36]

Next, OMC claims that Mrs. Barber "falsely claims that Defendants did not remove soils because it was too expensive."[37]OMC claims this statement is false because OMC purportedly dug up contaminated soils and buried them beneath new housing. Again, OMC claims this process is documented within closure reports that were provided by OMC through this litigation.[38] OMC therefore contends "there is simply no evidence that supports Ms. [sic] Barber's claim that this work did not take place."

The point of Mrs. Barber's comments, however, is that contaminated soils were not removed from MCBH. Instead, they were simply buried in pits below existing homes without notice to residents. Further, there is no evidence that "clean soils" were used to cover contaminated neighborhoods because no testing ever took place before or after to certify that cover soils were uncontaminated. Finally, soils were buried rather than removed because that is a cheaper alternative than off-site disposal of soils. Finally, OMC quibbles with Mrs. Barber's characterization of EPA RSLs as "EPA safety recommendations." EPA RSLs, however, *are* safety recommendations. As OMC admits, EPA RSLs and HDOH EALs are in place to ensure that owners engage in a site-specific risk assessment to determine what steps

--------------------

[36] *See, e.g.* Declaration of Cara Barber at ¶5.

[37] Mtn. at 14.

[38] Mtn. at 14.

must be taken to safely use property when levels exceed a recommended threshold. While neither EPA RSLs nor HDOH EALs "automatically" trigger a cleanup response, OMC's claim that they are not "safety recommendations" is duplicitous.

Accordingly, OMC points to <u>no</u> portion of Ms. Barber's statement that are untrue. There is no dispute that OMC petitioned HDOH to allow Tier 2 levels that are many times higher than Tier 1 levels. There is no dispute that Tier 2 levels were justified because military families would only live at MCBH for six years. There is no dispute that OMC did not *remove* soils from MCBH, but instead buried contaminated soils beneath new housing without notice to the community. OMC therefore provides no valid basis to challenge Mrs. Barber's statements. Most importantly for this motion, Mrs. Barber's May 3rd speech has nothing to do with the Parties' Agreement. While OMC argues her statements are untrue, nothing about these statements violates the Agreement. At best, OMC solely raises questions of fact it would have to establish at trial should it wish to bring claims against Mrs. Barber for defamation. Thus, this communication provides no basis for a mandatory injunction against the entirety of Mrs. Barber's May 3rd blog.

### 2. May 12, 2016, Blog

OMC next cites Mrs. Barber's May 12th re-post of Plaintiffs' Counsel's letter to putative class members who had contacted their office in order to inform them of the settlement and running of statute of limitations. Other than mentioning this post

and Plaintiffs' counsel's letter, OMC makes no argument the letter is improper in any way. The letter complies with the Settlement Letter. The letter does not disclose any settlement terms. And the letter properly warns military families that their statutes of limitation are no longer tolled by this action and that they should contact an attorney if they wish to pursue a claim. As an independent citizen, absolutely nothing prohibits Mrs. Barber from re-posting counsel's letter nor from continuing to encourage other MCBH families to protect their claims related to pesticide contamination at MCBH.

### 3. May 12, 2016, Second Blog –

OMC next attacks Mrs. Barber for stating "[w]e've been fielding lots of great questions from residents who are learning about the outcome of the class action lawsuit against Forest City and Ohana Military Communities."[39] OMC claims this statement is "telling" because it indicates that Mrs. Barber is" "engaged in a coordinated effort with her former attorneys to solicit new clients;" and "*suggests* that Plaintiffs are in violation of the confidentiality provision of the Settlement Agreement."[40] Once again, OMC's attack is baseless. Despite claiming that this "strongly suggests that Plaintiffs are in violation of the confidentiality provision of the Settlement," OMC has <u>no</u> evidence of disclosure of any settlement terms. Further, nothing within the Agreement prohibits Mrs. Barber or Plaintiffs' counsel telling others that a settlement has been reached. ████████████████████████

---

[39] Mtn at 16.

[40] Mtn. at 16-17.

██████████████████████████████████████████████

████████████████████████████████████ ,"[41] Therefore, nothing prohibits

Mrs. Barber from stating on her blog that the proposed class action was settled.

