**LYNCH, HOPPER SMITH, LLP**
P. KYLE SMITH                      9533-0
CHRISTINA LAMBE                    8702-0
970 N. Kalaheo Ave., #A301
Kailua, HI 96734
T: (808) 791-9555

**REVERE & ASSOCIATES**
TERRANCE M. REVERE                 5857-0
MALIA R. NICKISON-BEAZLEY          9289-0
Pali Palms Plaza
970 North Kalaheo Avenue, Suite A301
Kailua, Hawaii 96734
T: (808) 791-9550

*Attorneys on behalf of Class Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, ET AL., On Behalf of Themselves And All Others Similarly Situated,<br><br>Class Plaintiffs,<br><br>vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>Defendants. | CIVIL NO.: 14-00217 HG-KSC<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 2 RE: BURDEN OF PROOF ON DEFAMATION IS ACTUAL MALICE; CERTIFICATE OF SERVICE**<br><br>Judge: Hon. Helen Gillmor |

# PLAINTIFFS' MOTION IN LIMINE NO. 2 RE: BURDEN OF PROOF ON DEFAMATION IS ACTUAL MALICE

Plaintiff Cara Barber respectfully moves this court for an order *in limine* that the Defendants are, at minimum, limited "public figures" regarding the widely known controversy of pesticide contamination at MCBH and therefore any evidence regarding allegedly negligent conduct must be excluded for the purpose of alleging defamation against Cara Barber. This motion is brought in accordance with Rules 7 of the Federal Rules of Civil Procedure, Rules 401, 402, and 403 of the Federal Rules of Evidence, and Rule 7.2 of the Local Rules of Practice for the United States District Court for the District of Hawaii, and is based upon the attached Memorandum in Support of the Motion and the Record and pleadings on file herein.

DATED: Kailua, Hawaii, this 2nd day of August 2016.

_____
P. KYLE SMITH
TERRANCE M. REVERE
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, ET AL., On Behalf of Themselves And All Others Similarly Situated,<br><br>　　　　Class Plaintiffs,<br><br>　　vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>　　　　Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br>**MEMORANDUM IN SUPPORT OF MOTION OF MIL2**<br><br>Judge: Hon. Helen Gillmor |

## MEMORANDUM IN SUPPORT OF MOTION IN LIMINE NO. 2

Defendants Ohana Military Communities, LLC, and Forest City Residential Management, Inc. (collectively, "Forest City") is a public figure regarding pesticide contamination at MCBH and therefore has the burden of demonstrating by clear and convincing evidence that Plaintiff Cara Barber made the challenged speech with actual malice under Hawaii, Ninth Circuit, and US Supreme Court precedent.

**A. Defendants Are, At Minimum, Limited "Public Figures" under U.S. Supreme Court, 9th Circuit and Hawaii Precedent.**

In *Cahill v. Hawaiian Paradise Park Corp.*, 56 Haw. 522, 540-41 (1975) the court recognized:

As we said in *Gertz*,

Respondent's characterization of petitioner as a public figure raises a different question. That designation may rest on either of two alternative bases. **In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions**. 418 U.S. at 351, 94 S.Ct. at 3013.

Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. It is preferable to reduce the public-figure question to a more meaningful context **by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation**. 418 U.S. at 352, 94 S.Ct. at 3013

On the facts before it, the Court in *Gertz* found that the trial court had properly refused to characterize the plaintiff as a public figure notwithstanding that he had long been active in community and professional affairs and had served as an officer of local civic groups and of various professional organizations. **The Court pointed out that the plaintiff had not discussed the subject matter of the particular controversy with the press or been quoted as doing so, and said: "He plainly did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome.** 418 U.S. at 352, 94 S.Ct. at 3013.[1]

---

[1] *Cahill v. Hawaiian Paradise Park Corp.*, 56 Haw. 522, 540-41 (1975), referencing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

2

Here, there is no doubt that Defendant is, at a minimum, a public figure at least for the limited purpose of the controversy surrounding the contamination of the housing it held out for rent to thousands of military families and the contamination controversy that surrounded the homes it was leasing:

1. It advertised its housing and community on the internet;

2. It is leasing housing on pubic land;

3. It has spoken out publicly and repeatedly to the press and on the internet about the controversy involving pesticides at MCBH.

