COX FRICKE LLP
A Limited Liability Law Partnership LLP

JOACHIM P. COX                  7520-0
    jcox@cfhawaii.com
RANDALL C. WHATTOFF             9487-0
    rwhattoff@cfhawaii.com
KAMALA S. HAAKE                 9515-0
    khaake@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawai'i  96813
Telephone:  (808) 585-9440
Facsimile:   (808) 275-3276

GOODSILL ANDERSON QUINN & STIFEL
A Limited Liability Law Partnership LLP

LISA WOODS MUNGER               3858-0
    lmunger@goodsill.com
CHRISTINE A. TERADA             10004-0
    cterada@goodsill.com
First Hawaiian Center, Suite 1600
999 Bishop Street
Honolulu, Hawai'i  96813
Telephone:  (808) 547-5600
Facsimile:  (808) 547-5880

Attorneys for Defendants
OHANA MILITARY COMMUNITIES, LLC
FOREST CITY RESIDENTIAL MANAGEMENT, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| PLAINTIFFS CARA BARBER, MELISSA JONES, MELISSA STREETER, KATIE ECKROTH, BOB BARBER, TIM JONES, AND RYAN | CIVIL NO. 14-00217 HG-KSC<br><br>DEFENDANTS OHANA MILITARY COMMUNITIES, LLC |

ECKROTH, On Behalf of Themselves and All Others Similarly Situated,

Class Plaintiffs,

vs.

OHANA MILITARY COMMUNITIES, LLC, FOREST CITY RESIDENTIAL MANAGEMENT, INC.; and DOE Defendants 1-10,

Defendants.

AND FOREST CITY RESIDENTIAL MANAGEMENT, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL AND/OR FOR SANCTIONS, FILED SEPTEMBER 5, 2017 [394]; CERTIFICATE OF COMPLIANCE; DECLARATION OF RANDALL C. WHATTOFF; EXHIBIT 42; CERTIFICATE OF SERVICE

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ................................................................................ 1

II.  THE JURISDICTIONAL ARGUMENT IS A RED HERRING
     THAT CAN BE EASILY ADDRESSED ............................................... 3

III. DEFENDANTS HAVE STANDING .................................................... 6

IV.  SMITH/REVERE'S CONFLICTS OF INTEREST REQUIRE
     DISQUALIFICATION........................................................................ 8

     A.   The Opposition Brief Exemplifies the Sort of Positional
          Change Caused by Concurrent Conflicts ..................................... 8

     B.   The Conclusory, Post-Conflict "Waivers" Do Not Cure the
          Conflict...................................................................................... 10

V.   SMITH/REVERE'S HRPC VIOLATIONS REQUIRE
     DISQUALIFICATION........................................................................ 12

     A.   Plaintiffs Do Not Seriously Dispute that the Social Media
          Campaign Was Highly Misleading .............................................. 13

     B.   The Solicitation Letter Also Requires Disqualification ............... 16

VI.  CONCLUSION ................................................................................... 19

# TABLE OF AUTHORITIES

**Page No.**

## CASES

*Figueroa-Olmo v. Westinghouse Elec. Corp.*,
    616 F. Supp. 1445 (D.P.R. 1985) ............................................................ 11

*FMC Techs., Inc. v. Edwards*,
    420 F. Supp. 2d 1153 (W.D. Wash. 2006) ............................................ 6, 7

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
    820 F. Supp. 1212 (N.D. Cal. 1993) ...................................................... 12

*Jamieson v. Slater*,
    No. CV 06-1524-PHX-SMM, 2006 WL 3421788
    (D. Ariz. Nov. 27, 2006) ....................................................................... 7, 11

*Kevlik v. Goldstein*,
    724 F.2d 844 (1st Cir. 1984) .................................................................. 6

*Sanford v. Virginia*,
    687 F. Supp. 2d 591 (E.D. Va. 2009) ................................................... 11, 12

## RULES

HRPC Rule 1.7 ......................................................................................... 11, 12

HRPC Rule 8.4(a) ...................................................................................... 15

HRPC Rule 1.16(a)(1) ............................................................................... 15

HRPC Rule 7.2 .......................................................................................... 15

**DEFENDANTS OHANA MILITARY COMMUNITIES, LLC AND
FOREST CITY RESIDENTIAL MANAGEMENT, LLC'S REPLY
MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY
COUNSEL AND/OR FOR SANCTIONS, FILED SEPTEMBER 5, 2017**

## I.   INTRODUCTION

When the Motion to Disqualify was previously filed with Judge

Kobayashi, she found that the issues it presented were "very troubling," but that

they were "squarely, and more directly, presented in *Barber*." Ex. 40 at 23.