Nothing prohibits discussing the "outcome" of the initial litigation so long as the

settlement terms remain confidential. And while OMC claims that Mrs. Barber has

technically violated the Agreement because and that ███████████████████

████████████████████████████████████ ,"[42] this

ignores that OMC has not used this language in discussing the Agreement either in

its social media efforts.[43]

     As part of this same blog entry, OMC next challenges Mrs. Barber's comment

that "Defendants should have conducted 'post-construction or confirmation

sampling/testing... to determine if their remediation was effective and the homes and

neighborhoods were safe before they began leasing these homes to military families.

But FM/OMC has never done this testing *and has refused numerous requests*. This

is just one example of how FC/OMC can get away without compliance or without

protecting human health in these contaminated neighborhoods."[44] As already noted

above in Section III, this is an outrageous and improper use of settlement

---

[41] Mtn. Ex. P, Settlement Agreement at ¶4.

[42] Mtn at 17.

[43] *See* OMC Website: (http://yourmcbhhousing.com/contact/ )(" On November 20, 2015, a judge entered findings and recommendations to deny the plaintiff's motion to certify the lawsuit as "class action."  In February 2016, the parties entered into a settlement agreement and the case was dismissed.").

[44] Mtn. at 17.

communications that attempts to disparage Plaintiffs' motives before this Court. Even if OMC's claims were accurate, Mrs. Barber's challenged comments about OMC's refusal to conduct post-remediation testing has <u>nothing</u> to do with the settlement agreement and provides no basis of any kind for OMC's requested mandatory injunction. ███████████████████████████

████████████████████████████████████████

██████████████████████████████████ █████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████. Again, Mrs. Barber's comments stating that OMC has refused to conduct post-remediation testing has <u>nothing</u> to do with disclosure of any term under the Settlement Agreement. OMC's transparent effort to disparage Mrs. Barber before this Court on this point should therefore be refused as a basis for a mandatory injunction and gag order.

## 4. May 13, 2016, Blog Entry

OMC next challenges Mrs. Barber for stating that the pesticides found at MCBH are "some of the most toxic and persistent chemicals known to man."[46] OMC claims "it is absolutely not true that the OCPs at MCBH are 'some of the most

---

[45] July 8, 2016, Email from Kyle Smith, Esq., to Randy Whattoff, Esq., attached hereto as Exhibit 4.

[46] Motion at 18-19.

toxic…chemicals known to man' or that they are 'extremely hazardous.'"[47] To support its claim, OMC quotes an HDOH letter stating that it "is not aware of any documented cases of health effects due to exposure at the low levels associated with organochlorine pesticide residues in soil."[48] Thus, the basis for OMC's mandatory injunction and gag order request here seems to be simply that Mrs. Barber has characterized the organo-chlorinated pesticides at issue (Chlordane, Heptachlor, Aldrin, Dieldin, etc.) in a way that OMC disagrees with. Both factually and legally, this is no basis for a mandatory injunction. There is no dispute that these chemicals are extremely dangerous and were banned for all uses in 1988 because of their persistent risks.[49] More importantly, as with all of the above examples, this blog entry discloses neither term nor amount of the Agreement and does not mention OMC in any way. The Agreement does not give OMC license to police characterizations of pesticides by Mrs. Barber or anyone else. Therefore, there is no legal basis for an injunction related to these comments.

### 5. May 16, 2016, Blog

Next, OMC chastises Mrs. Barber for telling military families that they can contact her former attorneys if they want more information or to determine if they are eligible to pursue their own claim(s) against OMC. OMC specifically objects to

_____

[47] Motion at 19.

[48] Motion at 19.

[49] *See, e.g.* EPA list of "Extremely Hazardous Substances."

Mrs. Barber's use of the word "eligible, because this creates "the impression that MCBH residents are *entitled* to significant settlement amounts and they do not need to actually *prove* any claims against Defendants to obtain recovery."[50] This is a baseless argument. First, other than challenging the term "eligible," OMC offers no explanation how or why Barber's statement is improper in any regard. Nothing prohibits Mrs. Barber from telling other families that they may viable claims nor does anything prohibit Mrs. Barber from stating they can contact her former attorneys if they want more information. OMC's position is instead an improper restraint on Barber's speech that, most importantly for the purpose of this motion, has <u>nothing</u> to do with the terms or amount of the Agreement.

### 6. May 29, 2016, Blog

OMC next objects to Mrs. Barber for "encouraging the filing of lawsuits" by stating on her blog that "HUNDREDS of MCBH and Pearl Harbor families are pursuing accountability and justice for their families through the legal system."[51] Again, no rule or law prohibits Mrs. Barber from helping other families against Forest City protect their claims. Like the others, this statement also has <u>nothing</u> to do with the Agreement. This statement therefore provides no basis for the mandatory injunction and gag order sought by OMC.