4. It has engaged with both the public State and Federal governments to influence the outcome of this controversy, including United States and Hawaii Senators and representatives;

5. OMC's two members are the US Navy and Forest City, a gargantuan corporation with a national reach that actively markets housing to military families;

6. The subject of MCBH pesticide contamination has been the subject of multiple news reports and social media reports for more than a decade.

7. The subject of contamination of housing on military bases in general has been the subject of intense press coverage and public debate;

8. Numerous governmental institutions, including the Navy, the Marine Corp, the State of Hawaii's Department of Health, and the EPA have all been involved in the controversy;

9. OMC has received significant state tax credits for its housing redevelopment activities;

10. Military housing in Hawaii has a significant impact on the State's housing market and broader economy and society.

Thus, Forest City as clearly "injected itself," "was drawn into," and is attempting to "influence the outcome" of a public controversy involving pesticide contamination at MCBH.

Similar to Hawaii's analysis, the Ninth Circuit has reversed a district court that failed to find that a corporation was a limited public figure for the purpose of the controversy surrounding it. In *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266-67 (9th Cir 2013), the Court explained:

> Because Trump University is not an all-purpose public figure, we examine the nature and extent of Trump University's **"participation in the particular controversy giving rise to the defamation"** to determine whether it is a public figure for the limited purposes of a defamation claim over its educational practices. *Gertz*, 418 U.S. at 352. **In undertaking this inquiry, we consider whether (i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution.** *Gilbert*, 53 Cal. Rptr. 3d at 762; *see also Gertz*, 418 U.S. at 351-52.[2]

Here, again, the evidence is undisputed that: (1) a public controversy existed when Barber's statements were made ; (2) the statements were made about Defendants' participation in the controversy and (3) Defendants voluntarily injected itself into the controversy to try and influence its ultimate resolution. The *Makeoff* court went on to rule as follows:

> The district court assumed without deciding that a public controversy

---

[2] *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266-67 (9th Cir 2013)(emphasis added).

4

existed regarding Trump University's business practices, but held that Trump University did nothing to voluntarily thrust itself into the controversy. We disagree with this holding.

**We have little difficulty in concluding that a public controversy existed over Trump University's educational and business practices when Makaeff made her statements about them.** As Donald Trump himself admits on the Trump University website, Trump University provoked public attention nearly from the outset, much of it derisive. Of course, general interest in Donald Trump is not sufficient to create a public controversy. *Cf. Time, Inc. v. Firestone*, 424 U.S. 448, 454-55, 96 S. Ct. 958, 47 L. Ed. 2d 154 (1976) (*HN13* "[D]issolution of a marriage through judicial proceedings is not the sort of 'public controversy' referred to in *Gertz*."). Instead, a public controversy "must be a real dispute, the outcome of which affects the general public or some segment of it." *Waldbaum v. Fairchild Publ'ns*, 627 F.2d 1287, 1296, 201 U.S. App. D.C. 301 (D.C. Cir. 1980); *see also Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 15 Cal. Rptr. 3d 100, 112 (Ct. App. 2004).

**Here, any general interest in Trump University stemming from its celebrity founder soon ripened into an actual dispute over Trump University's business and educational practices. By 2007 and 2008, disgruntled Trump University customers were posting complaints on public Internet message boards. Also by 2007, a columnist for a mass market newspaper had begun to report on Trump University's educational practices and business model.** *See* **Lazarus,** *Trump Spins in Foreclosure Game, supra*. **The column describes a Trump University seminar in unflattering terms, quotes both supporters and detractors of Trump University's programs, and discusses Trump University's educational practices against the backdrop of the mortgage foreclosure crisis.** *Id.* **We therefore conclude that by Fall 2009, the "specific question" of Trump University's legitimacy had become a public controversy.** *Waldbaum*, 627 F.2d at 1297. **Moreover, this dispute had the potential to affect "the general public or some segment of it in an appreciable way."** *Id.* at 1296. Trump University's business model involved offering seminars that encouraged members of the public to participate in the market for foreclosed properties, which had grown substantially in the wake of the 2007 financial and mortgage crisis. **These activities, carried out by Trump University and other purveyors of real estate investment advice, had the potential to affect**