Smith/Revere's new Opposition demonstrates the logic of Judge Kobayashi's

decision.  In the Opposition that Smith/Revere originally filed with <u>Judge</u>

<u>Kobayashi</u>, Smith/Revere attempted to claim that the Motion for Disqualification

was "utterly devoid of evidentiary support," and based on "supposition,

assumption, and personal attacks." *Lake* Matter, Dkt. No. 32 at 1.  In front of <u>this</u>

<u>Court</u>, Smith/Revere has dropped this pretense, implicitly recognizing that there is

substantial evidence supporting their disqualification.

Instead, Smith/Revere now focus on a legal technicality:  they contend

that under the Ninth Circuit's recent ruling, this Court lacks jurisdiction to address

Smith/Revere's conflicts of interests or ethical breaches.  But Smith/Revere cannot

so easily avoid the consequences of their conduct.  Courts always have the inherent

authority to address ethical breaches that arise before them—otherwise litigants

could flaunt the rules with impunity in cases such as this.  But if the Court has any

concerns about the jurisdictional issue, they can be quickly addressed by refiling

the briefs in one of the other MCBH matters presently pending before this Court.

With respect to the merits of the Motion to Disqualify,

Smith/Revere's Opposition is based largely on vague claims that are not supported

by any evidence.  Moreover, Smith/Revere has not even attempted to address much

of the evidence in the Motion.  As just some examples:

- Defendants have submitted both testimonial and documentary evidence establishing that the social media campaign used to recruit scores of new plaintiffs was based on false and misleading statements, such as the claim that pesticide levels throughout MCBH are "20 times higher than EPA safety recommendations!"  In the Opposition, Smith/Revere do not even attempt to argue that these statements (or the other false or misleading statements) were somehow true.

- Smith/Revere do not dispute that they knew about the social media campaign, provided input on it, and never took steps to address its false and misleading statements.  Nor do they dispute that the social media campaign was timed to coincide with their Solicitation Letter or that they benefitted from it.

- Smith/Revere have not responded to the testimonial and documentary evidence establishing that they obtained the e-mail addresses for their Solicitation Letter from a misleading questionnaire—not from pre-existing relationships.  Indeed, Mr. Smith's vague declaration all but confirms this to be the case.

This evidence establishes that the social media campaign and the Solicitation

Letter violate the Hawaiʻi Rules of Professional Conduct ("HRPC"), requiring the

disqualification of Smith/Revere.

That conclusion is further mandated by Smith/Revere's conflicts of interest, which provide an independent basis for disqualification. In the Opposition, Smith/Revere have tried to recast the allegations in the new complaints to avoid these conflicts. Smith/Revere now claim they are not necessarily asserting that all of the homes at MCBH have unsafe levels of pesticides—directly contradicting the social media campaign and the positions they are currently taking in the injunction proceeding. Rather, Smith/Revere claim that it is enough to show that residents lived near neighborhoods that might have been impacted by pesticides. This is precisely the sort of revisionism that the rules are designed to prevent.

Smith/Revere's inability to objectively advise the new plaintiffs creates serious risks because of the attorneys' fees provisions in plaintiffs' leases. If plaintiffs are not successful, they will be personally liable for hundreds of thousands of dollars in fees and costs. This is a very real risk given that the plaintiffs lived in homes that were fully remediated and/or were never treated with organo-chlorinated pesticides ("OCPs"). Smith/Revere should be disqualified so that the new plaintiffs can be advised by attorneys without these serious conflicts.

## II. THE JURISDICTIONAL ARGUMENT IS A RED HERRING THAT CAN BE EASILY ADDRESSED

Smith/Revere contend that the Court does not have jurisdiction over this Motion because the Motion "has nothing to do with the settlement agreement,

was filed more than one year after the August 25, 2016 deadline, and claims injury

that has been rejected by the Ninth Circuit."  Opp. at 12.  Each of these assertions

should be quickly rejected.