### 7. Social Media Comments

---

[50] Mtn. at 22.

[51] Mtn. at 22.

OMC takes umbrage to several comments made by Mrs. Barber on Facebook. This challenge fails, however, for the same reasons as all the others.[52] First, none of the three statements cited by OMC are related to any breach of confidentiality of the Settlement Agreement. Even if they were, however, OMC provide no evidence that any of the statements are untrue. Hundreds *have* reported serious health effects after moving to MCBH. Living at MCBH does expose military families to higher rates of cancer and other adverse health consequences. Airborne contamination from dust *is* expected to be more toxic than contaminated soil. Thus, none of these comments provide a basis for the mandatory injunction and gag order sought by OMC.

OMC's next challenges Mrs. Barber for stating on Facebook that statutes of limitation may be running for MCBH families because of the settlement. This is a fact. And again, nothing in the Agreement prohibits Mrs. Barber from letting military families know about the settlement or the statutes of limitations. Nothing in the Agreement prohibits Mrs. Barber from recommending her former attorneys to families who contact her and are interested in more information.

OMC's contention that Mrs. Barber statement that "similar lawsuits have been very successful," is also unrelated to any breach of the Agreement or disclosure of any term. Similar lawsuits against Forest City and others for nondisclosure of contamination *have* been successful. Similarly, Mrs. Barber's communication with another military spouse that the lawsuit "settled for an undisclosed amount," does

---

[52] Mtn. at 23.

not reveal any term of the Agreement or the amount of consideration. In fact, while OMC agrees this reference is "innocuous," OMC argues it is a technical violation of the Agreement because it conveys a monetary settlement. This statement, however, reveals no provision of the Settlement nor does it disclose the amount, ███████ ████████████████████████████████████.[53] While OMC argues Mrs. Barber failed in this instance to use the specific language suggested by the Agreement, this is no different than OMC's own failure to track this language in its own media efforts as discussed. Finally, OMC comments on Mrs. Barber's YouTube presentation claiming that it includes many of the same allegations fails for the same reasons as provided above.

## C. OMC is Not Likely To Prevail on the Merits

As Mrs. Barber's communications are not factually untrue and do not violate any term of the Agreement, it cannot be said that OMC will likely prevail on the merits to establish a claim for defamation under Hawaii law.[54] Indeed, beyond its conclusory citation to the elements of defamation under *Smallwood*, OMC otherwise fails to provide any basis for its assertions Barber's statements are false, much less made negligently. Establishing negligence at trial requires more than the *ipse dixit* of OMC's counsel. Indeed, establishing negligence at trial requires more than even showing an individual statement is untrue. Mrs. Barber's alleged negligence and

---

[53] ████████████████████████████████████████████████████████
████████████████████████████

[54] Mtn. at 27.

whether her statements are true or false instead present questions of fact that cannot be summarily resolved in advance by mandatory injunction. And because OMC has not shown that *any* of Mrs. Barber's statements are false, much less that Mrs. Barber has made any of these comments negligently, it cannot be found under the high standard of a mandatory injunction that OMC satisfies *Overstreet's* "particularly strong showing" of likely success on the merits.[55]

Even if OMC believes it might ultimately show such facts, its remedy is to bring suit against Mrs. Barber in a separate action for breach of the contract or defamation. Rather than take this route, however, OMC files its motion in hopes this Court will award all the relief OMC might ultimately hope to obtain at trial without any of the effort. This is not the purpose of a mandatory injunction and OMC's effort should be refused by this Court.

### D. Informing Military Families About Pesticide Contamination at MCBH is <u>Not</u> Irreparable Injury.

OMC's next argues that Mrs. Barber's speech harms OMC's reputation by encouraging baseless lawsuits against it. OMC's opinion on the validity of lawsuits related to pesticide contamination at MCBH is just that, an opinion. And harm to business goodwill would only justify an injunction when the underlying statements are defamatory, which cannot be established by OMC. OMC's embarrassment that its efforts to conceal pesticide contamination is now public provides no basis for a mandatory injunction. Similarly, exposing Defendants to the "threat of numerous

---

[55] *McDermott*, 593 F.3rd at 964.

baseless lawsuits" for their own tortious conduct does not constitute irreparable harm. If Barber's suit were baseless, OMC would have prevailed on its motion to dismiss. It did not. Likewise, lawsuits brought by other MCBH residents for the same valid claims are not baseless either and OMC's self-serving characterization of these lawsuits as "baseless" is just that. Mandatory injunctions are not properly used to halt legitimate claims. Accordingly, as the claims brought by others are valid in their own right, there is no basis to enjoin Mrs. Barber's free speech in support of such claims.