5

**local housing markets** by increasing or decreasing real estate speculation in the market for foreclosed homes. The debate over Trump University's business **practices thus held ramifications not just for Trump University and its customers, but for all participants in the local housing markets.** *See id.* at 1299 (a public debate over the marketing policies of a cooperative supermarket held the potential to affect consumers and industry retailers in the surrounding area). Thus, a public controversy existed over Trump University's business practices at the time Makaeff made her statements in Fall 2009.

ii.
**The district court erroneously concluded that Trump University did not voluntarily inject itself into this public controversy.** *HN14*Under *Gertz*, Trump University must have "thrust [itself] to the forefront" of this particular controversy "in order to influence the resolution of the issues involved." 418 U.S. at 345. The district court concluded that even if Trump University was involved in the controversy over its allegedly deceptive business practices, its involvement was not voluntary. We disagree.

**We hold, as have the Third and Fourth Circuits, that *HN15* large scale, aggressive advertising can inject a person or entity into a public controversy that arises from the subject of that advertising. Advertising, conducted on a large scale and addressing or creating a public controversy, can be a way of "voluntarily expos[ing] [the company] to increased risk of injury from defamatory falsehood" concerning the company and its advertised products.** *Id.* Moreover, entities that advertise aggressively "enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements then [sic] private individuals normally enjoy."[3]

Here, again, negative postings about the defendants' business practices have existed for years, there was press coverage for years, and defendants engaged in public debates about the controversy for years that including enlisting the military in their efforts to get their message out speaking to the press and posting their own websites

---

[3] *Id.* at 268 (internal citations omitted)(emphasis added).

with their own spin on the controversy and meeting with State and Federal officials to try and influence the outcome.

> **B. As Forest City Is Clearly a "Public Figure" For At Least the Limited Purpose of the Controversy Involving Pesticide Contamination at MCBH, It Must Prove By Clear and Convincing Evidence that Cara Barber's Statements Were made with Actual Malice.**

*In Beamer v. Nishiki*, 66 Haw. 572, 582-83 (1983), the court went on state what "actual malice" means:

> Beamer concedes she is a public figure. **A public figure defamation plaintiff must prove with clear and convincing proof that the defendant acted with actual malice**. *Rodriguez*, 65 Haw. at 439, 653 P.2d at 1151.
>
> **This court has defined "actual malice" as "'deliberate falsification' of facts or 'reckless disregard' of the truth, i.e., reckless publication despite a high degree of awareness, harbored by the publisher, of the probable falsity of the published statements."** *Tagawa v. Maui Publishing Co., (Tagawa II)*, 50 Haw. 648, 652, 448 P.2d 337, 340, *cert. denied*, 396 U.S. 822 (1968). Moreover, this court has agreed with the U.S. Supreme Court that reckless disregard is a subjective question of the defendant's state of mind:
>
> **"[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication**." *Mehau v. Gannett Pacific Corp.*, 66 Haw. at 148, 658 P.2d at 322 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). As this court stated in *Rodriguez*:
>
> If there is a factual dispute about defendant's state of mind with regard to actual malice, summary judgment should not be granted. As the Supreme Court recently noted in *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 2680 n. 9, 61 L.Ed.2d 411 (1979), the proof of "actual malice" calls a defendant's state of mind into question, *New York Times Co. v. Sullivan*, 376 U.S. 254 [84 S.Ct. 710, 11 L.Ed.2d 686] (1964), and

7

does not readily lend itself to summary disposition.*Rodriguez*, 65 Haw. at 439, 653 P.2d at 1151; *quoted in Mehau*, 66 Haw. at 146, 658 P.2d at 321.