First, Smith/Revere's contention that the Motion to Disqualify has

"nothing to do with the settlement agreement" is simply wrong.  As discussed in

Defendant's post-remand memorandum, the injunction proceeding addresses at

least two distinct claims related to the Settlement Agreement—breach of the non-

disparagement provision and breach of the non-participation clause.  *See* Dkt.

No. 409 at 7–10.  This is the same misconduct that gave rise to the Motion to

Disqualify.

Second, Smith/Revere's assertion that the Motion to Disqualify "was

filed more than one year after the August 25, 2016 deadline" is irrelevant; this

Court has the ability to address ethical breaches and conflicts of interest <u>whenever</u>

<u>they arise</u>.  *See id.* at 6 (citing *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th

Cir. 1996)).  Any other rule would permit attorneys in a case like this one to simply

ignore the HRPC after August 25, 2016.

Third, Smith/Revere's assertion that the injury identified by this

Motion has already been rejected by the Ninth Circuit is spurious at best.  The

Ninth Circuit merely held that Ms. Barber's violations of the <u>confidentiality</u>

<u>provision</u> of the Settlement Agreement were not sufficient to warrant <u>injunctive</u>

relief.  *See* Dkt. No. 392 at 3.  The Ninth Circuit did not address—nor could it,

given the procedural posture—whether the false and misleading statements that

were the foundation of the social media campaign contributed to the new lawsuits

or warranted disqualification.  *See* Mot. at 16–19, 32–34.  Nor did the Ninth

Circuit address the biased and misleading questionnaire used to recruit new clients,

*see id.* at 9–10, 34–36, or the improper Solicitation Letter, *see id.* at 11–16, 37.

Perhaps most fundamentally, the Ninth Circuit did not address any of the conflicts

of interest caused by Smith/Revere's conduct.  *See id.* at 20–28.

To the extent the Court nevertheless has any concern related to

jurisdiction, this Motion could be refiled in one of the new actions that are

currently pending before this Court—*e.g.*, *Elijah-Keoni Manaea, et al. v. Ohana*

*Military Communities, LLC, et al.*, Civ. No. 16-00628-HG-RLP or *William Pye, et*

*al. v. Ohana Military Communities, LLC, et al.*, Civ. No. 17-00114-HG-RLP.

Although these cases have been consolidated before Judge Kobayashi for pre-trial

rulings, Judge Kobayashi designated this Court to decide the disqualification issue.

No further briefing would be necessary given that these issues have already been

briefed twice.  This would also address Smith/Revere's contention that the "new

clients" have a "right to be heard on the issue of whether they can continue to be

represented by the attorneys of their choice."  Opp. at 12.

## III.   DEFENDANTS HAVE STANDING

Smith/Revere argue that Defendants lack standing to bring this Motion because, "the general rule is that only former and current clients have standing to ask a court to disqualify counsel on the basis of a conflict of interest." Opp. at 14.  This argument was expressly considered and rejected by Judge Kobayashi in the first Motion to Disqualify.  *See* Ex. 40 at 22–23.  Judge Kobayashi held:

> In light of this Court's duties to the members of the district court's bar and the general public, this Court concludes that it has an obligation to address the issues raised in the Motion to Disqualify even assuming that Defendants do not meet the traditional standing requirements.  . . .  [T]he evidence Defendants have presented about purported attorney misconduct in support of the Motion to Disqualify is very troubling, <u>and there is no evidence that the Motion to Disqualify was brought for improper purposes</u>.

*Id.* at 22–23 (emphasis added; citations omitted).

As numerous Courts have held, "nonclient litigants may, under proper circumstances, bring motions to disqualify counsel based on conflicts of interest." *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1156 (W.D. Wash. 2006); *see also Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984) (noting that, in addition to the First Circuit, "[t]he Fourth and Fifth Circuits have held that disqualification may rightly be sought by opposing counsel even though he/she is not representing

the aggrieved client").  District Courts in the Ninth Circuit regularly find that non-clients have standing to bring motions for disqualification.[1]

In the Opposition, Smith/Revere contend that, in order to establish standing, Defendants must show an injury that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  Opp. at 15.  This is the constitutional standard necessary to <u>commence a new lawsuit</u>, and does not apply to a motion to disqualify filed by a current party to a lawsuit.  But Even if this standard were applicable to a motion to disqualify, Smith/Revere do not attempt to explain how it has not been met here.  Defendants have a "concrete and particularized" interest in not being subject to an improper solicitation campaign that is generating scores of baseless lawsuits.  This interest is not "conjectural or hypothetical," it is ongoing and has already generated claims from 86 new