### E. OMC's Balance of Equities Analysis Ignores the Interests of MCBH Families as well as the Unethical Restraint of Trade Sought by OMC.

OMC's balance of equities analysis predictably ignores the equities against the mandatory gag order sought by OMC. Here, in reliance upon *Shell Offshore, Inc.,* OMC argues that Mrs. Barber's conduct "plainly interferes" with Defendants' lawful activities while the sought-after injunction is "reasonable. This kind of conclusory assertions is precisely the kind of unreasoned analysis that fails to support injunctive relief. Indeed, the fact OMC "merely seek[s] to require Ms. Barber to remove **all of her post-settlement publications, public statements, blog posts, and social media posts,**"[56] demonstrate that OMC has given no weight to the balance of equity that would result from this injunction. Despite citing <u>no</u> demonstrably untrue statement by Mrs. Barber, OMC nevertheless attempts to strike <u>all</u> speech against MCBH by Mrs. Barber since February 2016. This is not "narrowly

---

[56] Mtn. at 30 (emphasis added).

tailored" as claimed by OMC and only confirms the unreasonableness of OMC's position. On its face, OMC's overbroad request would result in the removal of a tremendous amount of protected speech by Mrs. Barber *and others* on this important issue.

Importantly, nothing has stopped or prohibited OMC from engaging in its own speech on this subject. Indeed, OMC maintains its own social websites to provide its perspective on pesticide contamination at MCBH.[57] A number of OMC's statements on this website are not supported by evidence. For example, despite the HDOH confirming that no testing establishes the effectiveness of OMC's remediation, OMC continues to falsely assure MCBH residents that "Yes, the homes on the base are safe."[58] While such statements support ongoing liability against OMC, the cure for such commentary is not injunctive relief under the Agreement but competing speech in the marketplace. Finally, while OMC claims that Mrs. Barber's conduct "plainly interferes" with Defendants' activities, it provides no evidence beyond the say-so of its attorneys that any of the challenged speech has "unduly interfered" with OMC's lease of homes at MCBH. Accordingly, as OMC's injunctive request does not establish that Mrs. Barber's speech "unduly interferes" with its lease of homes at MCBH, nor that its mandatory injunction is reasonable or narrowly tailored, it must be denied.

### F. The Public Interest Does Not Favor OMC's Mandatory Injunction.

---

[57] *See* OMC website: *http://yourmcbhhousing.com/contact/* .

[58] *Id.*

Last, OMC's mandatory injunction does not favor the public interest. The sole basis for this prong offered by Mrs. Barber is that her speech encourages "unsupported litigation against Defendants."[59] Again, whether future lawsuits by MCBH families are "unsupported" is obviously a matter of opinion, not of fact. Further, OMC's statement that Mrs. Barber "carries a grudge" ignores that the Agreement contemplates and protects her efforts to raise awareness about pesticide contamination at MCBH.[60]

On this point, the only speech cited by OMC concerns her personal understanding that other families have strong claims and may be able to pursue 100% reimbursement of their BAH. OMC fails to cite any rule or law that prohibits an individual from stating their understanding of litigation. The reason is simple…none exists. Therefore, as nothing prohibits Mrs. Barber from explaining her understanding to other military families, OMC analysis on this basis fails.

The crux of OMC's argument, however, is that the public interest favors a preliminary injunction <u>not</u> because speech *by Mrs. Barber* allegedly violates of the Rules of Professional Conduct *for attorneys*. Specifically, OMC claims that Mrs. Barber, who is not an attorney, has violated HRPC 7.1 and HRPC 7.3. These arguments should be rejected out of hand as both HRCP 7.1 and 7.3 concern communications *by attorneys*, <u>not</u> lay people. Mrs. Barber is not an attorney and no

---

[59] Mtn. at 31.