**Proving defendants acted with a high degree of awareness of the ad's probable falsity is extremely difficult as a matter of law.** "The existence or absence of malice is generally a question for the jury." *Runnells v. Okamoto*, 56 Haw. 1, 5, 525 P.2d 1125, 1129 (1974). As we noted in *Rodriguez*, an ad's defamatory character, the defendants' failure to investigate, and the incredibility of evidence concerning defendants' state of mind together do not constitute actual malice as a matter of law:

**Actual malice cannot be presumed from the mere fact of the defamatory character of the publication. . . . Mere investigatory failure on the part of Reed to determine whether the specific entertainers named in his article were actually connected with organized crime is also insufficient to establish that Reed acted with knowing falsity or reckless disregard of the truth**. . . . [6] Appellees [also] cannot satisfy the obligation of showing actual malice simply by asserting that the only evidence concerning Reed's state of mind is too incredible for a reasonable person to consider. *Rodriguez*, 65 Haw. at 441-42, 653 P.2d at 1152; *See also, Fong v. Merena*, 66 Haw. at 75, 655 P.2d at 876-77.(Bold added.)

Similarly in *Maekoff*, at 715 F. 270 the 9th Circuit held that:

Because Trump University is a limited purpose public figure, to prevail on its defamation claim it must establish that Makaeff made her statements with "actual malice," i.e., knowledge of their falsity or reckless disregard of their truth. *Gertz*, 418 U.S. at 342. **To demonstrate reckless disregard of the truth, Trump University must show by clear and convincing evidence that Makaeff "entertained serious doubts as to the truth" of her statements**. *Id*. at 331-32, 334 n.6 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968)). **If Makaeff was simply republishing a third party's allegations, mere proof of her failure to investigate the veracity of such allegations does not establish reckless disregard for the truth.** *Id*. at 332. **Trump University would then need to show "obvious reasons" to doubt the truthfulness of the original speaker, or the accuracy of his statements**. *Harte-Hanks*

8

*Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989) (quoting *St. Amant*, 390 U.S. at 732).[4]

According, because Forest City is a limited public figure for the purpose of pesticide contamination at MCBH, it must show that Cara Barber acted with "actual malice," which requires clear and convincing evidence that Barber subjectively entertained serious doubts about the truth of her statements. Therefore, Plaintiff Cara Barber respectfully requests an order *in limine* excluding evidence proffered for the purpose of establishing negligence or some lesser standard to support a claim of defamation against her

DATED: Kailua, Hawaii, this 2nd day of August 2016.

_____
P. KYLE SMITH
TERRANCE M. REVERE
*Attorneys for Plaintiffs*

---

[4] *Beamer v. Nishiki*, 66 Haw. 572, 582-83 (1983).

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARA BARBER, MELISSA JONES, MELISSA STREETER, KATIE ECKROTH, BOB BARBER, TIM JONES, AND RYAN ECKROTH, On Behalf of Themselves And All Others Similarly Situated,<br><br>      Class Plaintiffs,<br><br>  vs.<br><br>OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE DEFENDANTS 1-10,<br><br>      Defendants. | CIVIL NO.:  14-00217 HG-KSC<br><br>**CERTIFICATE OF SERVICE** |

Pursuant to Federal Rule of Civil Procedure 5(a), the undersigned hereby certifies that **PLAINTIFFS' MOTION IN LIMINE NO. 2 RE: BURDEN OF PROOF;** was served upon the following parties by CM/ECF:

    Randall Whattoff, Esq.                   rwhattoff@goodsill.com
    Lisa Munger, Esq.                          lmunger@goodsill.com

    Attorneys for Defendants

. . .

DATED: Kailua, Hawaii, this 2nd day of August 2016.

*[signature: Kyle Smith]*

P. KYLE SMITH
TERRANCE M. REVERE
MALIA R. NICKISON-BEAZLEY
CHRISTINA LAMBE

*Attorneys for Plaintiffs*