---

[1] For example, in *FMC Technologies*, plaintiffs alleged that the law firm representing defendants should be disqualified because of a conflict of interest with a former client (who was not a party in the pending case).  *See id*. at 1155.  The district court noted that it has "well recognized power to control the conduct of the attorneys practicing before it" and that "several district courts in the Ninth Circuit, including this one, have held that district courts have the inherent power to 'protect the integrity of their processes' in the context of ethical disqualification motions." *Id*. at 1156 (internal quotation marks and citations omitted).  The court disqualified the attorneys.  *See id.*; *see also Jamieson v. Slater*, No. CV 06-1524-PHX-SMM, 2006 WL 3421788, *6 (D. Ariz. Nov. 27, 2006) (finding that non-client had standing to bring motion; noting, among other things, that under analogous Arizona Rule of Professional Conduct, the movant had a <u>duty</u> to raise the issues identified in the disqualification motion).

families.  Under these circumstances, Defendants have standing to raise these

serious conflicts of interest and violations of the HRPC.

## IV.   SMITH/REVERE'S CONFLICTS OF INTEREST REQUIRE DISQUALIFICATION

### A.   The Opposition Brief Exemplifies the Sort of Positional Change Caused by Concurrent Conflicts

Two of the most prominent and frequent claims in the social media

campaign were that (1) Defendants failed to remove 18-inches of soil from all of

the homes at MCBH and (2) that all of the current soils at MCBH have OCP levels

20 times higher than EPA safety recommendations.  The Opposition does not

contest that these statements were false, or provide any evidence that could support

them.[2]  Instead, Smith/Revere attempt to pivot:  they admit that not all of the

homes at MCBH have unsafe levels of OCPs.  Smith/Revere state:  "No doubt

levels of contamination fluctuate between homes; no doubt pesticide levels

fluctuate within yards; no doubt pesticide levels fluctuate between neighborhoods."

---

[2] The only evidence submitted by Smith/Revere related to "contamination" at MCBH is a map depicting where potentially pesticide-impacted soil was buried during redevelopment.  *See* Opp., Ex. 9.  This map does not reflect any problem or issue at MCBH; to the contrary, it reflects careful soil management in compliance with the Pesticide Soil Management Plan approved by the Hawai'i Department of Health.  As the Court noted during the evidentiary hearing, "It is a responsible thing to bury what you have."  Ex. 16 at 60:20-61:6 (emphasis added).

Opp. at 19.  Smith/Revere claim this does not matter because residents might have

nevertheless visited homes or facilities in different neighborhoods.  *See id.* at 21.[3]

This is a substantial change from the theory espoused in the social

media campaign, and it is exactly the type of revisionism that the conflict-of-

interest rules are designed to prevent.  The social media campaign asserted that all

of the homes at MCBH were impacted by unsafe levels of pesticides, and that

residents were exposed to unsafe levels of pesticides every day they lived in their

home.  The new theory is that residents <u>might</u> have been exposed to pesticides <u>if</u>

they visited certain unidentified locations or playgrounds.  This is a fundamentally

different claim.  More importantly for the purposes of this motion, it **is severely**

**detrimental to Smith/Revere's defense of Ms. Barber, as Smith/Revere are all**

**but admitting that Ms. Barber's statements in the social media campaign are**

**unsupportable**.

Smith/Revere claim this is not really a conflict of interest issue—

rather, Defendants are attempting to argue the merits of the case.  *See* Opp. at 17–

18 ("One party's rantings that it will win at trial—despite losing key dispositive

motions repeatedly—is not evidence.").[4]  This is not true; Defendants are arguing

---

[3] Notably, Smith/Revere never identify any neighborhood that they claim currently
has improper levels of pesticides.

[4] For the record, Smith/Revere's contention that Defendants are "losing key
dispositive motions repeatedly" is absurd.  In the most recent motion in the *Lake*

9

that the <u>theories</u> being pursued by Smith/Revere on behalf of Ms. Barber (*e.g.*, that

the soils around all homes are "20 times higher than EPA safety

recommendations") and the <u>theories</u> being pursued in the new complaints (*e.g.*,

that the pesticide levels "fluctuate between neighborhoods"), are conflicting.

Because of this conflict of interest, Smith/Revere should be disqualified from

representing the new claimants.