[60] Agreement at ¶7 ("Nothing set forth in this paragraph or this Agreement otherwise limits or bars Plaintiffs' efforts to communicate with other persons or agencies about alleged pesticide contamination at MCBH.").

attorney directed her in any way to provide information to military families.[61] OMC's suggestion that Plaintiffs' counsel used Mrs. Barber to circumvent HRCP 7.1 and 7.3 is inappropriate, insulting, and unsupported. As Mrs. Barber is <u>not</u> subject to the Hawaii Rules of Professional Conduct, Holding Mrs. Barber to an inapplicable professional standard does not support the public interest and therefore does not satisfy *Winter's* final factor. Accordingly, for all the above reasons, OMC's motion must be denied.

### G. OMC's Motion Provides No Basis For An Order to Show Cause.

Finally, OMC asks for an order to show cause why Ms. Barber should not be sanctioned for violation of the terms of the Parties' February 2016 Settlement Agreement. The confidentiality provision of the Agreement requires the parties to "keep confidential the terms of this Agreement and the amount of consideration paid."[62] None of the speech challenged by OMC discloses the amount of consideration paid nor any term. Indeed, virtually every communication challenged by OMC's motion do not even concern the Settlement, but instead address factual disputes over whether OMC has effectively remediated MCBH.

Likewise, none of OMC's three arguments presented by OMC violate the Agreement's confidentiality provision. There is no prohibition against Mrs. Barber initiating conversations with anyone that the initial lawsuit was settled. Second, Mrs. Barber never states or implies that MCBH residents are "entitled to significant

---

[61] Declaration of Cara Barber at ¶2.

[62] Agreement, Ex. P to Motion at ¶7.

settlement amounts if they simply contact her former attorneys and file a lawsuit."
Third, Mrs. Barber's statement that Defendants have "refused" to conduct post-
construction testing has nothing to do with any term of the Agreement or settlement
amount. The fact is that despite requests by Barber and others, including the HDOH,
for OMC to conduct testing, it has refused to conduct new testing. Again, this has
nothing to do with the Agreement and does not support an order to show cause.

Finally, OMC argues once more that Mrs. Barber's comment her lawsuit "settled
for an undisclosed amount" justifies sanctions. As previously explained, this
innocuous comment does not disclose any term of the Agreement nor "the amount
of consideration paid" by OMC. It therefore does not violate the Agreement. OMC
nevertheless argues that this is a technical breach of the Agreement. Even assuming
*arguendo* this were true, this position ignores statements by OMC related to the
settlement that similarly do not follow the language of the Agreement.[63] Indeed,
following the settlement, OMC attempted to notify thousands of residents the case
was settled. Importantly, OMC states that the settlement was reached after the Court
denied class certification. By discussing Magistrate Judge Change's Findings and
Recommendation immediately before the announcement of the Settlement, OMC
implies the settlement was reached because of adverse decisions by the Court. This
is untrue as the Parties' settlement negotiations were undertaken and settlement
reached while Plaintiffs' Objection the Magistrate Chang's F&R was pending.

---

[63] *See* OMC Website: ([http://yourmcbhhousing.com/contact/](http://yourmcbhhousing.com/contact/) ).

OMC's statements to thousands of residents therefore similarly violates the Agreement because it implies the Settlement was unfavorable to Plaintiffs and negotiated under duress. Regardless, OMC's commentary regarding the "Barber litigation" settlement does not track the Agreement and it, by its own arguments, constitutes an even larger breach of the Agreement.

OMC also contends that Mrs. Barber should be ordered to show cause because she is prohibited from "participating" in future litigation. This is not accurate. ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████.[64] Claims brought by other families were not released by this Agreement and nothing prohibits Mrs. Barber from raising awareness of historic pesticide contamination at MCBH and helping military families protect their legal rights. Accordingly, OMC's request for an order to show cause should be denied.

## IV. CONCLUSION

Accordingly, because OMC: a) ignores the relevant standard for injunctive relief; b) ignores the language of the Agreement; c) fails to meet the "particularly strong showing of likelihood of success on the merits or evidence of irreparable injury; d) disregards unbalanced equities that would result from its overbroad injunction; e) and presents no convincing argument that Mrs. Barber should be held

---

[64] Agreement, Ex. P to Motion, at ¶6.

to a professional standard for attorneys as a matter of public interest, its motion for mandatory injunctive relief must be denied.

DATED:  Kailua, Hawaii, this 13th day of July 2016.