### B. The Conclusory, Post-Conflict "Waivers" Do Not Cure the Conflict

Smith/Revere have sought to avoid these clear conflicts by providing

identical declarations from four of the five plaintiff families from the *Lake* Matter.[5]

The declarations are dated between October 11, 2016 and October 20, 2016—

approximately six months <u>after</u> Smith/Revere began submitting demands on behalf

of these Plaintiffs, and nearly two months <u>after</u> this Court first identified the

conflicts of interest.  *See* Ex. 42.  In the declarations, Plaintiffs state that the social

media campaign did not "influence" them to file claims against Defendants and

---

Matter, <u>Judge Kobayashi dismissed the entirety of Plaintiffs' complaint for failure to plead any actionable injury</u>.  *See Lake* Matter, Dkt. No. 63 at 28–29. Smith/Revere moved for reconsideration of the Court's order, and the Court affirmed its dismissal of all claims.  *See Lake* Matter, Dkt. No. 78 at 7–8. Smith/Revere have since filed a First Amended Complaint, but Defendants believe it will be dismissed for the same reasons.  *See Lake* Matter, Dkt. No. 76.

[5] There is no declaration from the Wilsons, the family that Smith/Revere has likely exposed to the most danger with its newly revised theory.  *See* Mot. at 23.

that they are aware "that a potential conflict of interest may exist."  Opp., Ex. 12,

¶¶ 4–5.

These declarations fail to remove the conflict for at least three

reasons.  First, under HRPC Rule 1.7(b)(1), a waiver is only effective where it is

reasonable to believe that an attorney could provide competent and diligent

representation despite the conflict.  *See, e.g., Figueroa-Olmo v. Westinghouse Elec.*

*Corp.*, 616 F. Supp. 1445, 1451 (D.P.R. 1985) ("Even informed consent may be

insufficient to prevent disqualification, if it is not obvious to the court that the

attorney will be able to represent all clients adequately, or if the court believes no

waiver may cure the damage to the integrity of the judicial process that such joint

representation will cause[.]") (citations omitted); *Jamieson*, 2006 WL 3421788, at

*6 (holding that it was unreasonable to conclude that conflict could be waived).

That is plainly not the case here because Smith/Revere have already modified their

legal positions in an effort to remain as counsel.

Second, there is no evidence that plaintiffs provided <u>informed</u>

consent.  The declarations here contain conclusory statements that "a <u>potential</u>

conflict of interest <u>may</u> exist if my attorneys represent me" and that Smith/Revere

have "explained their belief that . . . they can provide competent and diligent

counsel while also helping defend Cara Barber[.]"  Opp., Ex. 12.  This is not

remotely sufficient to establish informed consent.  *See, e.g., Sanford v. Virginia*,

687 F. Supp. 2d 591, 605 (E.D. Va. 2009) ("Although counsel for these defendants asserts that the consent was provided knowingly and voluntarily, there is no basis in the record to conclude that the affected defendants had the very real conflicts described to them thoroughly and accurately."); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 820 F. Supp. 1212, 1217 (N.D. Cal. 1993).

Third, the waivers here were obtained several months after the representation began, and only after the conflict issues were raised by the Court. *See* HRPC 1.7, Cmt. 4 ("If a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from the representation, unless the lawyer has obtained the informed consent of the client under the conditions of paragraph (b)."). These self-serving, form waivers drafted after the conflict arose should be quickly rejected by the Court.[6]

## V.   SMITH/REVERE'S HRPC VIOLATIONS REQUIRE DISQUALIFICATION

Separate and apart from their conflicts of interest, Smith/Revere should also be disqualified for their breaches of the prohibition on "false or misleading" advertising. These breaches include the social media campaign, which disseminated page after page of false information to hundreds—if not thousands—of individuals, and the Solicitation Letter, which Smith/Revere sent to

---

[6] It should also be noted that four of the 86 plaintiff-families have submitted waivers.

600 current and former residents whose contact information they obtained from a

misleading questionnaire administered by Ms. Barber.

### A. Plaintiffs Do Not Seriously Dispute that the Social Media Campaign Was Highly Misleading

The evidentiary hearing on the preliminary injunction established that

the social media campaign was, <u>at a minimum</u>, highly misleading.  Smith/Revere

do not seriously dispute that conclusion in their Opposition.  Indeed, Smith/Revere

all but admitted that the campaign was misleading when they stated that they were

switching from the theory espoused in the social media campaign (that all of the

soils at MCBH are "20 times higher than EPA safety recommendations") to a

claim that <u>some</u> residents <u>might</u> have lived in neighborhoods that were <u>near</u>

pesticides.