_P. KYLE SMITH_
P. KYLE SMITH
TERRANCE M. REVERE
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER, KATIE ECKROTH, BOB BARBER, TIM JONES, AND RYAN ECKROTH, On Behalf of Themselves And All Others Similarly Situated,<br><br>       Class Plaintiffs,<br><br>  vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>       Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br>**DECLARATION OF PATRICK KYLE SMITH** |

I, PATRICK KYLE SMITH, declare under penalty of law that the following is true and correct to the best of my knowledge and belief:

1. I am a partner in the law firm of Lynch Hopper Smith, am over the age of eighteen, licensed to practice law before the courts of the State of Hawaii, and competent to testify to the matters herein.

2. The underlying claims of this case concern Defendants' failure to disclose pesticide-impacted soils and other toxins to MCBH families.

3. Attached hereto as Exhibit 1 is a true and correct copy of OMC'S Settlement Proposal ("Proposal"), which was emailed to me on July 8, 2015

4. Attached hereto as Exhibit 2 is a true and correct copy of a letter from the Hawaii Department of Health, which was obtained during discovery in this matter from Walter Chun, PhD.

5. Attached hereto as Exhibit 3 is a true and correct copy of settlement emails dated December 23-July 13 between myself and Randy Whattoff, Esq., in this matter.
   <span style="color:red">Exhibit 3 will be submitted under seal.</span>

6. Pursuant to Local Rule 7.5, this motion has been formatted in Time New Roman 14 pt. font and contains 7,626 words.

I declare under penalty of perjury of law that the foregoing is true and correct.

DATED:  Kailua, Hawaii, this 13th day of July, 2016.


P. KYLE SMITH

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER, KATIE ECKROTH, BOB BARBER, TIM JONES, and RYAN ECKROTH On Behalf of Themselves and All Others Similarly Situated,<br><br>          Class Plaintiffs,<br><br>     vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>          Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br>**DECLARATION OF CARA BARBER** |

     I, CARA BARBER, declare under penalty of law that the following is true and correct to the best of my knowledge and belief:

1.     I am over the age of eighteen. I am competent to testify as to all matters herein, and make this declaration upon personal knowledge unless otherwise stated. If called as a witness, I could and would competently testify to the truth of the matters stated herein, except as to those matters stated to be true on information and belief.

2.     I am not an attorney, nor have I ever been directed by an attorney to provide information to military families.

3.    I lived at Marine Corps Base Hawaii (MCBH) in Forest City housing from August 2006 to November 2008, and again from August 2009 to April 2011.

4.    I have spoken with Plaintiffs environmental health expert, Dr. Walter Chun, on multiple occasions regarding the issues on MCBH, which is what I have based my comments regarding the relative safety recommendations from the EPA and HDOH.

5.    Comments I have made touching upon OMC and Forest City's failure to follow their Pesticide Soil Management Plan are based upon my conversations with Dr. Chun and others as well as my own personal observations while living at MCBH where I lived immediately adjacent to OMC's alleged remediation project yet saw no evidence that contaminated soils were removed nor did I receive any notice at any time from OMC of the relative risk for my family.

I declare under penalty of perjury of law that the foregoing is true and correct.

DATED this 13th day of July 2016.

_____
CARA BARBER

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER, KATIE ECKROTH, BOB BARBER, TIM JONES, AND RYAN ECKROTH, On Behalf of Themselves And All Others Similarly Situated,<br><br>        Class Plaintiffs,<br><br>  vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>        Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br>**CERTIFICATE OF SERVICE** |

Pursuant to Federal Rule of Civil Procedure 5(a), the undersigned hereby certifies that **PLAINTIFF CARA BARBER'S OPPOSITION TO DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE RE VIOLATIONS OF THE PARTIES' SETTLEMENT AGREEMENT, FILED JULY 28, 2016; MEMORANDUM IN SUPPORT; DECLARATION OF PATRICK KYLE SMITH; DECLARATION OF CARA BARBER; and EXHIBITS 1-3** was served upon the following parties by email:

Randall Whattoff, Esq.        rwhattoff@goodsill.com
Lisa Munger, Esq.             lmunger@goodsill.com
Attorneys for Defendants

DATED: Kailua, Hawaii, this 13th day of July 2016.

P. KYLE SMITH
TERRANCE M. REVERE
MALIA R. NICKISON-BEAZLEY
CHRISTINA LAMBE

*Attorneys for Plaintiffs*