Smith/Revere nevertheless claim that the social media campaign

cannot serve as a basis for disqualification because (1) there is allegedly no

evidence "that Plaintiffs' [sic] relied upon Barber's online communications," Opp.

at 27; and (2) there is allegedly no evidence that the social media campaign was

"directed by counsel," *id.* at 29.  Neither assertion is correct.

First, Smith/Revere do not cite any authority for their position that a

party moving for disqualification must prove reliance.  Such a requirement would

be a virtual impossibility given that the movant cannot communicate with the

opposing party and that a motion for disqualification should be brought at the

13

outset of the case.  Smith/Revere drafted declarations for their clients to sign that state: "No statements by Cara Barber influenced my decision to pursue my legal remedies . . . nor did I rely upon Cara Barber nor any comment made by Cara Barber . . . ." Opp. Ex. 12.  If this was sufficient to undo the numerous HRPC violations here, then any attorney who improperly solicited clients could cure the breach with a declaration based on bald assertions.  Notably, the declarations here do not contain any facts regarding how the individual decided to file the lawsuit or what source they did rely upon to conclude there are issues at MCBH.

The unrebutted evidence establishes that Plaintiffs were included in the social media campaign.  Four of the five Plaintiffs were followers of the "MCBH and Pearl Harbor Housing Issues" Facebook page.  *See* Ex. 35 at 14, 16, 18, 20.  This means they would have seen all of the Facebook posts that were part of the social media campaign.  *See* Mot., Ex. 13 at 38:13-39:3.  In addition, the majority of the new demands were sent after the campaign, strongly suggesting that the new claimants were affected by the social media campaign.  *See, e.g.*, Ex. 42.  This evidence is more than sufficient to create a presumption of reliance.

Second, Smith/Revere contend that there is no evidence the campaign was "directed by" counsel.  Smith/Revere do not provide a definition of what they mean by "directed by," but it is absolutely clear from the e-mails between Smith/Revere and Ms. Barber that Smith/Revere (1) had knowledge of the social

14

media campaign; (2) <u>provided input on</u> the social media campaign; (3) did <u>nothing to stop or correct</u> the social media campaign; and (4) <u>took advantage of</u> the campaign by timing their Solicitation Letter to coincide with it.  *See* Mot. at 13–15 & Exs. 25–30.

Smith/Revere claim that Defendants "admit[] there is no Hawaiʻi rule of ethics that prohibits any conduct by Smith or Revere[.]"  Opp. at 28.  This is not remotely close to what Defendants said.  Defendants noted that "Hawaiʻi does not appear to have <u>directly addressed</u> the situation here"—likely because the type of misleading social media campaign used by Smith/Revere is unprecedented in Hawaiʻi.  Mot. at 29 (emphasis added).  It is categorically untrue that there is "no Hawaiʻi rule of ethics that prohibits any conduct by Smith or Revere"; as discussed in the Motion, the misleading statements of a third-party will be imputed to the lawyer under the HRPC.  *See* HRPC Rule 8.4(a) ("It is professional misconduct for a lawyer to: (a) attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, <u>or do so through the acts of another</u>[.]") (emphasis added); *see also* HRPC Rule 1.16(a)(1); HRPC Rule 7.2, cmt. 7.

Moreover, while it is true that the type of social media campaign at issue here has not yet been directly addressed in Hawaiʻi, the jurisdictions that have addressed such campaigns have held that the statements of the client will be imputed to the attorney.  *See* Mot. at 29–30.  This is true even where the attorneys

are substantially less involved in the campaign than Smith/Revere were here.

Smith/Revere have not <u>attempted</u> to respond to these authorities.  Because

Smith/Revere had knowledge of the campaign, provided input on it, did nothing to

correct it, and took advantage of it, the statements made in the campaign should be

imputed to Smith/Revere and they should be disqualified.

### B.    The Solicitation Letter Also Requires Disqualification

In addition to Smith/Revere's participation in the social media

campaign, they should also be disqualified for their Solicitation Letter, which

(1) was sent to hundreds of individuals with whom Smith/Revere did not have a

pre-existing relationship; (2) was not marked as "Advertising Material"; and

(3) told residents that Smith/Revere believed all residents "have valid legal claims

for return of their BAH."

Smith/Revere contend that the Solicitation Letter was appropriate

because it "was sent only to members of the putative class who had contacted

Revere/Smith or their clients *before* the settlement and asked to be kept informed

about the case."  Opp. at 30.  <u>But that is not what actually happened</u>.  The new

claimants did not contact Smith/Revere "and ask[] to be kept informed about the

case," the new claimants responded to a highly misleading survey launched by

Ms. Barber.  *See* Mot. at 9–10.  Although an early version of the survey contained

a latent reference to attorney involvement, the final version did not contain any

indication that responses would be shared with attorneys.  *See id.* & Ex. 9.  Nor did

this version include any suggestion that respondents might be contacted in the

future.  *See id.*  The questions in the survey were highly biased and repeatedly

stated that there was "hazardous contamination throughout MCBH."  *See id.*

Simply put, Smith/Revere cannot use Ms. Barber to deploy a highly misleading

"survey" to MCBH residents; use the e-mail addresses obtained from such survey

to send out hundreds of Solicitation Letters; and then claim that the survey

established a pre-existing relationship.

There is no doubt that the misleading survey is how Smith/Revere

obtained the e-mail addresses.  Ms. Barber testified that the e-mail addresses used

for the solicitation campaign were obtained via the online survey, and that she

provided the e-mail addresses she obtained from these surveys to Smith/Revere.

*See* Ex. 13 at 16:11–17:23, 18:12–19:2.  Smith/Revere do not seriously dispute that

this is how they obtained the majority of the e-mail addresses.  Indeed, the sole

evidence Smith/Revere submitted regarding how they obtained the e-mail

addresses are a few conclusory sentences from the declaration of Mr. Smith.  *See*

Smith Decl., ¶ 9 (emphasis added).  Tellingly, the declaration does not provide any

information about how many individuals contacted Mr. Smith or how many

responded to Ms. Barber's questionnaire.  Nor does Mr. Smith's declaration

provide any information about when Smith/Revere established "relationships" with

these new clients.  Nor does it explain when Smith/Revere first contacted them. This is information that Smith/Revere could have easily provided.

With regard to the statement in the Solicitation Letter that Smith/Revere believe all residents "have valid legal claims for return of their BAH [basic allowance for housing]," which in many instances exceeds $100,000, Smith/Revere state this was justified because Smith/Revere "prevailed" on certain dispositive motions in this case.  Opp. at 30.  But the fact that <u>class</u> plaintiffs avoided summary judgment on certain claims in the <u>class action</u> does not indicate that individual plaintiffs are likely to prevail.  In dismissing the entirety of the Complaint, Judge Kobayashi has already ruled that the allegations that might have supported a class action cannot support individual claims.  *See* Note 4, *supra*.

Moreover, the Solicitation Letter was especially misleading given that it was sent to hundreds of residents of MCBH, <u>regardless of when the residents lived on base or which neighborhood they lived in</u>.  Because the Solicitation Letter was sent to all such residents, it was sent to residents who lived in neighborhoods that were never treated with OCPs (*e.g.*, the Wilsons); residents who moved into homes where the soils were completely removed and replaced prior to move-in (*e.g.*, the Lakes and Pahonas); and residents who first moved on base after the *Barber* lawsuit had been filed and there were large-scale disclosures about the alleged soil issues (*e.g.*, the Lakes and Pahonas).  Under these facts, it was

18

misleading for Smith/Revere to tell all of the current and former residents that they have "valid claims" for the return of all of their BAH.  Couching the statement in terms of what the attorneys "believe" does not inoculate it.  Because the Solicitation Letter was misleading, because it was sent to individuals with whom Smith/Revere did not have a prior relationship, and because it was not stamped "Advertising Material," it was improper under the HRPC.

## VI.   CONCLUSION

For all of the foregoing reasons, Smith/Revere should be disqualified.

DATED:  Honolulu, Hawai'i, November 6, 2017.

/s/ Randall C. Whattoff
LISA WOODS MUNGER
JOACHIM P. COX
RANDALL C. WHATTOFF
KAMALA S. HAAKE
CHRISTINE A. TERADA

Attorneys for Defendants
OHANA MILITARY COMMUNITIES, LLC
and FOREST CITY RESIDENTIAL
MANAGEMENT, LLC